UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------X

ESTATE OF WILLIAM A. STEWART, JR.,
                                    Plaintiffs,

-against-

SUGAR HILL MUSIC PUBLISHING,
LTD., DIAMOND HEAD MUSIC,
INC. d/b/a TWENTY NINE BLACK
MUSIC, JOEY ROBINSON, SYLVIA
ROBINSON and LELAND ROBINSON,

                                    Defendants.

--------------------------------------------------------X

Case No.: 10 CIV. 2632 (LTS)(JLC)
ECF Case

## DEFENDANTS' MEMORANDUM OF
## POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION
## FOR SUMMARY JUDGMENT

CINQUE & CINQUE, P. C.
Attorneys for Defendants
845 Third Avenue, Suite 1400
New York, New York 10022
Telephone: (212) 759-5515
Telefax:    (212) 759-7737
Email:      CINQUE845@aol.com

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES         iv

PRELIMINARY STATEMENT         1

STATEMENT OF FACTS         1

POINT I   -   THE STANDARDS FOR SUMMARY
JUDGMENT         4

POINT II   -   THE COPYRIGHT INFRINGEMENT
CLAIM SHOULD BE DISMISSED         5

(A) The Assignment Is Incontestable         5

(B) The Assignment Precludes the Stewart
Estate's Claim of Copyright Infringement         6

(C) The Copyright Infringement Claim Has
No Basis since Sugar Hill Only Licensed
"No Diggity" Abroad         7

POINT III   -   PLAINTIFF IS PRECLUDED FROM
PURSUING CLAIMS BASED UPON
AGREEMENTS BETWEEN THE PARTIES         8

(A) Plaintiff's Factual Allegations in
Its Complaints Are Binding Admissions         10

(B) Plaintiff's Answers to Contention
Interrogatories Constitute Binding Admissions         10

(C) Plaintiff's Deposition Testimony
Is An Admission         13

i

Page

(D) The Factual Allegations Are
    Irreconcilable And The Remedies
    Are Inconsistent        13

(E) Plaintiff's Summary Judgment Motion
    Constitutes A Binding Election of Remedies     15

POINT IV   -   ALL CONTRACT-BASED CLAIMS
    MUST BE DISMISSED EVEN IF
    PLAINTIFF IS NOT PRECLUDED
    FROM ASSERTING THEM       16

(A) The Breach of Contract Claim Must
    Be Dismissed Since Stewart Itself
    Breached the Agreement       16

(B) The Existence of Agreements Between
    The Parties Precludes an Unjust
    Enrichment Claim       18

(C) Plaintiff Is Not Entitled to Rescission     19

    (i) Stewart Has Been Paid       19

    (ii) Stewart Is Liable for Payments
      Received in Violation Of the
      Assignment       21

    (iii) Rescission Is Not Available
      Since Money Damages Are an
      Adequate Remedy       22

    (iv) The Stewart Estate's Rescission
      Claim Is Barred by the Statute
      of Limitations       22

    (v)  Stewart Has Not Offered to Restore
      What Was Received       23

**Page**

(vi) Lavaba Mallison Has Not Been
     Joined As A Party                                              23

(D) The Court Lacks Subject Matter Jurisdiction
    of Plaintiff's Claims                                          24

# TABLE OF AUTHORITIES

<u>Case</u>                                                                                  <u>Page</u>

A.S. Rosenthal Co. v. Brilliant Silk Mfg. Co., Inc., 217 A.D. 667,
    217 N.Y.S. 138  (1st Dep't 1926)                                                18

Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S. Ct. 1011 (1974)                14

American International Specialty Lines Ins. Co. v. Towers Financial Corp.,
    198 B.R. 55 (S.D.N.Y. 1996)                                                     24

Armstrong v. Virgin Records, Ltd., 91 F. Supp.2d 628 (S.D.N.Y. 2000)               8

Ancile Investment Co. Ltd. v. Archer Daniels Midland Co.,
    2011 WL 813724 (S.D.N.Y.) at *5                                                 18

Astroworks, Inc. v. Astroexhibit, Inc., 257 F. Supp.2d 609
    (S.D.N.Y. 2003)                                                                 13

Bellefonte Re Insurance Co. v. Argonaut Insurance Co.. 757 F.2d 523
    (2nd Cir. 1985)                                                                 10

Caferty v. Scotti Brothers Records, Inc., 969 F. Supp. 193 (S.D.N.Y. 1997)         20

Carroll v. Kahn, 2003 WL 22327299 at *4 (N.D.N.Y.)                                  6

Carter v. Goodman Group Music Publishers, 848 F. Supp. 438
    (S.D.N.Y. 1994)                                                                 22

Cortner v. Israel, 732 F.2d 267 (2d Cir. 1984)                                      6

Diesel Props S.R.L. v. Greystone Business Credit II LLC,
    631 F.3d 42  (2nd Cir. 2011)                                                    17

E.T.C. Corp. v. Title Guarantee & Trust Co., 271 N.Y. 124 (1936)                   23

Equitable Trust Co. of New York v. Connecticut Brass & Mfg. Corp.,
    10 F.2d 913 (2nd Cir. 1926)                                                     14

Filmvideo Releasing Corp. v. Hastings, 668 F.2d 91 (2nd Cir. 1981)                 7

| Case | Page |
|------|------|
| Frymer v. Bell, 99 App.Div.2d 91,  472 N.Y.S.2d 622  (1st Dep't 1984) | 24 |
| Fun-Damental Too, Ltd. v. Gemmy Industries Corp., 1996 WL 724734 at *6 (S.D.N.Y.) | 8 |
| Goldner v. Possilico, 7 App. Div.3d 666, 776 N.Y.S.2d 818  (2d Dep't 2004) | 19 |
| Graham v. James, 144 F.3d 229 (2nd Cir. 1998) | 6 |
| Guadagno v. Wallack Ader Levithan Associates, 950 F. Supp. 1258 (S.D.N.Y. 1997) | 13 |
| H.B.L.R, Inc. v. Command Broadcast Assoc., 156 App. Div.2d 151, 548 N.Y.S.2d 198 (1st Dep't 1989) | 15 |
| Hamelin v. Faxton-St. Luke's Healthcare, 274 F.R.D. 385 (N.D.N.Y. 2011) | 12 |
| IDT Corp. v. Morgan Stanley Dean Witter, 12 N.Y.3d 132, 879 N.Y.S.2d 355 (2009) | 19 |
| IMG Fragrance Brands LLC v. Houbigant, Inc., 759 F. Supp.2d 363 (S.D.N.Y. 2010) | 18 |
| James Lang Wootton U.S.A. v. LeBoeuf, Lamb, Greene & MacRae, 243 App. Div.2d 168,  674 N.Y.S.2d 280 (1st Dep't 1998) | 15 |
| Kaplan v. Aspen Knolls Corp., 290 F. Supp.2d 335 (E.D.N.Y. 2003) | 10 |
| Laugh Factory, Inc. v. Basciano, 608 F. Supp.2d 549 (S.D.N.Y. 2009) | 22 |
| McKay v. Columbia Broadcasting Systems, Inc., 324 F.2d 762 (2nd Cir. 1963) | 7 |
| Metropolitan Life Ins. Co. v. Childs Co., 230 N.Y. 285 (1921) | 14 |
| New Shows, S.A. v. Don King Productions, Inc., 210 F.3d 355, 2000 WL 354214 at *2 (2d Cir.) | 21 |
| Nolan v. Sam Fox Publishing Co., Inc., 499 F.2d 1394 (2nd Cir. 1974) | 20 |

Case                                                                                          Page

P&E Properties, Inc. v. United Natural Foods, Inc., 713 F.Supp.2d
    262 (S.D.N.Y. 2010)                                                       17

Petrello v. White, 2007 WL 2276300 (E.D.N.Y.) at *5                                           15

Poindexter v. Warner/Chappel Music, Inc., 2009 WL 302064 (S.D.N.Y.) at *3                     4

Prime Mover Capital Partners LP v. Elixir Gaming Technologies, Inc.,
    2011 WL 2465963 (S.D.N.Y.) at *12                                           18

Prudential Oil Corp. v. Phillips Petroleum Co., 418 F. Supp. 254
    (S.D.N.Y. 1975)                                                            14

RCN Telecom Services, Inc. v. 202 Centre Street Realty LLC,
    156 Fed. Appx. 349 (2nd Cir. 2005)                                          17

Robert Stigwood Group, Ltd. v. O'Reilly, 530 F.2d 1096 (2d Cir.),
    cert. denied, 429 U.S. 848 (1976)                                           7

Rodgers v. Roulette Records, Inc., 677 F. Supp. 731 (S.D.N.Y. 1988)                           18

Rudman v. Cowles Communications, Inc., 330 N.Y.S.2d 33,
    30 N.Y.2d 1 (1972)                                                          22

Serdarevic v. Centex Homes LLC, 760 F. Supp.2d 322 (S.D.N.Y. 2010)                            18

Simon v. Boyer, 51 App.Div.2d 879, 380 N.Y.S.2d 178 (4th Dep't 1976)                          14

Superior Brassiere Co., Inc. v. Zimetbaum, 214 App. Div. 525,
    212 N.Y.S. 473 (1st Dep't 1925)                                             21

The Prince Group, Inc. v. MTS Products, 1998 WL 273099 (S.D.N.Y.) at *3                       12

Tudor v. Riposanu, 93 App. Div.2d 718, 461 N.Y.S.2d 6 (1st Dep't 1983)                        24

Umansky v. Seaboard Industries, Inc., 45 App. Div.2d 1051,
    358 N.Y.S.2d 22 (2nd Dep't 1974)                                            21

Update Art, Inc. v. Modinn Publishing, Ltd., 843 F.2d 67 (2nd Cir. 1988)                      7

Wechsler v. Hunt Health Systems, Ltd., 1999 WL 672902 (S.D.N.Y.) at *1-2                      11

## Authority

Federal Rule of Civil Procedure 8(d)(3)     13

17 U.S.C. §204(b)(1)     6

28 U.S.C. §1332(a)     24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

ESTATE OF WILLIAM A. STEWART, JR.,                    Case No.: 10 CIV. 2632 (LTS)(JLC)
                                                     ECF Case
                          Plaintiffs,

-against-

SUGAR HILL MUSIC PUBLISHING,
LTD., DIAMOND HEAD MUSIC,
INC. d/b/a TWENTY NINE BLACK
MUSIC, JOEY ROBINSON, SYLVIA
ROBINSON and LELAND ROBINSON,

                          Defendants.

----------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF
## POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION
## FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

This memorandum of points and authorities is submitted by defendants in support of their

motion for summary judgment dismissing the claims of the Stewart Estate in the amended

complaint. Claims asserted by plaintiffs Cook and Chisolm have been dismissed by stipulation.

### STATEMENT OF FACTS

The Stewart Estate alleges claims for copyright infringement, breach of contract, unjust

enrichment, and rescission, all relating to defendant Sugar Hill Music Publishing, Ltd.'s ("Sugar

Hill") interest in the copyright in the musical composition entitled "No Diggity," which was co-

authored by William A. Stewart, Jr. Copies of the amended complaint and answer are annexed

as Exhibits A and B to the Declaration of James P. Cinque (the "Cinque Dec.").

The Stewart Estate has consistently taken the position that Stewart did not enter into any

agreements with defendants. Yet, it asserts three claims (Count Seven for breach of the Assignment and Agreement, Count Eight for unjust enrichment for defendants' failing to pay monies due under the Assignment and Agreement, and Count Nine for rescission of the Assignment and Agreement) based upon agreements with defendants. As plaintiff has continuously and repeatedly admitted that there were no agreements between Stewart and the defendants, claims sounding in contract must be dismissed.

Plaintiff admitted that there were no agreements in:

(1) the original complaint, where it alleged that defendants infringed its copyright "without authorization or permission" (Ex. D to Cinque Dec., ¶ 25);

(2) the amended complaint, where it makes the same allegation (Ex. A to Cinque Dec., ¶ 27);

(3) the amended complaint, where it alleges that Stewart "never assigned his interest in the copyright" to defendants (Ex. A to Cinque Dec., ¶ 24);

(4) the amended complaint, where plaintiff alleges that the Assignment "was never signed by William Stewart" (Ex. A to Cinque Dec., ¶ 93);

(5) the Court-ordered answers to contention interrogatories, where plaintiff asserted that Stewart did not sign either the Assignment or Agreement (Interrogatory Nos. 1 and 3, Exs. E and F to Cinque Dec.);

(6) its deposition testimony, where it stated that it has no knowledge of Stewart's entering into any agreements with any companies other than his own (Ex. G to Cinque Dec.); and

(7) its failure during the course of discovery to produce any agreements with defendants (Cinque Dec. ¶ 9).

2

Plaintiff's numerous statements that Stewart did not enter into any agreements with defendants precludes plaintiff from pursuing any contract-based claims.

Plaintiff's copyright infringement claim has no basis whatsoever since Mr. Stewart on May 25, 1999 executed a notarized assignment of his interest in the "No Diggity" copyright to Sugar Hill (the "Assignment," Exhibit 1 to the Declaration of Joseph Robinson, Jr., the "Robinson Dec."). The Assignment does not require Sugar Hill to make any payments to Stewart. On the same day that he executed the Assignment, Stewart received a $2,500.00 advance from Sugar Hill and signed an agreement with Sugar Hill and Lavaba Mallison, stating that "No Diggity" income was to be collected by Sugar Hill, which was to pay 60% to Stewart, 20% to Lavaba Mallison and keep 20% (see the Declaration of Lavaba Mallison and Ex. 1 thereto, the "Agreement").

The Notary Public who witnessed Mr. Stewart's signature confirmed that Mr. Stewart executed the Assignment in his presence (Ex. C to the Cinque Dec.). As Sugar Hill is an assignee of Stewart's interest in the copyright, it cannot possibly be deemed an infringer. Furthermore, all of the monies received by Sugar Hill from the exploitation of "No Diggity" were collected overseas by Sugar Hill's overseas sub-publishers. None of the income received by Sugar Hill was generated from any United States activities (Robinson Dec. ¶ 13). Sugar Hill never received any claim from Stewart or his Estate until shortly prior to the commencement of this action (Robinson Dec. ¶ 14).

Stewart and his Estate have collected over $100,000.00 from the exploitation of "No Diggity" since May 25, 1999, which should have been paid to Sugar Hill pursuant to the terms of the Assignment (Robinson Dec. ¶ 15). Sugar Hill collected about $30,000.00 in connection with

3

"No Diggity" in the last six years, 60% of which ($18,000.00) would be due plaintiff under the

terms of the agreements between the parties. However, since Stewart received a $2,500.00

advance and since the Estate owes Sugar Hill more than $40,000.00 as a result of its improper

receipt of "No Diggity" income, not only is no money owed by defendants but in fact Sugar Hill

is owed $25,000.00 from plaintiff (Id.).

In its claim to rescind the Assignment and Agreement, the existence of which plaintiff has

consistently denied,  plaintiff does not offer to restore all of the consideration received and does

not name Lavaba Mallison (a party to the Agreement, entitled to 20% of the "No Diggity"

income) as a party to the action.

## POINT I

### THE STANDARDS FOR SUMMARY JUDGMENT

In Poindexter v. Warner/Chappel Music, Inc., 2009 WL 302064 (S.D.N.Y.) at *3, this

Court summarized the relevant principles to be applied in connection with a summary judgment

motion:

> Summary judgment shall be granted in favor of a moving
> party where the "pleadings, the discovery and disclosure materials
> on file, and any affidavits show that there is no genuine issue as to
> any material fact and that the movant is entitled to judgment as a
> matter of law." Fed.R.Civ.P. 56(c). In the summary judgment
> context, a fact is material "if it 'might affect the outcome of the
> suit under the governing law,' " and "[a]n issue of fact is 'genuine'
> if 'the evidence is such that a reasonable jury could return a verdict
> for the nonmoving party.' " *Holtz v. Rockefeller & Co.,* 258 F.3d
> 62, 69 (2d Cir.2001) (*quoting Anderson v. Liberty Lobby, Inc.,* 477
> U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The
> non-moving party "must do more than simply show that there is
> some metaphysical doubt as to the material facts .... [T]he
> nonmoving party must come forward with specific facts showing
> that there is a genuine issue for trial." *Caldarola v. Calabrese,* 298

4

> F.3d 156, 160 (2d Cir.2002) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (alteration in original)). "[M]ere conclusory allegations, speculation or conjecture" will not provide a sufficient basis for a non-moving party to resist summary judgment. *Cifarelli v. Vill. of Babylon,* 93 F.3d 47, 51 (2d Cir.1996). The evidence is viewed in the light most favorable to the nonmoving party and all reasonable inferences are drawn in its favor. *Rubens v. Mason,* 527 F.3d 252 (2d Cir.2008).

## POINT II

### THE COPYRIGHT INFRINGEMENT CLAIM SHOULD BE DISMISSED

The Stewart Estate's claim that defendants infringed the "No Diggity" copyright is deficient on several grounds.

The amended complaint alleges that William Stewart d/b/a Libvirg Publishing was a co-owner of the copyright in the musical composition entitled "No Diggity" (¶ 23 of Ex. A to the Cinque Dec.). While paragraph 24 of the Amended Complaint alleges that Stewart never assigned his interest in the copyright, it is clear that he did in fact do so. The Assignment is annexed as Exhibit 1 to the Robinson Declaration, and the Notary Public who witnessed Mr. Stewart's signature confirmed that Mr. Stewart indeed appeared before him on May 25, 1999 and executed the Assignment (Ex. C to the Cinque Dec.). As Stewart transferred his interest in the "No Diggity" copyright to Sugar Hill, the Stewart Estate is no longer an owner of the copyright and Sugar Hill cannot be an infringer.

### (A)   The Assignment Is Incontestable

The Notary Public, Joseph LaMontagne, unequivocally testified that he witnessed Mr. Stewart's signature on May 25, 1999. The notary also testified that his signature, printing, notary

5

stamp and notary seal appear on the original document which is still in Sugar Hill's possession.

No expert witness has challenged the authenticity of this Assignment.

As the Assignment was witnessed by a Notary Public in the United States, the

Assignment by law is *prima facie* evidence of the copyright transfer, as stated in 17 U.S.C.

§204(b)(1), which provides:

> (b) A certificate of acknowledgment is not required for the validity
> of a transfer, but is prima facie evidence of the execution of the
> transfer if –
>
> (1) in the case of a transfer executed in the United States,
> the certificate is issued by a person authorized to administer oaths
> within the United States;

No expert has challenged the authority of either the Assignment or the Agreement.

## (B)   The Assignment Precludes the Stewart
## Estate's Claim of Copyright Infringement

As Stewart assigned his share of the "No Diggity" copyright to Sugar Hill, the Stewart

Estate cannot sue for infringement of the conveyed copyright interest. See, Cortner v. Israel, 732

F.2d 267, 271 (2d Cir. 1984): "It is elementary that the lawful owner of a copyright is incapable

of infringing a copyright interest that is owned by him....;" and Carroll v. Kahn, 2003 WL

22327299 at *4 (N.D.N.Y.): "Because a co-owner cannot be sued for infringement, no copyright

claim can be asserted against [it]." Indeed, the law is well established that even a copyright

licensee (as opposed to an owner) may not be sued for infringement. See, e.g.: Graham v. James,

144 F.3d 229, 236 (2ⁿᵈ Cir. 1998):

> A copyright owner who grants a nonexclusive license to use his
> copyrighted material waives his right to sue the licensee for
> copyright infringement. *See Jacob Maxwell, Inc. v. Veeck,* 110
> F.3d 749, 753 (11th Cir.1997); *Peer Int'l Corp. v. Pausa Records,*

6

> *Inc.,* 909 F.2d 1332, 1338-39 (9th Cir.1990); *see also United States Naval Inst. v. Charter Communications, Inc.,* 936 F.2d 692, 695 (2d Cir.1991) ("[A]n exclusive licensee of any of the rights comprised in the copyright, though it is capable of breaching the contractual obligations imposed on it by the license, cannot be liable for infringing the copyright rights conveyed to it.").

and McKay v. Columbia Broadcasting Systems, Inc., 324 F.2d 762, 763 (2nd Cir. 1963):

> a license from a co-holder of a copyright immunizes the licensee from liability to the other co-holder for copyright infringement.

As Sugar Hill is the assignee of the Stewart copyright interest in "No Diggity," the Stewart Estate cannot sue for its alleged infringement.

## (C)   The Copyright Infringement Claim Has No Basis since Sugar Hill Only Licensed "No Diggity" Abroad

Sugar Hill only licensed "No Diggity" through its subpublishers abroad, and did not

receive any income from licenses within the United States. Therefore, even if it had no

agreement with Stewart, Sugar Hill could not be deemed an infringer of U.S. copyrights since its

foreign subpublishers licensed the composition to foreign licensees. It is well-established that

there is no jurisdiction over the Stewart Estate's copyright infringement claims, since United

States copyright law does not have extraterritorial application. See, e.g.: Update Art, Inc. v.

Modinn Publishing, Ltd., 843 F.2d 67, 73 (2nd Cir. 1988):

> It is well established that copyright laws generally do not have extraterritorial application.

Filmvideo Releasing Corp. v. Hastings, 668 F.2d 91, 93 (2nd Cir. 1981):

> copyright laws do not have extraterritorial application.

Robert Stigwood Group, Ltd. v. O'Reilly, 530 F.2d 1096, 1101 (2d Cir.) , cert. denied, 429 U.S. 848 (1976):

7

Copyright laws do not have extraterritorial operation.

Armstrong v. Virgin Records, Ltd., 91 F. Supp.2d 628, 634 (S.D.N.Y. 2000):

> As a general principle, it is not seriously disputed that United
> States copyright laws do not have extraterritorial effect, and that
> infringing acts that take place entirely outside of the United States
> are not actionable under our copyright laws (citations omitted).

and Fun-Damental Too, Ltd. v. Gemmy Industries Corp., 1996 WL 724734 at *6 (S.D.N.Y.):

> Because plaintiff has failed to allege an infringement within
> the United States that led to extraterritorial infringement, the
> general rule that extraterritorial infringements are not violations of
> the Copyright Act applies, and the extraterritorial acts of
> infringement are not within this court's jurisdiction.

The Stewart Estate's copyright claim must be dismissed for lack of subject matter

jurisdiction since Sugar Hill did not license the use of "No Diggity" within the United States.

## POINT III

### PLAINTIFF IS PRECLUDED FROM PURSUING
### CLAIMS BASED UPON AGREEMENTS
### BETWEEN THE PARTIES

Plaintiff asserts three claims (Counts Seven, Eight and Nine) based upon the existence of

agreements between Stewart and defendants. Specifically, Count 7 (for breach of contract)

alleges that plaintiff has been damaged by defendants' breaches of agreements. Count 8 (for

unjust enrichment) asserts that defendants have been unjustly enriched by collecting monies

under agreements. Count 9 (for rescission) seeks to rescind the agreements. Defendants are

entitled to summary judgment on these claims since plaintiff has consistently denied that there

were any agreements with defendants: in its complaint, amended complaint, court-ordered

answers to contention interrogatories, and deposition testimony.

8

In its original complaint the Stewart Estate brought a single claim against defendants: for copyright infringement. In paragraph 25 of the original complaint the Stewart Estate alleged that defendants infringed its copyright by "licensing 'No Diggity' without authorization or permission." As part of its initial disclosures defendants provided plaintiff with a copy of the Assignment and Agreement pursuant to which defendants were exploiting "No Diggity." The Stewart Estate then amended its complaint to add additional claims based upon the existence of these Agreements. However, the amended complaint still alleged that defendants' exploitation of "No Diggity" was "without authorization or permission" (¶ 27) and that "upon information and belief the purported Assignment was never signed by William Stewart" (¶ 93).

The Estate's representative testified that she was not aware of any agreements Stewart had with any company other than his own music publishing company. Plaintiff did not produce any agreement with defendants during discovery.

The Estate provided court-ordered answers to contention interrogatories which unequivocally stated that the Estate's contention is that Stewart did not sign any agreement with defendants.

By asserting in two pleadings that there was no agreement between Stewart and defendants, by stating in its answers to contention interrogatories that there were no agreements signed by Mr. Stewart, by testifying at its deposition that it was not aware of any agreements between Stewart and defendants, by failing to produce any agreements during discovery, and by moving for summary judgment on the copyright infringement claim, the Stewart Estate has admitted that there were no agreements between Mr. Stewart and defendants, has elected its remedy, and cannot pursue claims based upon the existence of any agreements between the

9

parties.[1]

## (A)   Plaintiff's Factual Allegations In Its Complaints Are Binding Admissions

Plaintiff alleged in both its original and amended complaint that there were no agreements

between plaintiff and defendants, and therefore defendants' exploitation of "No Diggity"

constituted copyright infringement.  As noted in Bellefonte Re Insurance Co. v. Argonaut

Insurance Co.. 757 F.2d 523, 528 (2nd Cir. 1985), the allegation that there were no agreements

between the parties is binding upon plaintiff:

> A party's assertion of fact in a pleading is a judicial admission by
> which it normally is bound throughout the course of the
> proceeding. *White v. Arco/Polymers, Inc.,* 720 F.2d 1391, 1396
> (5th Cir.1983); *see Mull v. Ford Motor Co.,* 368 F.2d 713, 715 (2d
> Cir.1966).

See also: Kaplan v. Aspen Knolls Corp., 290 F. Supp.2d 335, 339 (E.D.N.Y. 2003):

> a complaint may not allege inconsistent facts, e.g., whether or not
> there was an agreement, because allegations of fact are binding
> judicial admissions....

As plaintiff alleged in both the original and amended complaints that there were no

agreements between plaintiff and defendants, plaintiff is barred from pursing any claims based

upon the existence of agreements between the parties.

## (B)   Plaintiff's Answers to Contention Interrogatories
## Constitute Binding Admissions

At the conclusion of discovery, defendants served plaintiff with a short set of contention

interrogatories.  Specifically, defendants asked plaintiff whether or not it contends that William

Stewart executed the Assignment and Agreement:

---

[1]  The Court in its October 5, 2011 Order granted defendants leave to raise the issue of
plaintiff's election of remedies in connection with dispositive motion practice.

10

**CONTENTION INTERROGATORY NO. 1:** Do you contend that William A. Stewart did not execute the Assignment annexed hereto as Exhibit 1?

**CONTENTION INTERROGATORY NO. 3:** Do you contend that William A. Stewart did not execute the Agreement annexed hereto as Exhibit 2?

When plaintiff refused to provide a yes or no answer to these two questions, defendants applied

before Magistrate Judge Cott, who directed that they be answered "yes" or "no." Plaintiff's

answers to these interrogatories in the affirmative constitute a binding judicial admission and

therefore preclude the maintenance of any claims arising out of allegations that there was an

agreement between the parties which entitled plaintiff to royalties and other relief.

As held in Wechsler v. Hunt Health Systems, Ltd., 1999 WL 672902 (S.D.N.Y.) at *1-2,

answers to contention interrogatories constitute binding judicial admissions and are preclusive

against the answering party:

> Contention interrogatories issued pursuant to Rule 33 of the Federal Rules of Civil Procedure are one of many discovery tools designed to assist parties in narrowing and clarifying the disputed issues and reducing the possibility of surprise at trial. Such interrogatories may seek a variety of information from a party to the litigation, including identification of a party's legal positions regarding a given issue and the evidence on which those contentions are based.
>
> As is the case regarding other modes of discovery, the party answering a contention interrogatory is obligated "to respond truthfully and completely." *Weiss v. Chrysler Motors Corp.,* 515 F.2d 449, 456 (2d Cir.1975). Toward that end, the answering party is usually afforded ample opportunity fully to reflect on the question, to consult all pertinent sources of information bearing on it, and to seek the advice and assistance of counsel in order to craft answers that provide a full and accurate disclosure. *See Guadagno v. Wallack Ader Levithan Assocs.,* 950 F.Supp. 1258, 1261 (S.D.N.Y.), *aff'd,* 125 F.3d 844 (2d Cir.1997), cert. denied, 118

11

S.Ct. 1066 (1998). The answers to the interrogatories are then set
forth in writing and are treated by courts in this Circuit as "judicial
admissions" that generally estop the answering party from later
seeking to assert positions omitted from, or otherwise at variance
with, those responses. *See Wechsler,* 1999 WL 397751, at *11.

See also: Hamelin v. Faxton-St. Luke's Healthcare, 274 F.R.D. 385, 390 (N.D.N.Y. 2011):

> The Second Circuit has not ruled on the issue of whether
> interrogatory responses are binding judicial admissions but several
> district courts have determined they are. *See, e.g., Med. Educ. Dev.*
> *Servs., Inc. v. Reed Elsevier Group, PLC,* No. 05 Civ. 8665, 2008
> WL 4449412, at *11 (S.D.N.Y. Sept. 30, 2008) ("[I]n this Circuit,
> contention interrogatories are treated as judicial admissions 'that
> generally stop the answering party from later seeking to assert
> positions omitted from, or otherwise at variance with, those
> responses.' ") (quoting *Wechsler v. Hunt Health Sys., Ltd.,* No. 94
> Civ. 8294, 1999 WL 672902, at *2 (S.D.N.Y. Aug. 27, 1999)); *see*
> *also Zeigler v. Marriott Int'l, Inc.,* No. 03 Civ. 7688, 2005 WL
> 1022431, at *11 (S.D.N.Y. May 2, 2005) (plaintiff's complaint and
> interrogatory responses "constitute admissions and limit his
> potential claims"); *Guadagno v. Wallack Ader Levithan Assocs.,*
> 950 F.Supp. 1258, 1261 (S.D.N.Y.1997) (observing that
> interrogatory responses are generally treated as judicial admissions,
> and that "[a] judicial admission is conclusive, unless a court allows
> it to be withdrawn"), *aff'd* 125 F.3d 844 (2d Cir.1997)
> (unpublished table decision).

and The Prince Group, Inc. v. MTS Products, 1998 WL 273099 (S.D.N.Y.) at *3:

> Evidentiary admissions, such as answers at depositions or during
> trial testimony, can later be contradicted and explained. *Keller v.*
> *United States,* 58 F.3d 1194, 1198 n. 8 (7th Cir.1995); *Guadagno*
> *v. Wallack Ader Levithan, Assocs.,* 950 F.Supp. 1258, 1261
> (S.D.N.Y.1997). However, judicial admissions, such as
> stipulations or answers to contention interrogatories, are answered
> with the assistance of counsel and have the effect of precluding
> entire legal issues from a case. *Id.* Judicial admissions, however,
> may not be controverted unless a court allows them to be
> withdrawn. *Id.*

As plaintiff's response to defendants' contention interrogatories contends that William

12

Stewart did not sign the Assignment and Agreement, this admission is binding and precludes

plaintiff from asserting the following claims: Count Seven, for breach of the Assignment and

Agreement; Count Eight, for unjust enrichment for failing to pay monies due under the

Assignment and Agreement; and Count Nine, for rescission of the Assignment and Agreement.

## (C)  Plaintiff's Deposition Testimony Is An Admission

In its deposition the Estate's representative testified that she did not know whether Mr.

Stewart had any agreements with any music publishing companies other than his own.  In

addition, during discovery plaintiff did not produce any agreements between Stewart and any

defendant.  Accordingly, the testimony that there was no agreement between plaintiff and

defendants constitutes an evidentiary admission, as held in Guadagno v. Wallack Ader Levithan

Associates, 950 F. Supp. 1258, 1261 (S.D.N.Y. 1997):

> When a party testifying at trial or during a deposition admits a fact
> which is adverse to his claim or defense, it is generally preferable
> to treat that testimony as solely an evidentiary admission (citing
> *Keller v. United States*, 58 F.3d 1194, 1199 n. 8 (7th Cir. 1995)).

## (D)    The Factual Allegations Are Irreconcilable
## And The Remedies Are Inconsistent

Plaintiff's allegations in the complaints, that defendants are copyright infringers because

they have no rights to exploit "No Diggity," cannot be reconciled with the claims seeking monies

under agreements between the parties.

While Federal Rule of Civil Procedure 8(d)(3) permits a party to plead alternate claims,

such claims may not be based upon inconsistent facts, as held in Astroworks, Inc. v.

Astroexhibit, Inc., 257 F. Supp.2d 609, 610 n. 10 (S.D.N.Y. 2003):

> A complaint may not allege inconsistent facts - e.g., whether there

13

> was an agreement-because facts are binding judicial admissions.
> *See Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,* 757 F.2d 523, 528
> (2d Cir.1985).

As noted in Prudential Oil Corp. v. Phillips Petroleum Co., 418 F. Supp. 254, 257 (S.D.N.Y.

1975), remedies are inconsistent if they are based on inconsistent facts:

> For remedies to be inconsistent, it must be shown that "a
> certain state of facts relied on as the basis of a certain remedy is
> inconsistent with, and repugnant to, another certain state of facts
> relied on as the basis of another remedy." *25 Am.Jur.2d, Election
> of Remedies s 11.*

See also: Alexander v. Gardner-Denver Co., 415 U.S. 36, 49, 94 S. Ct. 1011, 1020 (1974):

> That doctrine [of election of remedies] refers to situations where an
> individual pursues remedies that are legally or factually
> inconsistent,...

Equitable Trust Co. of New York v. Connecticut Brass & Mfg. Corp., 10 F.2d 913, 916 (2nd Cir.

1926):

> The doctrine of election of remedies is applicable only in cases
> where the second remedy is clearly inconsistent with the first.

Metropolitan Life Ins. Co. v. Childs Co., 230 N.Y. 285, 291 (1921):

> It [the doctrine of election of remedies], is only applicable 'when a
> choice is exercised between remedies which proceed upon
> irreconcilable claims of right;' 'where there is, by law, or by
> contract, a choice between two remedies.' One may not both
> affirm and disaffirm a contract; or take a benefit under an
> instrument and repudiate it (citations omitted).

and Simon v. Boyer, 51 App.Div.2d 879, 380 N.Y.S.2d 178, 181 (4th Dep't 1976):

> For purposes of the doctrine of election of remedies, inconsistent
> remedies are those which proceed on opposite and irreconcilable
> claims of rights (*Henry v. Herrington,* 193 N.Y. 218, 86 N.E. 29).
> The test is whether the facts necessary to support one remedy are
> consistent with the facts necessary to support the other (*Lumber*

14

> *Mutual Casualty Ins. Co. of N.Y. v. Friedman,* 176 Misc. 703, 28
> N.Y.S.2d 506).

## (E)   Plaintiff's Summary Judgment Motion Constitutes
## A Binding Election of Remedies

Plaintiff's motion for summary judgment on the copyright infringement claim constitutes

a binding election of remedies and precludes plaintiff from pursuing contract-based claims.

As held in Petrello v. White, 2007 WL 2276300 (E.D.N.Y.) at *5, plaintiff's election to

move for summary judgment on its copyright infringement claim constitutes an election of

remedies:

> By moving for judgment as a matter of law on their original claims,
> Defendants made their election. *See LeBoeuf, Lamb, Greene &*
> *MacRae v. Old Republic Ins. Co.,* 243 A.D.2d 168, 177 (1st
> Dept.1998) ("As a matter of statute, a party is permitted to plead
> inconsistent theories of recovery.... However, summary judgment
> being the procedural equivalent of a trial, a litigant must elect
> among inconsistent positions upon seeking expedited disposition
> ....") (internal citations omitted); *Unisys Corp. v. Hercules Inc.,*
> 224 A .D.2d 365, 367 (1st Dept.1996) ("Even where a plaintiff
> may seek recovery on alternative theories, he must make an
> election of remedies at trial ... or upon submission of a motion for
> summary judgment ... the grant of which is the procedural
> equivalent of a trial ....") (internal quotations and citations
> omitted);....

See also: James Lang Wootton U.S.A. v. LeBoeuf, Lamb, Greene & MacRae, 243 App. Div.2d

168, 177, 674 N.Y.S.2d 280, 286 (1st Dep't 1998):

> summary judgment being the procedural equivalent of a trial, a
> litigant must elect among inconsistent positions upon seeking
> expedited disposition (citations omitted).

and H.B.L.R, Inc. v. Command Broadcast Assoc., 156 App. Div.2d 151, 152, 548 N.Y.S.2d 198,

199 (1st Dep't 1989):

> In addition, we note that while a party may plead alternate theories
> of recovery (*cf., 3 Weinstein-Korn-Miller, NY Civ Prac* ¶ 3002.04),
> summary judgment, being the procedural equivalent of a trial
> (*Capelin Assocs. v. Globe Mfg. Corp.,* 34 NY2d 338), requires a
> choice as to the basis upon which recovery is sought (*see, Baratta
> v. Kozlowski,* 94 AD2d 454, 464).

## POINT IV

### ALL CONTRACT-BASED CLAIMS
### MUST BE DISMISSED EVEN IF PLAINTIFF
### IS NOT PRECLUDED FROM ASSERTING THEM

Plaintiff asserts three claims which are based upon the existence of agreements between

Stewart and defendants: Count Seven is for breach of the Assignment and Agreement; Count

Eight is for unjust enrichment arising out of defendants' failure to pay monies due plaintiff under

the Assignment and Agreement; and Count Nine is to rescind the Assignment and Agreement.

As plaintiff has taken the position on numerous occasions throughout the litigation that Stewart

never entered into any agreements with defendants, plaintiff is precluded from asserting claims

sounding in contract, for the reasons explained above. Nevertheless, even if plaintiff were

permitted to assert these claims, defendants are entitled to summary judgment dismissing them,

for the reasons explained below.

### (A)   The Breach of Contract Claim Must Be Dismissed Since
### Stewart Itself Breached the Agreement

The Stewart Estate claim for royalties due under its agreement with Sugar Hill cannot be

sustained since it is undisputed that Stewart and his Estate have collected money from the

exploitation of "No Diggity." As Stewart had assigned his interest in the copyright to Sugar Hill,

Stewart did not have any authority to collect such income, as it was to be paid to Sugar Hill for

disbursement. In fact, Stewart and his Estate collected over $100,000.00 while Sugar Hill

16

collected about $30,000.00. As the Stewart Estate breached the contract by collecting "No

Diggity" income, it did not abide by the terms of the agreements between the parties and

therefore cannot sue for their breach.

The law is well-settled that a plaintiff alleging a breach of contract must establish that it

did not breach the agreement it is suing under. See, e.g.: Diesel Props S.R.L. v. Greystone

Business Credit II LLC, 631 F.3d 42, 52 (2nd Cir. 2011):

> In order to recover from a defendant for breach of contract,
> a plaintiff must prove, by a preponderance of the evidence, (1) the
> existence of a contract between itself and that defendant; (2)
> performance of the plaintiff's obligations under the contract; (3)
> breach of the contract by that defendant; and (4) damages to the
> plaintiff caused by that defendant's breach. *See, e.g., Eternity
> Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New
> York,* 375 F.3d 168, 177 (2d Cir.2004); *Harsco Corp. v. Segui,* 91
> F.3d 337, 348 (2d Cir.1996) (emphasis added).

RCN Telecom Services, Inc. v. 202 Centre Street Realty LLC, 156 Fed. Appx. 349, 350-351 (2nd

Cir. 2005):

> The elements of a breach of contract claim in New York are: (1)
> the existence of a contract, (2) performance by the party seeking
> recovery, (3) non-performance by the other party, and (4) damages
> attributable to the breach. *See Marks v. New York Univ.,* 61
> F.Supp.2d 81, 88 (S.D.N.Y.1999) (emphasis added).

P&E Properties, Inc. v. United Natural Foods, Inc., 713 F.Supp.2d 262, 266-267 (S.D.N.Y.

2010):

> Under New York law, a plaintiff's performance under the contract
> is an element of a breach of contract claim. *See JP Morgan Chase
> v. J.H. Elec. of N.Y.,* 69 A.D.3d 802, 803, 893 N.Y.S.2d 237 (2d
> Dep't 2010) (stating that elements of cause of action for breach of
> contract are "the existence of a contract, the plaintiff's performance
> under the contract, the defendant's breach of that contract, and
> resulting damages").

and A.S. Rosenthal Co. v. Brilliant Silk Mfg. Co., Inc., 217 A.D. 667, 217 N.Y.S. 138, 142 (1st

Dep't 1926):

> a party who seeks to recover damages from the other party to the
> contract for its breach must show that he himself is free from fault
> in respect of performance.

See also: Prime Mover Capital Partners LP v. Elixir Gaming Technologies, Inc., 2011 WL

2465963 (S.D.N.Y.) at *12; Ancile Investment Co. Ltd. v. Archer Daniels Midland Co., 2011

WL 813724 (S.D.N.Y.) at *5; Serdarevic v. Centex Homes LLC, 760 F. Supp.2d 322, 330-331

(S.D.N.Y. 2010); and IMG Fragrance Brands LLC v. Houbigant, Inc., 759 F. Supp.2d 363, 376

(S.D.N.Y. 2010).

As the Stewart Estate breached the agreement between the parties by collecting over

$100,000.00 which should have been paid to Sugar Hill under the terms of the Assignment, the

Stewart Estate cannot establish that it performed its obligations under the Assignment, and

therefore the breach of contract claim must be dismissed.

## (B) The Existence of Agreements Between The Parties Precludes an Unjust Enrichment Claim

As noted in Rodgers v. Roulette Records, Inc., 677 F. Supp. 731, 740 (S.D.N.Y. 1988),

there is no right to recover under an unjust enrichment theory when there is a contract between

the parties:

> Defendants correctly note, however, that plaintiff cannot
> recover under a theory of unjust enrichment "where an express
> contract exists between the parties concerning the same subject
> matter ..." Nixon Gear & Machine Co., Inc. v. Nixon Gear Inc., 86
> A.D.2d 746, 447 N.Y.S.2d 779, 781 (4th Dept.1982). To the extent
> royalties were due under the Contract, plaintiff cannot recover for
> unjust enrichment.

18

See also: IDT Corp. v. Morgan Stanley Dean Witter, 12 N.Y.3d 132, 142, 879 N.Y.S.2d 355, 361

(2009):

> Where the parties executed a valid and enforceable written contract
> governing a particular subject matter, recovery on a theory of
> unjust enrichment for events arising out of that subject matter is
> ordinarily precluded.

Goldner v. Possilico, 7 App. Div.3d 666, 776 N.Y.S.2d 818, 820 (2d Dep't 2004):

> Further, the fifth cause of action against Willow Cliff and its
> general partners to recover damages for unjust enrichment should
> have been dismissed as duplicative of the second cause of action to
> recover damages for breach of contract (*see Bettan v. Geico Gen.
> Ins. Co.*, 296 A.D.2d 469, 745 N.Y.S.2d 545; *Walter H. Poppe
> Gen. Contr. v. Town of Ramapo*, 280 A.D.2d 667, 721 N.Y.S.2d
> 248).

As there are agreements between Stewart and Sugar Hill relating to the division of "No Diggity"

income, specifically the Assignment and Agreement, there is no right to recover such income

under an unjust enrichment theory.

## (C)   **Plaintiff Is Not Entitled to Rescission**

In the complaint the Stewart Estate seeks rescission of the May 25, 1999 Assignment and

Agreement. For the reasons set forth below, this claim has no basis.

### (i)   **Stewart Has Been Paid**

As confirmed in the accompanying declarations of Joseph Robinson, Jr., and Lavaba

Mallison, Sugar Hill paid Stewart $2,500.00 as an advance in 1999 and has received about

$30,000.00 from its foreign licensees, so that Stewart would be owed about $15,000.00. In

addition, as explained by Mr. Robinson, Stewart and the Stewart Estate have collected over

$100,000.00 in violation of the Assignment, and owe Sugar Hill over $40,000.00 as a result of

19

these improper collections.  As Stewart received $2,500.00 from Sugar Hill and owes Sugar Hill

money in connection with his improper collections, there has not been a total failure of

consideration and rescission is not an available remedy.

    In Nolan v. Sam Fox Publishing Co., Inc., 499 F.2d 1394 (2nd Cir. 1974), a songwriter

sought to rescind the publishing agreement with his music publisher, alleging that the publisher

did not pay him 74% of royalties due him over a six year period.  The Court held that rescission

was not an available remedy, as it is only applied "in cases in which a publisher has made none

of the royalty payments:"

> Rescission has also been allowed, despite the absence of any
> showing of fraud, in cases in which a publisher has made none of
> the royalty payments. The rationale of these decisions is, of course,
> that an essential objective of a contract between a composer and
> publisher is the payment of royalties, and a complete failure to pay
> means this objective has not been achieved. Here, however, Fox
> did pay 26% Of the royalties due to Nolan for the applicable
> six-year period, and this partial payment of royalties due
> distinguishes this case from cases where there was total failure to
> pay the required royalties. *See Driver-Harris Co. v. Industrial
> Furnace Corp.,* 12 F.Supp. 918 (WDNY 1935); *Broadcast Music,
> Inc. v. Taylor,* 10 Misc.2d 9, 55 N.Y.S.2d 94 (Sup.Ct.1945);
> *DeMille Co. v. Casey,* 115 Misc. 646, 189 N.Y.S. 275
> (Sup.Ct.1921).  Id. at 1399.

See also: Caferty v. Scotti Brothers Records, Inc., 969 F. Supp. 193, 205 (S.D.N.Y. 1997): "a

contract assigning rights in a musical composition cannot be rescinded for non-payment of

royalties unless the failure to pay royalties is total."

    In the case at bar, Sugar Hill paid Stewart $2,500.00 as an advance toward the

Assignment in 1999, and in addition Stewart and his Estate has collected monies which should

have been paid to Sugar Hill pursuant to the Assignment and therefore have received monies

which must be credited toward Sugar Hill's account. As there has not been a "complete failure

to pay" monies to plaintiff it is not entitled to the equitable remedy of rescission. In fact, the

Stewart Estate owes Sugar Hill about $25,000.00.

## (ii)     Stewart Is Liable for Payments Received in Violation Of the Assignment

Having assigned his interest in the "No Diggity" copyright to Sugar Hill, Stewart was not

entitled to receive any monies generated from its exploitation, as such monies should have been

collected by Sugar Hill. As held in Superior Brassiere Co., Inc. v. Zimetbaum, 214 App. Div.

525, 527, 212 N.Y.S. 473, 475 (1st Dep't 1925):

> If, after assignment, the assignor receives payment from the debtor,
> he is liable to the assignee (citing *Salem Trust Co. v.
> Manufacturers' Finance Co.*, 264 U.S. 182, 197, 44 S.Ct. 266
> (1924)).

Claims between assignors and assignees may be used as offsets. For example, in

Umansky v. Seaboard Industries, Inc., 45 App. Div.2d 1051, 358 N.Y.S.2d 22 (2nd Dep't 1974),

assignees of a purchase money mortgage brought a foreclosure action and the mortgagor

interposed a defense based upon the assignor's alleged breach of a collateral agreement. The

Court held that: "any damages established by it [defendant] may be offset as against the amount

due plaintiffs." 45 App.Div.2d at 1052, 358 N.Y.S.2d at 23.

As Stewart received monies which should have been paid to Sugar Hill under the terms of

the Assignment, Sugar Hill is entitled not only to offset the amount wrongfully received by

Stewart from monies due Sugar Hill, but also to seek an affirmative recovery in the amount of

the monies wrongfully received by Stewart in excess of what would otherwise have been due

him.

21

### (iii)   Rescission Is Not Available Since
Money Damages Are an Adequate Remedy

The Stewart Estate alleges that it is entitled to royalties under its agreements with Sugar

Hill. As money damages afford complete relief for the alleged breach of contract, the equitable

remedy of rescission is not available, as held in Rudman v. Cowles Communications, Inc., 330

N.Y.S.2d 33, 43, 30 N.Y.2d 1, 13-14 (1972):

> Assuming, however, that mutually dependent contracts
> were involved, plaintiffs are not entitled as a matter of law to
> rescission. Such relief, lying in equity, is a matter of discretion
> (*Calhoun v. Millard,* 121 N. Y. 69, 77; *Ungewitter v. Toch,* 31 A D
> 2d 583, 584, *affd.* 26 N Y 2d 687; *Feldman v. Metropolitan Life
> Ins. Co.,* 259 App. Div. 123, 124-125; *cf. Doyle v. Allstate Ins. Co.,*
> 1 N Y 2d 439, 443; CPLR 3017). Moreover, the equitable remedy
> is to be invoked only when there is lacking complete and adequate
> remedy at law and where the status quo may be substantially
> restored (6 N. Y. Jur., *Cancellation of Instruments,* §§ 2-4).

See also: New Shows, S.A. v. Don King Productions, Inc., 210 F.3d 355, 2000 WL 354214 at *2

(2d Cir.): "since the legal remedy in this case is adequate, the equitable remedy of rescission is

simply inappropriate;" and Laugh Factory, Inc. v. Basciano, 608 F. Supp.2d 549, 560 (S.D.N.Y.

2009), ruling that "the return of the money is indeed an adequate legal remedy that bars the claim

in equity [for rescission]."

### (iv)   The Stewart Estate's Rescission Claim
Is Barred by the Statute of Limitations

The Stewart Estate alleges that it has not received any monies whatsoever from Sugar

Hill, despite the fact that the Assignment to Sugar Hill was made in 1999. Under the holding in

Carter v. Goodman Group Music Publishers, 848 F. Supp. 438, 445 (S.D.N.Y. 1994), a claim for

rescission must be brought within six years after it accrues:

22

> Rescission is an equitable remedy and is subject to a six year
> statute of limitations. See N.Y.Civ.Prac.L. & R. § 213(1)
> (McKinney 1990). A claim for rescission on the grounds of duress
> or unconscionability accrues upon the execution of the agreement.
> *See, e.g., Brown v. Tonawanda Housing, Inc.,* 123 A.D.2d 493,
> 507 N.Y.S.2d 92 (1986). Therefore, any claim for rescission of the
> 1979 Agreement expired in 1985. Accordingly, summary judgment
> is granted on all of these claims as well.

As the Stewart Estate alleges that neither Stewart nor the Estate ever received payments from

Sugar Hill, and as the agreement was entered into in 1999, claims for rescission brought some 11

years later are time barred.

### (v) Stewart Has Not Offered to Restore What Was Received

As held in E.T.C. Corp. v. Title Guarantee & Trust Co., 271 N.Y. 124, 127 (1936), a

party seeking rescission must as a prerequisite to the relief offer to restore all consideration

received:

> In an action at law based upon a rescission of a voidable
> contract, the rule has long been established that the party must
> restore or offer to restore before suit whatever he has received by
> virtue of the contract.
>
> In an equitable action for rescission, it is sufficient to make
> the offer in the complaint (citations omitted).

Whether the Stewart Estate's request for rescission of the agreements is deemed an action at law

(in which event the offer to restore must be made before suit) or in equity (in which event the

offer must be made in the complaint), the Stewart Estate's claim for rescission must be dismissed

because it never made the requisite offer at any time.

### (vi) Lavaba Mallison Has Not Been Joined As A Party

The Stewart Estate seeks to rescind both the Assignment and the Agreement. With

23

respect to the Assignment, on its face it is a conveyance of Stewart's interest in the "No Diggity" copyright to Sugar Hill Music, and does not require any payments from Sugar Hill to Stewart. Therefore, unless this Assignment is read in conjunction with the Agreement, the Stewart Estate is not entitled to rescind the Assignment based upon non-payment of monies.

If the Agreement is read in conjunction with the Assignment the rescission claim must nevertheless be dismissed since Lavaba Mallison, a party and signatory to the agreement, is not a party to this action. As the Agreement specifies that Mr. Mallison is to receive 20% of the income collected by Sugar Hill, he must be named as a party to a rescission claim since his rights would be affected. See e.g.: American International Specialty Lines Ins. Co. v. Towers Financial Corp., 198 B.R. 55, 62 (S.D.N.Y. 1996):

> Under New York law, "[i]n an action for rescission, all parties to the agreement must be joined as necessary parties,..." (citations omitted).

Frymer v. Bell, 99 App.Div.2d 91, 95, 472 N.Y.S.2d 622, 625 (1st Dep't 1984): "In an action for rescission, all parties to the agreement must be brought before the Court (citations omitted);" and Tudor v. Riposanu, 93 App. Div.2d 718, 461 N.Y.S.2d 6 (1st Dep't 1983): "In an action for rescission, all parties to the agreement must be joined as necessary parties (citations omitted)."

## (D)    The Court Lacks Subject Matter Jurisdiction of Plaintiff's Claims

28 U.S.C. §1332(a) provides for subject matter jurisdiction "where the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs." As set forth in the Robinson Declaration, the amount owed to the Stewart Estate (even if plaintiff is permitted to assert contract claims and Sugar Hill is not entitled to credits for the amounts wrongfully received by the Stewart Estate) is about $15,500.00. Sugar Hill collected about

24

$30,000.00, 60% of which ($18,000.00) would be due plaintiff. However, Stewart received a

$2,500.00 advance, so that about $15,500.00 would be owed, even if Sugar Hill is not credited

with monies wrongfully received by Stewart. Therefore, the Court should dismiss plaintiff's

contract claims (breach of contract, unjust enrichment and rescission) for lack of subject matter

jurisdiction.

## CONCLUSION

For the reasons explained above defendants' motion for summary judgment should be

granted and the amended complaint dismissed.

DATED: NEW YORK, NEW YORK
NOVEMBER 18, 2011

Respectfully submitted,

CINQUE & CINQUE, P. C.

By: _____

James P. Cinque (JPC-3673)
Attorneys for Defendants
845 Third Avenue, Suite 1400
New York, New York 10022
Telephone: (212) 759-5515
Telefax: (212) 759-7737
Email: CINQUE845@aol.com

25