UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CHERYL COOK, GWENDOLYN CHISOLM, and
THE ESTATE OF WILLIAM A. STEWART JR.

Plaintiffs,

- against -

SUGAR HILL MUSIC PUBLISHING, LTD.,
DIAMOND HEAD MUSIC, INC. d/b/a TWENTY
NINE BLACK MUSIC, JOEY ROBINSON,
SYLVIA ROBINSON and LELAND ROBINSON,

Defendants.
-------------------------------------------------------------X

Index No.: 10 CIV 2632

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

MEISTER SEELIG & FEIN LLP
*Attorney for Plaintiff*
Two Grand Central Tower
140 East 45th Street, 19th Floor
New York, New York 10017
(212) 655-3580

### TABLE OF CONTENTS

FACTUAL BACKGROUND .................................................................................................1

THE SUMMARY JUDGMENT STANDARD ....................................................................2

POINT I  PLAINTIFF IS ENTITLED TO A JUDGMENT RESCINDING THE ALLEGED AGREEMENTS AND RECOVERING THE MONIES  THAT DEFENDANTS RETAINED UNJUSTLY ...........................................................................................................................3

    A.    Plaintiff is Entitled to an Order of Rescission.................................................4

    B.    Plaintiff Should Recover All Monies That Have Unjustly Enriched Defendants at the Expense of Plaintiff .......................................................................................................6

POINT II ALTERNATIVELY DEFENDANTS HAVE MATERIALLY BREACHED THE ALLEGED AGREEMENTS AND PLAINTIFF IS ENTITLED TO JUDGMENT AS A MATTER OF LAW  ON ITS BREACH OF CONTRACT CLAIM AND THE AGREEMENTS MUST BE TERMINATED ...........................................................................................................................7

POINT III  ALTERNATIVELY PLAINTIFF IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ITS CLAIM OF COPYRIGHT INFRINGEMENT.................................................10

POINT IV  THE CORPORATE VEIL AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE PIERCED.................................................................................................................................13

POINT V  PLAINTIFF IS ENTITLED TO JUDGMENT AS A MATTER OF LAW DISMISSING DEFENDANTS' COUNTERCLAIM ................................................................14

    A.    DEFENDANTS CANNOT PROVE DAMAGES ........................................15

        i.    Mr. Cohen's Written Report Should Be Excluded Because It Fails to Meet  The Requirements of Fed. R. Civ. P. 26(a)(2)(B) .........................16

        ii.    Mr. Cohen's Testimony Is Not Admissible Under Fed. R. Evid. 702 ..........................17

    B.    DEFENDANTS' COUNTERCLAIM IS BARRED BY THE DOCTRINE OF WAIVER AND ESTOPPEL ...............................................................................................................24

    C.    DEFENDANTS' COUNTERCLAIM IS BARRED BY THEIR OWN BREACH .................................................................................................................25

CONCLUSION ...................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

Cases

*ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.,*
   957 F. Supp. 1308 (S.D.N.Y. 1997)..................................................................6

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 , 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)...............................3

*Arden v. Columbia Pictures Indus., Inc.,*
   908 F. Supp. 1248 (S.D.N.Y. 1995).................................................................10

*ARP Films, Inc. v. Marvel Entm't Group, Inc.,*
   952 F.2d 643 (2d Cir. 1991)..............................................................................8

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,*
   757 F.2d 523 (2d Cir.1985)...............................................................................4

*Cafferty v. Scotti Bros. Records, Inc.,*
   969 F. Supp. 193 (S.D.N.Y. 1997)...................................................................4

*Callanan v. Powers,*
   199 N.Y. 268 , 92 N.E. 747 (1910)..................................................................4

*Celotex Corp. v. Catrett,*
   477 U.S. 317 , 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)...............................3

*Chertkova v. Conn. Gen.'l Life Ins. Co.,*
   92 F.3d 81 (2d Cir.1996)...................................................................................3

*Christian Dior-New York, Inc. v. Koret, Inc.,*
   792 F.2d 34 (2d Cir. 1986)................................................................................24

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
   509 U.S. 579, 113 S. Ct. 2786 , 125 L. Ed. 2d 469 (1993)............................17

*Dolmetta v. Uintah Nat. Corp.,*
   712 F.2d 15 (2d Cir. 1983)................................................................................6

*ESPN, Inc. v. Office of Com'r of Baseball,*
   76 F. Supp. 2d 383 (S.D.N.Y. 1999)................................................................8

*Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.,*
   499 U.S. 340 , 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991).............................10

*Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd.,*
   909 F.2d 698 (2d Cir. 1990)..............................................................................13

*Jafari v. Wally Findlay Galleries,*
    741 F. Supp. 64 (S.D.N.Y. 1990)..................................................................8

*Jorgensen v. Epic/Sony Records,*
    351 F.3d 46 (2d Cir. 2003)......................................................................11

*K. Bell & Associates, Inc. v. Lloyd's Underwriters,*
    827 F. Supp. 985 (S.D.N.Y. 1993).......................................................8, 15

*Kumho Tire Co., Ltd. v. Carmichael,*
    526 U.S. 137, 119 S. Ct. 1167 , 143 L. Ed. 2d 238 (1999)...................17

*Legend Artists Mgmt., Inc. v. Blackmore,*
    273 A.D.2d 91 , 709 N.Y.S.2d 85 (2000) ..............................................8

*Martes v. USLIFE Corp.,*
    927 F. Supp. 146 (S.D.N.Y. 1996).........................................................6

*Mina Inv. Holdings, Ltd. v. Lefkowitz,*
    51 F. Supp. 2d 486 (S.D.N.Y. 1999).....................................................6

*Nolan v. Sam Fox Pub. Co., Inc.,*
    499 F.2d 1394 (2d Cir. 1974).............................................................4, 5

*Nordic Bank PLC v. Trend Group, Ltd.,*
    619 F. Supp. 542 (S.D.N.Y. 1985)........................................................8

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v Coopers & Lybrand, LLP,*
    322 F3d 147 (2d Cir 2003)...................................................................4

*Robinson v. Sanctuary Record Groups, Ltd.,*
    542 F. Supp. 2d 284(S.D.N.Y. 2008) *vacated sub nom. Robinson v. Sanctuary Music,*
    383 F. App'x 54 (2d Cir. 2010)...........................................................22

*Septembertide Pub., B.V. v. Stein & Day, Inc.,*
    884 F.2d 675 (2d Cir. 1989).................................................................4

*Skibeck Pipeline Co., Inc. v. Wurlitzer,*
    89-CV-95S, 1992 WL 198364 (W.D.N.Y. July 28, 1992) ...................5

*Truglia v. KFC Corp.,*
    692 F. Supp. 271(S.D.N.Y. 1988) *aff'd sub nom. Truglia v. KFC,*
    875 F.2d 308 (2d Cir. 1989).................................................................8

*Tuff-N-Rumble Management, Inc. v. Sugarhill Music Pub. Inc.,*
    2000 Copr. L. Dec. P 28050 (2000)................................................13, 14

*Universal City Studios, Inc. v. Nintendo Co., Ltd.,*
   797 F.2d 70 (2d Cir. 1986)..................................................................................6

*Voest-Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.,*
   707 F.2d 680 (2d Cir. 1983)...............................................................................24

Statutes

17 U.S.C. § 410(c) ................................................................................................11

17 U.S.C. §§ 501 ...................................................................................................11

17 U.S.C. §§ 106 ...................................................................................................11

17 USC § 504 ........................................................................................................13

Rules

Fed. R. Civ. P. 26(a)(2)(B)........................................................................15, 16, 17

Fed. R. Civ. P. 56 .............................................................................................1, 3

Fed. R. Evid. 702.............................................................................................passim

Fed. R. Evid. 901(a) .............................................................................................11

## PRELIMINARY STATEMENT

Plaintiff respectfully submits this memorandum of law, together with the Adelman Decl., and the exhibits annexed thereto, and the Berger Decl.,[1] in support of its motion, pursuant to Fed. R. Civ. P. 56 for summary judgment on its claims of (i) rescission and unjust enrichment; (ii) breach of contract; or alternatively (iii) copyright infringement against Defendants[2]; (iii) piercing the corporate veil; and (iv) dismissing Defendants' counterclaims and affirmative defenses as a matter of law.

## FACTUAL BACKGROUND

This is an action for copyright infringement, rescission of alleged agreements, breach of alleged agreements and unjust enrichment. *See* Adelman Decl. ¶3, Ex. 1. Plaintiff is an estate formed under the laws of Georgia of William A. Stewart Jr. ("Stewart"). During his lifetime Stewart was sometimes doing business as Libvrig Publishing. *See* Adelman Decl. ¶3, Ex. 1. Upon Stewart's death, Plaintiff received "full power to collect the assets of said decedent [Stewart]." *See* Adelman Decl., ¶ 6, Ex. 4.

Stewart was an individual who wrote, produced and recorded music. *See* Adelman Decl. ¶3, Ex. 1. In or around 1996, Stewart, along with Andre Romell Young p/k/a Dr. Dre, Chauncey Hannibal, Teddy Riley and Lynise Walters, created a composition entitled "No Diggity" which was subsequently recorded by the recording artist known as Blackstreet and released on Interscope Records on September 10, 1996 (the "Composition"). *See* Adelman Decl. ¶3, Ex. 1. The Composition is copyrightable subject matter under the laws of the United States, Registration No. PA0000875587 dated September 2, 1997. *See* Adelman Decl. ¶3, Ex. 1. It is undisputed that Plaintiff owns a copyright interest in the Composition, as evidenced by the certificate of registration attached to Plaintiff's Amended Complaint. *See* Adelman Decl., ¶3, Ex. 1(A).

It is further undisputed that Defendants have exploited the Composition. *See* Adelman Decl., ¶4, Ex. 2 (Defendants "admit that Sugar Hill and [Diamond Head] have licensed . . . "No Diggity."). As explained in

---

[1] The "Adelman Decl." shall refer to the Declaration of Gary Adelman dated November 18, 2011. The "Berger Decl." shall refer to the Declaration of Jay L. Berger dated November 18, 2011.

[2] "Defendants" shall collectively refer to defendants Sugar Hill Music Publishing, Ltd. ("Sugar Hill"), Diamond Head Music, Inc. d/b/a Twenty Nine Black Music ("Diamond Head"), Joey Robinson ("J. Robinson"), Sylvia Robinson ("S. Robinson") and Leland Robinson ("L. Robinson").

the Berger Report, as a result of their exploitation of the Composition, Defendants have benefited in the amount of $317,106.77.  *See* Adelman Decl., ¶7, Ex. 5, pg. 13.

Despite their exploitation of the Composition and the collection of monies as a result of same, Defendants never paid Stewart or Plaintiff.  Defendants have alleged that they paid Stewart an advance of twenty five hundred dollars ($2,500), under the Alleged Publishing Agreement.[3]  Adelman Decl. ¶9, Ex. 7. However, there is no admissible evidence that Defendants ever paid twenty five hundred dollars ($2,500) to Stewart.  Defendants have produced no checks, bank statements or other documentation that would support this fact.  *See* Adelman Decl. ¶10, 11, Ex. 8, J. Robinson Dep.83:19-25, 84:1-25.  Additionally, Defendants' testimony reveals that none of the Defendants can testify upon personal knowledge to the payment of the alleged twenty five hundred dollars ($2,500) to Stewart.  *See* Adelman Decl. ¶11, Ex. 8, J. Robinson Dep. 80:25, 81:1-8.   Similarly, the record reveals that none of the Defendants can testify upon personal knowledge that royalty payments or accountings were ever sent to Stewart.  *See* Adelman Decl. ¶11, Ex. 8, J. Robinson Dep. 91:14-25, 92:1-25, 93:1-10;  ¶11 and 12, Exs. 9 and 10.  Defendants have also testified that they do not have any documents that evidence payment of royalties to Plaintiff.  *See* Adelman Decl. ¶11, Ex. 8, J. Robinson Dep. 85:20-25, 86:1-9, 87-88.

Defendants have wrongly exploited the Composition and have benefited in the amount of $$317,106.77, but they have never paid Stewart or Plaintiff.  Plaintiff is entitled to recovery of these monies. As will be set forth at length below, there is no genuine issue of material fact as to the above facts.  As such, and because Defendants will not be able to produce admissible evidence to support their defenses, no reasonable trier of fact could find for Defendant.  For the reasons that follow Plaintiff is entitled to judgment as a matter of law on its claims and the dismissal of Defendants' counterclaim.

## THE SUMMARY JUDGMENT STANDARD

---

[3] The documents annexed to the Adelman Decl., as Exhibit X, bates stamped 1 and 2 shall be referred to herein as the "Alleged Assignment" and the "Alleged Publishing Agreement" and shall collectively be referred to as the "Alleged Agreements."

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be disputed must support the assertion by:

> citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or []
> showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.  *See* Fed. R. Civ. P. 56(c).

The burden of demonstrating that no factual dispute exists is on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  However, once the moving party has met this burden, the burden shifts to the opposing party opposing party to address that assertion of fact.  If the opposing party fails to properly address the movants assertion of fact as required by Rule 56(c) the Court may grant summary judgment if the motion and supporting materials--including the facts considered undisputed-- show that the movant is entitled to it. *See* Fed. R. Civ. P. Rule 56(e).No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the nonmovant's favor. *See Chertkova v. Conn. Gen.'l Life Ins. Co.,* 92 F.3d 81, 86 (2d Cir.1996).

However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Here, as set forth below, Plaintiff has satisfied this burden.  When the record is taken as a whole, including the depositions, documents, affidavits or declarations, admissions, interrogatory answers and other materials, there can be no question that the material facts of Plaintiff's claims cannot be disputed by Defendants.  As no reasonable juror could find in Defendants' favor, Plaintiff is entitled to judgment as a matter of law.

## POINT I

## PLAINTIFF IS ENTITLED TO A JUDGMENT RESCINDING THE ALLEGED AGREEMENTS AND RECOVERING THE MONIES

## THAT DEFENDANTS RETAINED UNJUSTLY

### A.  PLAINTIFF IS ENTITLED TO AN ORDER OF RESCISSION

Plaintiff is entitled to a judgment rescinding the Alleged Agreements[4] between the parties.  Here Defendants' have failed to pay any royalties to Plaintiff or Stewart under the Alleged Agreements.  Their failure to pay royalties without doubt defeats the object of the parties in making the contracts, and as such the Alleged Agreements must be rescinded *ab initio.*

Under New York Law, rescission is permitted where the breach of an agreement is "material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract."  *Septembertide Pub., B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 678 (2d Cir. 1989), *citing Callanan v. Powers*, 199 N.Y. 268, 282, 92 N.E. 747 (1910).

Specifically with reference to assignment and publishing agreements, it is well settled law that rescission is proper, despite the absence of any showing of fraud, in cases in which a publisher has made none of the royalty payments under an agreement. *See Nolan v. Sam Fox Pub. Co., Inc.*, 499 F.2d 1394, 1399 (2d Cir. 1974); *Septembertide Pub., B.V.*, 884 F.2d, 678-79(rescission is available where there is a total failure to pay royalties); *See Maldonado v Valsyn, S.A.*, 06 CIV. 15290 (RMB), 2009 WL 3094888 (S.D.N.Y. Sept. 23, 2009) *aff'd*, 390 Fed Appx 27 (2d Cir 2010) (a contract assigning rights in a musical composition can be rescinded, in the absence of fraud, where failure to pay royalties is total); *See Cafferty v. Scotti Bros. Records, Inc.*, 969 F. Supp. 193, 205 (S.D.N.Y. 1997)(same).

The rationale of these decisions is, of course, that an essential objective of a contract between a composer and publisher is the payment of royalties, and a complete failure to pay means this objective has not

---

[4] As an initial matter it must be noted that Plaintiff is not admitting the validity of the Alleged Agreements.  However for the purposes of Point I and Point II, Plaintiff will assume that the Alleged Agreements were signed by Stewart. This will not be assumed in Point III.  The validity of the Alleged Agreements may be admitted **against Defendants**.  Defendants Amended Answer and Counterclaims alleged that Sugar Hill received an assignment of an interest in the copyright to "No Diggity" from Libvrig Publishing on May 25, 1999 (¶14) and further alleged that Libvrig Publishing and Stewart executed an assignment in favor of Sugar Hill on May 25, 1999 (First Affirmative Defense).  These factual allegations are judicial admissions and Defendants are bound to them throughout the course of the proceeding.  *See Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir.1985) (party cannot contradict its own pleading with affidavits); *Official Comm. of Unsecured Creditors of Color Tile, Inc. v Coopers & Lybrand, LLP*, 322 F3d 147, 167 (2d Cir 2003). As such Defendants cannot contest these facts on summary judgment, and they must be admitted against Defendant only.

been achieved. *See Nolan*, 499 F.2d, 1399.  The effect of a rescission is to void the contract *ab initio*.  *See Skibeck Pipeline Co., Inc. v. Wurlitzer*, 89-CV-95S, 1992 WL 198364 (W.D.N.Y. July 28, 1992).

Here, pursuant to the Alleged Agreements, Defendants were supposed to pay Plaintiff 60% of monies collected on the Composition.  *See* Adelman Decl., ¶11 and 12, Exs. 8 and 9.  However, here, despite the fact that Defendants collected monies, as set forth in the Berger Report, from the licensing of the Composition, Defendants' failure to pay Plaintiff under the Alleged Agreements was **total.**  There is no admissible evidence that Defendants ever paid Stewart the alleged $2,500 advance, nor did they pay Stewart royalties.

Despite their allegation, Defendants cannot produce admissible evidence that Defendants paid Stewart the alleged $2,500 advance under the Alleged Agreements.  Documentation, such as checks and bank statements, supporting this allegation was requested from Defendants, but was never produced.  *See* Adelman Decl. ¶10. Joey Robinson acknowledged that Defendants do not have any documentation to prove that the alleged advance was ever paid.  *See* Adelman Decl. ¶11, Ex. 8,  J. Robinson Dep.83:19-25, 84:1-25, 85:20-25, 86:1-9, 87-88.  The record further reveals that Defendants have no personal knowledge of the payment of the alleged $2,500 advance.  Joey Robinson testified that he only "believes" it was paid.  *See* Adelman Decl. ¶11, Ex. 8, J. Robinson Dep. 80:25, 81:1-8.  However, Joey Robinson's un-substantiated beliefs are not admissible evidence and are not sufficient to create a genuine issue of material fact.

Defendants also have no admissible evidence that royalty payments were ever sent to Stewart.  *See* Adelman Decl. ¶11, Ex. 8, J. Robinson Dep. 91:14-25, 92:1-25, 93:1-10. Sylvia Robinson, the only other individual who could have knowledge of payment of the alleged advance or payment of royalties, signed a verification that she did not have any such knowledge.  *See* Adelman Decl. ¶12 and 13, Exs. 9 and 10, (Defendants Objections to Notices of Deposition ¶3 "As indicated in the attached verifications of Sylvia Robinson and Leland Robinson . . . they do not have knowledge of the subject matter involved in the pending action" and attached verification of Sylvia Robinson dated January 31, 2011, confirming that she has no knowledge other than responding to the Interrogatory No 2., which requested the identity of officers directors and shareholders of the corporate defendants).

The testimony of Gary Cohen, Defendants proposed expert, is further telling that Defendants never paid royalties to Plaintiff. Mr. Cohen testified that Defendants never showed him any documents that indicated that they ever paid any royalties to Plaintiff. *See* Adelman Decl., ¶14, Ex. 11, Cohen Dep. 77:4-7. Nor did Defendants tell Cohen that they ever paid Plaintiff anything more than the $2,500. *See* Adelman Decl., ¶14, Ex. 11, Cohen Dep. 77:16-23. The record here clearly demonstrates that Defendants failure to remit payment of royalties to Plaintiff or Stewart under the Alleged Agreements was total. For a publishing agreement, this breach is so substantial and fundamental that it defeats the object of the making of contract.

Here there is no genuine issue of material fact as to Defendants' total failure to pay royalties under the Alleged Agreements. Furthermore, Defendants cannot support a contrary position with admissible evidence. As such judgment as a matter of law can properly be granted to Plaintiff on its claim of rescission *ab initio*.

### B.   PLAINTIFF SHOULD RECOVER ALL MONIES THAT HAVE UNJUSTLY ENRICHED DEFENDANTS AT THE EXPENSE OF PLAINTIFF

Along with an order rescinding the Alleged Agreements *ab initio*, Plaintiff is entitled to recover all monies that Defendants collected and unjustly retained from their exploitation of the Composition.

As the Second Circuit has explained, to recover on a theory of unjust enrichment, a "plaintiff must prove that the defendant was enriched, that such enrichment was at plaintiff's expense, and that the circumstances were such that in equity and good conscience the defendant should return the money or property to the plaintiff." *See Mina Inv. Holdings, Ltd. v. Lefkowitz*, 51 F. Supp. 2d 486, 489 (S.D.N.Y. 1999), *citing Dolmetta v. Uintah Nat. Corp.*, 712 F.2d 15, 20 (2d Cir. 1983); *see Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 797 F.2d 70, 79 (2d Cir. 1986); *ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.*, 957 F. Supp. 1308, 1333 (S.D.N.Y. 1997); *Martes v. USLIFE Corp.*, 927 F. Supp. 146, 149 (S.D.N.Y. 1996).

Here all three elements of unjust enrichment have been satisfied. It is not disputed that Defendants have been enriched through the collection of monies that resulted from their exploitation of the Composition. *See* Adelman Decl. ¶4, Ex. 2 (Ans. ¶15 "admit that Sugar Hill and [Diamond Head] have licensed their interest in the "No Diggity" composition subsequent to May 25, 1999."); ¶11, Ex. 8, J. Robinson Dep. 92:13-19 (testifying that Sugar Hill has received monies in connection with "No Diggity"). In fact as explained at

length in the Expert Report of Jay L. Berger (the "Berger Report") Defendants have benefitted in the amount of $317,106.77 from their exploitation of the Composition. *See* Adelman Decl. ¶7, Ex. 5.

Furthermore, it cannot be disputed that the enrichment was at Plaintiff's expense. Plaintiff owns an interest in the copyright for the Composition. *See* Adelman Decl. ¶3, Ex. 1(A). Defendants' allegedly exploited the Composition by virtue of receiving the Alleged Agreements, which contained an alleged "assignment of interest in the copyright 'No Diggity'" from Plaintiff. *See* Adelman Decl. ¶4, Ex. 2 (Ans. ¶14-15). Under the Alleged Publishing Agreement, Defendants were to take an administration fee of twenty percent (20%) and were to pay Plaintiff sixty percent (60%). *See* Adelman Decl. ¶9, Ex. 7.

However, as explained in Point I(A) above, Defendants never paid any royalties to Plaintiff. *See* Point I(A). Defendants' failure to remit sixty percent (60%) of monies collected on the Composition is unfair and unjust. Defendants have taken unfair advantage of Plaintiff and as such the circumstances are such that they should return the $317,106.77 that they benefitted from the Composition to Plaintiff.

Defendants also cannot produce admissible evidence to contest the Berger Report's findings on damages through their alleged expert report Gary Cohen (the "Cohen Report") or by any opinion given by Cohen, in the form of testimony or declaration, as Cohen's opinions are not admissible under Fed. R. Evid. 702. *See* Point V, below.

As set forth above, Defendants cannot put forth admissible evidence that would support any argument that there are issues of fact as to the elements of these claims. As such, there can be no genuine issues of material fact and Plaintiff is entitled to a judgment rescinding the Alleged Agreements and returning $317,106.77 to Plaintiff.

## POINT II
## ALTERNATIVELY DEFENDANTS HAVE MATERIALLY BREACHED THE ALLEGED AGREEMENTS AND PLAINTIFF IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ITS BREACH OF CONTRACT CLAIM AND THE AGREEMENTS MUST BE TERMINATED

In the alternative event that this Court will not rescind the Alleged Agreements *ab initio*, Plaintiff is entitled to judgment as a matter of law on its breach of contract claim. By their complete failure to pay Plaintiff royalties under the Alleged Agreements, Defendants have materially breached the Alleged

Agreements. As such this Court should grant Plaintiff judgment as a matter of law for damages resulting from Defendants material breach and for termination of the Alleged Agreements.

To prevail on a breach of contract claim Plaintiff must prove: (1) the existence of a contract; (2) due performance of the contract by the plaintiff; (3) breach of contract by the defendant; and, (4) damages resulting from the breach. *Nordic Bank PLC v. Trend Group, Ltd.*, 619 F. Supp. 542, 561 (S.D.N.Y. 1985); *K. Bell & Associates, Inc. v. Lloyd's Underwriters*, 827 F. Supp. 985, 988 (S.D.N.Y. 1993).

Furthermore, it is well settled law that the failure to tender payment is a material breach of a contract. *See Truglia v. KFC Corp.*, 692 F. Supp. 271, 276 (S.D.N.Y. 1988) *aff'd sub nom. Truglia v. KFC*, 875 F.2d 308 (2d Cir. 1989); *Jafari v. Wally Findlay Galleries*, 741 F. Supp. 64, 67 (S.D.N.Y. 1990); *ARP Films, Inc. v. Marvel Entm't Group, Inc.*, 952 F.2d 643, 649 (2d Cir. 1991)(failure to tender payment is generally deemed a material breach of a contract).

Moreover, where a party materially breaches, he has failed to substantially perform the contract, and the other party is discharged from performing his obligation. Under New York Law when a party has wrongly withheld substantial payment the non-breaching party has a right to terminate the agreement. *See Legend Artists Mgmt., Inc. v. Blackmore*, 273 A.D.2d 91, 92, 709 N.Y.S.2d 85 (2000); *ESPN, Inc. v. Office of Com'r of Baseball*, 76 F. Supp. 2d 383, 392 (S.D.N.Y. 1999)("The remedy of termination—or, more accurately, the 'right' to terminate—is available only where one party has materially breached the contract.... Where a breach is material, the party is justified in refusing to go on, and thus the law provides that party with the right to terminate").

The record here demonstrates that there is no genuine issue of material fact as to any of the above elements. Defendants cannot dispute the Alleged Agreements[5] or the terms contained therein. Under the Alleged Publishing Agreement, Defendants were required to pay 60% of monies collected on the Composition to Plaintiff. *See Adelman Decl.* ¶9, Ex. 7 ("[o]f all monies collected [Stewart] will receive 60%"); ¶11, Ex. 8, J. Robinson Dep. 89:3-7. Additionally Defendants cannot dispute that they collected and received monies

---

[5] Plaintiff does not concede the validity of the Alleged Agreements in connection with their copyright infringement claim. However, as explained in Footnote 4 above, Defendants have made factual allegations concerning the Alleged Agreements and as such those factual allegations are judicial admissions, which Defendants are bound to for the duration of this proceeding.

under the Alleged Agreements. *See* Adelman Decl. ¶11, Ex. 8, Robinson Dep. 92:13-19 (testifying that Sugar Hill has received monies in connection with "No Diggity").

 The record further establishes that there is no genuine issue of material fact as to Defendants' material breach of the Alleged Agreements by failing to remit to Plaintiff, 60% of the monies collected by Defendants on the Composition.  In fact, Defendants never paid Plaintiff anything.

 Defendants allege that they paid Stewart an advance of $2,500, but Defendants **cannot** produce any admissible evidence to support this contention.  Defendants have failed to produce and admitted that they are not in possession of checks, bank statements or other documentation that would evidence the alleged payment. *See* Adelman Decl. ¶10, 11, Ex. 8, J. Robinson Dep.83:19-25, 84:1-25.  Additionally, Defendant Joey Robinson has no personal knowledge of paying $2,500 to Plaintiff.  Joey Robinson testified that he "believes" it was paid. *See* Adelman Decl. ¶11, Ex. 8, J. Robinson Dep. 80:25.  But his belief is based upon the Alleged Publishing Agreement itself and hearsay from third parties. *See* Adelman Decl. ¶11, Ex. 8, J. Robinson Dep. 80:25, 81:1-8.  It is well settled that, mere belief and speculation are inadmissible and insufficient to demonstrate a genuine issue of material fact.

 Similarly Defendants have admitted that they have "no evidence" that Defendants sent royalty payments to Plaintiff. *See* Adelman Decl. ¶11, Ex. 8, J. Robinson Dep. 85:20-25, 86:1-9, 87-88, 91:14-25, 92:1-25, 93:1-10.  And Defendants have no documents that evidence accountings sent to Plaintiff. *See* Adelman Decl. ¶11, Ex. 8, J. Robinson Dep. 85:2-19 ("Q: Did you find any documents in which you sent to Mr. Stewart? A: No I didn't.").  Although Joey Robinson testified that his mother Sylvia Robinson handled "No Diggity", Sylvia Robinson previously verified that she did not have any personal knowledge of these issues. *See* Adelman Decl. ¶12 and 13, Exs. 9 and 10.  In addition, Mr. Cohen, Defendants' purported expert, testified that Defendants never showed him any documents that indicated that they ever paid any royalties to Plaintiff. *See* Adelman Decl., ¶14, Ex. 11, Cohen Dep. 77:4-7.  Nor did Defendants tell Cohen that they ever paid Plaintiff anything more than the $2,500. *See* Adelman Decl., ¶14, Ex. 11, Cohen Dep. 77:16-23.  To the extent that they had made payments, they would have given this information to Cohen as it would have increased their alleged damages or decreased Plaintiffs damages.

There is also no dispute that Plaintiff has been damaged by Defendants failure to pay royalties.  As set forth in the Berger Report under the terms of the Alleged Publishing Agreement Defendants have failed to remit $190,264.06 to Plaintiff.  *See* Adelman Decl., ¶7, Ex. 5, pg. 13.  As will be discussed at length in Point V below Defendants cannot produce admissible evidence to contest damages as the Cohen Report and any opinion by him, in the form of testimony or declaration, is not admissible under Fed. R. Evid. 702.

Based upon the above, there can be no genuine issue of material fact as to the validity of the Alleged Agreements, that Defendants exploited the Composition, that Defendants' breached the Alleged Agreements or the amount of damages that are due to Plaintiff.  Moreover, given that Defendants have collected $317,106.77 on the Composition but paid Plaintiff **nothing,** their breach is material and gives rise to a right to terminate the Alleged Agreements.

Defendants cannot produce any admissible evidence to demonstrate the presence of a genuine issue of material fact as to any of these elements that would allow a reasonable jury to find in their favor.  As such Plaintiff is entitled to summary judgment on its claim of breach of contract and is entitled to a judgment in the amount that it was damaged and terminating the Alleged Agreements.

## POINT III

## ALTERNATIVELY PLAINTIFF IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ITS CLAIM OF COPYRIGHT INFRINGEMENT

In alternative[6] to the above, Plaintiff is entitled to judgment as a matter of law on its copyright infringement claim.

In order to succeed on a claim of copyright infringement, a copyright owner must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Arden v. Columbia Pictures Indus., Inc.*, 908 F. Supp. 1248, 1257 (S.D.N.Y. 1995) *quoting Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991).

---

[6] Plaintiff alternatively believes that it can recover on its claim of copyright infringement, as there is evidence that the Alleged Agreements are not valid.  Plaintiff is aware that it cannot simultaneously recovery for copyright infringement and breach of contract, rescission and unjust enrichment.  As such should the Court find that that there is no genuine issue of material fact and Plaintiff could be entitled to judgment as a matter of law on two claims that would in effect give redress for only one wrong, Plaintiff will elect a remedy prior to entry of judgment.

Here both elements of copyright infringement are satisfied and undisputed.   It is well established that a certificate of registration from the United States Register of Copyrights constitutes *prima facie* evidence of the valid ownership of a copyright. *See* 17 U.S.C. § 410(c).  *See also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003).  As evidenced by the certificate of registration attached to Plaintiff's Amended Complaint, Plaintiff has secured such certificate of registration for "No Diggity." *See* Adelman Decl., ¶3, Ex. 1(A).  Furthermore, by virtue of the letters of administration, Grace Stewart, the Administrator of Plaintiff, has the "full power to collect the assets of said decedent [Stewart]." *See* Adelman Decl., ¶ 6, Ex. 4.  Thus, the first element of Plaintiff's infringement claim is satisfied.

It is further undisputed that Defendants "copied" the Composition. *See* Adelman Decl., ¶4, Ex. 2 (Defendants "admit that Sugar Hill and [Diamond Head] have licensed . . . "No Diggity.").  Defendants have violated one of the exclusive rights granted to the owner of the copyright, and as such Defendants have infringed upon Plaintiff's copyright. *See* 17 U.S.C. §§ 501 and 106.

As a defense, Defendants have alleged that they had the right and/or authorization to license the Composition by virtue of the Alleged Agreements. *See* Adelman Decl., ¶4, Ex. 2, ¶38.  However, Defendants cannot produce admissible evidence to support this contention.

The Alleged Agreements cannot be authenticated and as such cannot be admissible at trial.  "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *See* Fed. R. Evid. 901(a).  Here the Alleged Agreements are not executed by Defendants, or a previous representative of Defendants. *See* Adelman Decl., ¶8, 9, Exs. 6, 7.  In both the Alleged Assignment and Alleged Publishing Agreements, the signature line for Sugar Hill is **blank**. *See* Adelman Decl., ¶8, 9, Exs. 6, 7.  Moreover, Joey Robinson testified that before the day he received the summons and complaint in this action he had never even seen the Alleged Assignment. *See* Adelman Decl., ¶11, Ex. 8, J. Robinson Dep. 69:15-17.  Joey Robinson also testified that he did not see Stewart sign the document nor is he familiar with Stewart's signature. *See* Adelman Decl., ¶11, Ex. 8, J. Robinson Dep. 69:21-25, 70:1-5.  Lastly by virtue of Sylvia Robinson's

11

verification dated January 31, 2011, she has no personal knowledge of these events[7]. *See* Adelman Decl., ¶12, Ex. 9.

Although Defendants will attempt to use the testimony of Joseph LaMontagne ("LaMontagne"), the notary who Defendants claim notarized the Alleged Assignment to authenticate the documents, they cannot succeed. First as, discussed above, the Alleged Assignment is not signed by Defendants or their representatives, and as such are not valid. Additionally, while he testified about his custom and practice, LaMontagne testified that he didn't remember notarizing the Alleged Agreement. *See* Adelman Decl., ¶15, Ex. 12, LaMontagne Dep. 12:5-6 ("No. I don't remember notarizing this document").

In fact the only admissible testimony as to the authenticity of the Alleged Assignment was given by Nicole Branker, Stewart's ex-girl friend who helped him with his business affairs. Ms. Branker testified that the signature on the Alleged Assignment was not Stewart's signature. *See* Adelman Decl., ¶16, Ex. 13, Branker Dep. 16:3-24.

> Q:   Do you see there is a signature for William A. Stewart; do you recognize that signature?
> A:   No.
> Q:   Had you ever seen William Stewart's signature before?
> A:   Yes, I have.
> Q:   Does that look like his signature?
> A:   No, it does not.
> Q:   How does it differ from what his signature was like?
> A:   Two signatures are different, first off and the spacing is wrong.
> Q:   How does he usually space his signatures?
> A:   It is just spaced differently.
> Q:   Could you point out like between different letters, different words?
> A:   The first one, I can't explain how, but it is just wrong. It is not his signature.
> *See* Adelman Decl., ¶16, Ex. 13, Branker Dep. 16:3-24.

For the foregoing reasons, neither Alleged Assignment nor the Alleged Publishing Agreement can be admissible as they are not genuine and cannot be authenticated. As Defendants cannot produce any admissible evidence to support their contention that they were authorized to exploit the Composition, and Plaintiff has satisfied the elements of copyright infringement, summary judgment is proper.

---

[7] The S. Robinson verification specifically stated that "Other than the response to interrogatory number 2, the accuracy of which I confirm, I do not have any personal knowledge of the information provided in these responses." *See* Adelman Decl., ¶ 12, Ex. 9. Interrogatories Nos. 3 and 9 were specifically geared towards the Alleged Agreements. *See* Adelman Decl., ¶ 13, Ex. 10.

By way of damages Plaintiff is entitled to recover (1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or (2) statutory damages, as provided by subsection (c).  *See* 17 USC § 504.  As set forth in the Berger Report, Defendants have benefitted in the amount of $317,106.77.  *See* Adelman Decl., ¶ 7, Ex. 5.  Thus Plaintiff is entitled to judgment in that amount.

POINT IV

## THE CORPORATE VEIL AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE PIERCED

For the above claims, judgment should be entered against the individual Defendants Joey Robinson and Sylvia Robinson as the corporate veil should be pierced.

Although Defendants failed to produce their corporate records demonstrating where they were incorporated, regardless of whether New Jersey or New York law applies the veil should be pierced here. Under New Jersey law, two elements are required to pierce the corporate veil in order to impose liability on officers-shareholders-principals: (1) if the corporation is organized and operated as a mere instrumentality of the officer-shareholder-principals, and (2) the dominant officer-shareholder-principal must be using the subservient corporation in an inappropriate manner. *See Tuff-N-Rumble Management, Inc. v. Sugarhill Music Pub. Inc.*, 2000 Copr. L. Dec. P 28050 (2000).  New York law dictates that when an officer-shareholder-principal dominates a corporation, it is appropriate to pierce the corporate veil. *See Id.*

In determining whether to disregard the corporate entity, "the critical question is whether the corporation is a shell being used by the individual shareholders to advance 'purely personal rather than corporate ends." ' *See Id.* The court may consider such factors as lack of corporate formalities, inadequate capitalization of the corporation, and intermingling of corporate and individual finances. *See Id.* The corporate veil may be pierced either when the defendant has used the corporation to perpetrate fraud, or simply when he has dominated the corporation for his personal business. *See Id, citing Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd.*, 909 F.2d 698, 703 (2d Cir. 1990).

Here, Sugar Hill and Diamond Head identified Joseph Robinson, Jr. and Sylvia Robinson as the only officers, directors and shareholders of both companies. *See* Adelman Decl., ¶13, Ex. 10.  Furthermore, despite the fact that they have been duly demanded, Defendants have produced no documents to demonstrate they

13

observe corporate formalities. *See* Adelman Decl., ¶21, Ex. 18, Demand No. 1. Sugar Hill and Diamond Head share an address, have identical corporate officers and use their names interchangeably. In fact although Joseph Robinson identified himself in response to the interrogatory asking for the names of shareholders, officers and directors in response to Interrogatory No. 2 (Adelman Decl., Ex. 10) when asked at deposition he was unsure. *See* Adelman Decl, Ex. 8, J. Robinson Dep. 47:6-10. Records belonging to the corporations are kept in Sylvia Robinson's home. *See* Adelman Decl, Ex. 8, J. Robinson Dep. 48:12-15. Additionally Joey Robinson during his deposition was unsure which company was being sued --Sugar Hill Music Publishing Ltd., or Inc. *See* Adelman Decl, Ex. 8, J. Robinson Dep.70:13-25, 71:1-23. Additionally Defendants admitted that Sugar Hill and Twenty Nine have licensed their interest in 'No Diggity.'" *See* Adelman Decl., ¶4, Ex. 2, ¶15. However only Sugar Hill is alleged to have received an assignment of interest. *See* Adelman Decl., ¶4, Ex. 2, ¶14; Exs. 6 and 7. Documents evidencing a transfer of ownership between Sugar Hill and Diamond Head were requested, but none were ever produced. *See* Adelman Decl., ¶21, Ex.18, Requests Nos. 41 and 42; ¶22. As such it is clear that Sugar Hill and Diamond Head are used interchangeably and without distinction for the benefit of their controlling members.

In *Tuff-N-Rumble Mgt., Inc. v Sugarhill Music Pub. Inc.*, the Court found it was appropriate to pierce the corporate veil. *See Tuff-N-Rumble Management, Inc. v. Sugarhill Music Pub. Inc.*, 2000 Copr. L. Dec. P 28050 (2000). Here, just like in *Tuff-N-Rumble Mgt* Sugar Hill and Diamond Head (i) share identical officers, directors and shareholders; (ii) have refused to produce corporate documents; (iii) share an address; (iv) use names interchangeably in that they have both exploited the Composition although only Sugar Hill is allegedly a party to the Alleged Agreements. Thus here as in *Tuff-N-Rumble Mgt*, it is appropriate to conclude that the Defendants are the mere instruments of their principals, Joey Robinson Jr., and Sylvia Robinson, and to pierce the corporate veil of the Sugar Hill and Diamond Head.

### POINT V

### PLAINTIFF IS ENTITLED TO JUDGMENT AS A MATTER OF LAW DISMISSING DEFENDANTS' COUNTERCLAIM

Plaintiff is similarly entitled to judgment as a matter of law dismissing Defendants' counterclaim of breach of contract against Plaintiff. Defendants will be unable to proffer any evidence of damages in this matter, and as damages is an element of their counterclaim it must be dismissed as a matter of law.

In addition to this, Defendants' counterclaim is barred by waiver and/or estoppel, their complete failure to provide consideration to Plaintiff under the Alleged Agreements and their own breach of the Alleged Agreements.

## A.    DEFENDANTS CANNOT PROVE DAMAGES

Defendants cannot prove damages, which is an essential element of their breach of contract claim. Defendants' proposed expert Gary Cohen should be excluded from consideration as the Cohen Report fails to meet the basic requirements of Fed. R. Civ. P. 26(a)(2)(B). Moreover, Cohen's opinions and testimony are unreliable and cannot be admissible under Fed. R. Evid. 702. Cohen through his deposition testimony has proven himself to be an expert for hire, who not forming his own opinions, but rather is merely reciting the opinions he is asked to give without independent thought. As such his testimony must be excluded and Defendants counterclaim dismissed.

The elements required to state a valid claim for breach of contract are: (1) the existence of a contract; (2) due performance of the contract by the plaintiff; (3) breach of contract by the defendant; and, (4) damages resulting from the breach. *See Nordic Bank PLC*, 619 F. Supp., 561; *K. Bell & Associates, Inc.*, 827 F. Supp., 988.

As will be set forth at length below Defendants' proposed expert Mr. Cohen should be disqualified and precluded from testifying. Defendants' Rule 26(a)(2)(B) disclosures violated the requirements of Fed. R. Civ. P. 26(a)(2)(B), in that his written report failed to satisfy the rule's requirements. Additionally, Mr. Cohen's testimony is not admissible as his opinions are wholly unreliable. As demonstrated by Mr. Cohen's deposition, the opinions stated in the Cohen Report are not based upon sufficient facts, are not the product of reliable principle and methods and Cohen has not applied the principles and methods reliably here. Mr. Cohen is nothing more than a hired gun, and his opinions and testimony cannot be admissible.

### i. Mr. Cohen's Written Report Should Be Excluded Because It Fails to Meet The Requirements of Fed. R. Civ. P. 26(a)(2)(B)

Fed. R. Civ. P. 26(a)(2)(B), in relevant part, mandates that the expert disclosure "**must be** accompanied by a written report --prepared and signed by the witness." (Emphasis Added).  Additionally the report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;(ii) the facts or data considered by the witness in forming them;(iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and  (vi) a statement of the compensation to be paid for the study and testimony in the case. *See* Fed. R. Civ. P. 26(a)(2)(B).

Here Mr. Cohen's report failed to comply with these requirements.  Cohen's Report is not signed. *See* Adelman Decl. ¶17, Ex. 14; ¶14, Ex. 11, Cohen Dep. 27:9-10 ("No. There's no signature on my report."). Cohen's Report also fails to contain a list of all other cases during the previous 4 years, Mr. Cohen testified at trial or by deposition, nor did it contain the witnesses qualifications, as required by Fed. R. Civ. P. 26(a)(2)(B)(v). *See* Adelman Decl. ¶17, Ex. 14.

Mr. Cohen's vitae and a list of documents and a list of cases that he was involved with was provided at his deposition, only three (3) days ago despite the fact that the rule requires it to be contained in the written report. *See* Adelman Decl., ¶14, Ex. 11, Cohen Dep. 22-23.  Cohen claimed that he provided it to Mr. Cinque, however it was not provided with the report.  *See* Adelman Decl., ¶14, Ex. 11, Cohen Dep. 22-23. Furthermore, it is doubtful Mr. Cinque ever had a copy as he requested that Plaintiff send him the copy that we received at the deposition. *See* Adelman Decl. ¶18, Ex. 15.

In addition, the Cohen Report did not state the basis and reasons for all of his opinions.  By way of example Cohen calculated the percentage of monies allegedly owed to Defendants at forty percent (40%). *See* Adelman Decl., ¶17, Ex. 14, Cohen Report, Schedule 2A.  When asked where in his report did it say that Sugar Hill will receive 40 percent stated "I didn't say that [Sugar Hill will receive 40 percent] in my report." *See* Adelman Decl., ¶14, Ex. 11, Cohen Dep. 70:7-10.  When confronted with the fact that he had made the calculations based upon forty percent (40%), Cohen stated that "I was advised by Defendants' attorney that

that was the appropriate amount." *See* Adelman Decl., ¶14, Ex. 11, Cohen Dep. 70:11-16.  However, as stated

by Cohen himself, this assumption is not disclosed anywhere in the Cohen Report.  *See* Adelman Decl. ¶17,

Ex. 14.

The Cohen Report fails to adhere to the basic requirements of Fed. R. Civ. P. 26(a)(2)(B).  For this

reason alone the Cohen Report cannot be considered, nor can he be allowed to testify at trial.

### ii.  Mr. Cohen's Testimony Is Not Admissible Under Fed. R. Evid. 702

In addition, Cohen's testimony is further problematic as it is not admissible under Fed. R. Evid. 702.

Through his deposition testimony it is clear that if allowed to testify at trial, Cohen will be a mouthpiece for

Mr. Cinque.  Cohen will be the vehicle to testify about Defendants' Counsel's opinions and statements under

the guise of being an expert.   This is not the type of testimony that is admissible under Rule 702 and it should

not be allowed here.

Governing law clearly provides that the District Court should act as a "gatekeeper" prior to the

admission of expert testimony under Rule 702.  *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S.

579, 594, 113 S. Ct. 2786, 2797, 125 L. Ed. 2d 469 (1993).  Rule 702 imposes a special obligation on a trial

judge to ensure that expert testimony is not only relevant, but reliable. *See Kumho Tire Co., Ltd. v.*

*Carmichael*, 526 U.S. 137, 137, 119 S. Ct. 1167, 1169, 143 L. Ed. 2d 238 (1999).  Rule 702 provides that:

> If . . . specialized knowledge will assist the trier of fact to understand the evidence or to
> determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience,
> training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the
> testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable
> principles and methods, and (3) the witness has applied the principles and methods reliably to
> the facts of the case.

"[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to

support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion

testimony."  .

The Court is well within its discretion here, and should, exclude Mr. Cohen's testimony as it fails to

meet all three of the reliability requirements set forth in Rule 702.  At his deposition on November 15, 2011

Cohen essentially admitted that his opinions were not based upon reliable facts and data.  By way of example,

in preparing Schedule 1C Cohen relied upon royalty summaries **created by defendant Joey Robinson**. *See* Adelman Decl., ¶14, Ex. 11, Cohen Dep. 43:7-8, 51:5-13. Cohen further admitted he did not know what documents were used to prepare the summaries. *See* Adelman Decl., ¶14, Ex. 11, Cohen Dep. 43:9-11. That he did not ask his client what documents were used to prepare the summaries, despite his normal practice of asking clients where documents came from when they do not have a source attached. *See* Adelman Decl., ¶14, Ex. 11, Cohen Dep. 43:12-15 and 45:3-10. That he was never told what documents were used to prepare the summaries. *See* Adelman Decl., ¶14, Ex. 11, Cohen Dep. 43:16-19. Most importantly that he did not know if the summaries were accurate. *See* Adelman Decl., ¶14, Ex. 11, Cohen Dep. 43:20-22.

Mr. Cohen's deposition further demonstrated that his testimony was not the product of reliable principles and methods. Throughout the transcript it is blatant that Cohen engaged in no independent thought in forming opinions and at times he even admitted that he did not form the opinions he was testifying to himself. By way of example, Cohen testified that:

> Q:      And in C [item C on pg 4], you're saying Berger's claim is correct?
> A:      Correct. I'm saying [. . .] Berger made two numbers, one where there's a complete 100 percent copyright assignment and one where there's a 60 percent amount owed to – 60 percent ownership for Stewart. This is based on the 60 percent. The other number I don't feel is correct.
> Q:      Okay.
> A:      Okay. I just wanted to clarify that.
> Q:      Because of the calculation; is that right?
> A:      I beg your pardon?
> Q:      Because of the calculation? You said its not correct. You don't feel its correct?
> A:      I don't feel it's correct where Berger asks for 100 percent of the copyright. Otherwise the calculation is correct.
> *See* Adelman Decl., ¶14, Ex. 11, Cohen Dep. pp 81-82.

The problem Cohen's above opinion is that Cohen had already admitted that he did not come to his own opinion as to how much a percentage Sugar Hill was entitled to, nor did he consider the possibility that the Alleged Assignment was not valid. Mr. Cinque told Cohen the Alleged Assignment was valid, told Cohen to calculate the percentage Sugar Hill was owed at 40%, despite the fact that the splits in the Alleged Publishing Agreement are different. Cohen relied on these statements and without considering any alternative. *See* Adelman Decl. ¶9, Ex. 7 (the Alleged Publishing Agreement clearly states that the remaining 40% will be split between Lavaba Mallison (20%) and Sugar Hill Music (20%)). Mr. Cohen testified as follows:

Q:      . . . If you look at paragraph three on page three,  you say "I assume that Stewart is due 60 percent of the royalties collected by Defendants for the composition "No Diggity" correct?
A:      That's the last sentence. Correct.
Q:      And upon what information does this assumption rely?
A:      I think it relies on the statement made by Defendants' attorney.
Q:      And that statement was what?
A:      That the assignment is valid, and that there's another sheet that we called the non-assignment sheet, page one or two that we referred to earlier, said that 60 percent of the royalties go to Stewart and 40 percent to Sugar Hill and some other person.
Q:      So I think if you turn to the first page, and I think all your recollections are accurate with the exception of, it appears to me, tell me if I'm wrong, that what the agreement actually says is that William Stewart will receive 60, and the remaining 40 will be split between a Lavaba Mallison and Sugar Hill Music; is that correct?
A:      That's what it says.
Q:      So where on the document does it say that Sugar Hill will receive 40 percent?
A:      I didn't say that in my report.  I said only that Stewart receive 60 percent.
Q:      I know, but later on you made calculations that calculate Sugar Hill's 40 percent, do you not?
A:      I was advised by Defendants attorney that that was the appropriate amount.
Q:      Okay prior to issuing the report, you reviewed Plaintiff's Exhibit 4-document number one, bates stamp two [the Alleged Agreements] correct?
A:      Yes.
Q:      **Did you come to your own opinion as to how much percentage Sugar Hill would be—**
A:      **No.**
Q:      **--entitled to?**
A:      **No.**
Q:      **So you just took the assumptions that Mr. Cinque gave you and incorporated them into your report as it pertains to the percentages; is that correct?**
A:      **Yes.**
*See* Adelman Decl., ¶14, Ex. 11, Cohen Dep. pp.69-71.

Q:      Did [Mr. Cinque] ever explain to you how he came to the assumption that the document is valid?
A:      He said its valid.
Q:      That's it?  He just said the document's valid, make your assumption based on that; is that correct?
A:      Make my calculations.
Q:      Make your calculations? I apologize.
A:      That's correct.
Q:      In your report, did you ever consider the alternative, that the document is not valid?
A:      No.
Q:      Why?
A:      I wasn't asked to do that.
*See* Adelman Decl., ¶14, Ex. 11, Cohen Dep. 72:7-23.

In fact many of Cohen's alleged opinions offered about the Berger Report are actually just statements

that were made to him by Mr. Cinque.  *Compare* Adelman Decl., ¶17, Ex. 14, Cohen Report pg. 3, Sec.

V(A)(4) ("This results in an underpayment of royalties to Defendants.  This fact was not considered by

Berger") *with* ¶14, Ex. 11, Cohen Dep. 17:8-10 (Mr. Cinque told Cohen that "Sugar Hill was owed additional royalties by the Plaintiff that were not treated in Berger's Report"). It is clear from Cohen's testimony that if allowed to testify at trial he will be reciting the opinions and statements that were given to him by Defendants' counsel Mr. Cinque, rather than forming his own.

By his statements, Cohen essentially also admitted that his comments and opinions concerning Berger's conclusions are worthless as he had no factual backing for his comments. Cohen testified:

> Q:   But nevertheless, you offered no alternative, you only suggested that his numbers were not good assumptions?
> A:   I said they were overstated. Yes.
> Q:   But you didn't provide any of your own?
> A:   That wasn't within the scope of my engagement?
> Q:   Okay. That's fine. So you weren't asked by the Defendants to do so?
> A:   No. I was asked to comment on the Berger Report.
> Q:   So you were asked to comment on the assumption that Mr. Berger made and make assumptions of your own?
> A:   I was asked to comment on the assumptions Berger made.
> Q:   **By commenting on them, you just made a statement as opposed to any factual backing of that statement, correct?**
> A:   **Correct.**
> *See* Adelman Decl., ¶14, Ex. 11, Cohen Dep. pp 68-69. (Emphasis added).

Making his opinions about the assumptions, contained in the Berger Report, further worthless, Cohen's testimony indicated that for the most part he did not even consider what reasonable assumptions he would have made. Repeatedly he said that he was not asked to do that. *See* Adelman Decl., ¶14, Ex. 11, Cohen Dep. 68:14-15 ("I wasn't asked to explore what the actual sales were"). His "opinion" regarding Berger's exploration of the actual sales cannot be valid, if he gave no thought to exploring it himself. To the extent he attempted to state an alternative estimate that he thought was reasonable, recalculations based on Cohen's estimate increased Plaintiffs damages. *See* Adelman Decl., ¶14, Ex. 11, Cohen Dep. 67:3-11; Berger Decl. ¶2-4. Clearly this demonstrates a lack of understanding of Berger's calculations. This is emblematic of Cohen criticisms that have been made with no thought and no analysis.

In this same vein, Cohen gave opinions as to actions Berger should have taken, but admitted that he did not know if it was even common for experts to do such things. For example:

> Q:   . . . Page three. You say "in many cases, the methodology used and claims made are speculative. Berger could have obtained foreign royalty information directly from the foreign

royalty certificate societies to determine the amount of foreign royalties paid to Defendants' sub-publishers." Is that common for experts, to seek out information from third party sources?
A:      I don't know.
*See* Adelman Decl., ¶14, Ex. 11, Cohen Dep. 59:22-25, 60:1-8.

Additionally, Cohen's criticisms of Berger's estimations and assumptions are contradicted by his own custom and practice. By way of example, Berger's report contains certain assumptions or estimations about income where Defendants had failed to produce royalty reports for certain periods. *See* Adelman Decl., ¶7, Ex. 5, Berger Report, IX pp. 10-13, §(3)-(4). Cohen criticized Berger's assumptions in these areas. However, his criticism is hypocritical given that his own testimony regarding situations where he believes estimations are appropriate. Cohen testified:

> Q:      Do you ever estimate?
> A:      Where appropriate?
> Q:      Where is it appropriate?
> A:      When I believe I don't have enough information or it's clear that I should estimate, and where I can't get source documents.
> *See* Adelman Decl., ¶14, Ex. 11, Cohen Dep. 64:14-20.

Here, according to his own custom and practice, the fact that Berger made reasonable estimations or assumptions is appropriate. Making Cohen's opinion as to Berger's opinions further useless is that he has no basis of knowledge to compare them to. When asked if he ever considered these issues, he testified that he did not because he 'wasn't asked to.' *See* Adelman Decl., ¶14, Ex. 11, Cohen Dep. 68:14-15, 72:18-23.

Cohen further admitted that he opined as to matters he was wholly unfamiliar with. Cohen testified that:

> Q:      . . . so in this paragraph you're making the assumption that BMI collected 100 percent of the foreign performance income; is that correct?
> A:      Correct.
> Q:      And where do you get that? Where does that assumption come from?
> A:      I saw the BMI statements. They said they collected foreign performance royalties. So I said that's where they are.
> Q:      But it doesn't say [BMI] collected 100 percent of foreign performance royalties did it?
> A:      No, it did not.
> Q:      Did it say it collected performance royalties in all the territories across the universe or across the world?
> A:      It did not say what territories it came from. I only saw the summary. I did not see the detailed BMI statements.[8]

---

[8] It is interesting that Defendant did not give these to Cohen and that Cohen did not ask for them given that Plaintiff turned over many of these statements in discovery.

> Q:      Are you familiar with BMI's claims to foreign royalties, its policy?
> A:      No.

*See* Adelman Decl., ¶14, Ex. 11, Cohen Dep. 90:18-25-91:1-18.

Cohen's assumption that BMI collected 100% of foreign performance royalties is patently unreasonable. Cohen saw no documentation stating that BMI collected all of the royalties on the Composition throughout the world or in territories throughout the world. Moreover, he admitted that he is not familiar with BMI's policies about claims to foreign royalties. Making his opinions more ridiculous, if he was truly qualified to opine as to the collection habits of performance royalty organizations he would know that BMI typically only collects in foreign territories where no other foreign performance royalty organization is collecting. *See* Berger Decl. ¶1.

In addition to the above Cohen did not follow a reliable methodology in preparing this report. Cohen testified that he did not consider reasonable alternatives or request additional information for many items because he was not asked to, even though he testified that it would normally be his practice to do so. *See e.g.* Adelman Decl., ¶14, Ex. 11, Cohen Dep. 64:14-20, 68:14-15, 72:23. Cohen put documents on his list of Documents Reviewed, such as the sub-publishing agreements that he later admitted he did not read. *See* Adelman Decl., ¶17, Ex. 14, Cohen Report IV(J)(i) to (l) and Adelman Decl., ¶14, Ex. 11, Cohen Dep., 52:7-11. In fact he even admitted that although it is his normal practice to ask his client where documents came from when they do not have a source attached, that he did not do so in this case. *See* Adelman Decl., ¶14, Ex. 11, Cohen Dep. 43:12-15 and 45:3-10. Specifically it was clear in his deposition that he was aware there were missing statements and missing periods from other statements. Adelman Decl., ¶14, Ex. 11, Cohen Dep., 48-49, 52:7-25, 53:1-11.

Cohen is not credible. In fact Cohen, while working for these Defendants, has previously been found to be unreliable because of similar issues to those above. In *Robinson et al v. Sanctuary Record Groups, Ltd.*, the Court held that Cohen's testimony and opinion did not meet the *Daubert* standard of reliability. *See Robinson v. Sanctuary Record Groups, Ltd.*, 542 F. Supp. 2d 284, 290 (S.D.N.Y. 2008) *vacated sub nom.*

*Robinson v. Sanctuary Mus*ic, 383 F. App'x 54 (2d Cir. 201*0).*[9]  In *Sanctuary* the Court found that Cohen's testimony was unreliable because (i) Cohen summarized calculations of profit created by Robinson's Counsel, Mr. Cinque, and created the opinion based upon Cinque's declaration in that matter; (ii) that Cohen did not conduct an independent examination and his review of thee opponents voluminous production was limited to documents that Cinque disclosed to Cohen; (iii) Cohen relied upon lists created by Joey Robinson; (iv) crucially that Cohen's methodology was founded on hearsay supplied by Mr. Cinque—which is hardly a source of first hand independent knowledge; (v) incomplete comparisons; and (vi) dubious assumptions. *See Sanctuary*, 542 F. Supp.2d 290-93.  The Court further noted that Cohen's estimates were built upon one flawed assumption after another and further noted that neither Cohen nor Cinque tested their calculations and instead relied "exclusively on their many faulty assumptions." *See Sanctuary*, 542 F. Supp.2d 292-93.

Adding to the list of problems identified by the Court in *Sanctuary*, Cohen testified that the schedules prepared in that matter "were done at the client's insistence by themselves and they didn't allow me to do the work independently of them." *See* Adelman Decl., ¶14, Ex. 11, Cohen Dep. 26:22-25 and 27:1-3.

Here Cohen's testimony is similarly unreliable.  Cohen is not putting forth an independent opinion. Cohen's entire methodology is to rely on the dubious assumptions given to him by Mr. Cinque, without any rational thought even when such assumptions fly in the face of the evidence in the record and accepting them without getting more information, which is contrary to his normal practices.

Cohen is not conducting an independent review.  To this end Cohen was not even provided with the pleadings and other documents, such as underlying statements, that would have allowed him to ascertain if his, admittedly baseless, assumptions were correct. By way of example Plaintiff produced hundreds of pages of detailed statements from BMI that would evidence what foreign territories BMI collected in.  These appear to have not been provided to Cohen.  Cohen opined that assumptions were wrong, but could give no reason for this because 'he wasn't asked to think about that.'

In addition to this Cohen relied on information he admittedly knew might not be accurate.  As mentioned above Cohen, did not even bother to ask Joey Robinson what documents were used to create

---

[9] This case was later reversed on unrelated grounds.

summaries, nor did he ask for information that he knew was missing.  Further similarly to his mistakes in *Sanctuary*, Cohen made incomplete comparisons and did not even bother to opine as to what correct estimations would be.

Cohen admitted that in *Sanctuary*, that he testified as an expert despite the fact that Joey Robinson and Mr. Cinque "didn't allow [him] to do the work independently." *See* Adelman Decl., ¶14, Ex. 11, Cohen Dep. 26:22-25 and 27:1-3.  Based upon his testimony, and his similar actions here, **Cohen is the quintessential expert for hire.**

The express purpose of the Court in performing a "gatekeeping" function under *Daubert,* is to enforce Rule 702 which ***mandates the exclusion of unreliable opinion testimony.*** *See* .  Cohen's opinion and testimony here is just that –unreliable.  As such Cohen's testimony must be excluded here and Defendants' counterclaim for breach of contract must be dismissed as they cannot produce admissible evidence to support their alleged damages, which is a required element of the claim.

**B.    DEFENDANTS' COUNTERCLAIM IS BARRED BY THE DOCTRINE OF WAIVER AND ESTOPPEL**

Defendants counterclaim that Plaintiff breached the Alleged Agreements is barred by the doctrine of waiver and/or estoppel, in that Defendants relinquished their alleged right[10] to exploit the Composition in the United States.    To establish waiver under New York law one must show that the party charged with waiver relinquished a right with both knowledge of the existence of the right and an intention to relinquish it. *See Voest-Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.*, 707 F.2d 680, 685 (2d Cir. 1983); *Christian Dior-New York, Inc. v. Koret, Inc.*, 792 F.2d 34, 40 (2d Cir. 1986).

Here it is undisputed that Defendants had knowledge of the existence of their alleged right to exploit the Composition. *See* Adelman Decl., ¶4, Ex. 2, ¶14 (Defendants "admit that Sugar Hill received an assignment of an interest in the copyright to "No Diggity" from Libvrig Publishing on May 25, 1999, and has asserted this ownership interest continuously since that date.")

---

[10] Plaintiff does not concede that Defendants ever had a right to exploit the Composition.  However as Defendants have alleged that they had such a right this element is admitted as against them assumed for arguments sake by Plaintiff for the purposes of this section only.

It is further undisputed that Defendants had an intention to relinquish their alleged right to collect monies from the exploitation of the Composition in the United States. Defendants never registered the Alleged Assignment with the Copyright Office, nor did they register the Alleged Assignment with BMI. *See* Adelman Decl., ¶7, Ex. 5, pg. 7; ¶19-20, Exs. 16 and 17. By failing to register the Alleged Assignment for eleven (11) years, Defendants' in effect intentionally abandoned their allege right to the Composition and their alleged right to collect monies in the United States.

## C.   DEFENDANTS' COUNTERCLAIM IS BARRED BY THEIR OWN BREACH

As discussed in Point II above, Defendants have materially breached the Alleged Agreements between the parties. As such, their counterclaim is barred by their own breach.

## CONCLUSION

The facts here are undisputed. Defendants exploited the composition and benefitted in the amount of $317,106.77. Defendants have **never paid Plaintiff**. Plaintiff is entitled to recovery of the monies that Defendants have wrongly collected and/or wrongly retained. As set forth at length above, Plaintiff has demonstrated the absence of any genuine issues of material fact that would preclude recovery here. Plaintiff as further demonstrated that Defendants will be unable to produce any admissible evidence to defend themselves against Plaintiff's claims nor will they be able to provide admissible evidence to prove their claims.

For all the foregoing reasons Plaintiff is entitled to judgment as a matter of law on its claim of (i) rescission and unjust enrichment; (ii) breach of contract; or (iii) copyright infringement, and a judgment dismissing Defendants' counterclaims. Plaintiff respectfully requests that judgment be entered as such.

Dated: New York, New York
      November 18, 2011

Respectfully submitted,

MEISTER SEELIG & FEIN LLP

Gary Adelman, Esq.
*Attorneys for Plaintiffs*
140 East 45th Street, 19th Floor
New York, New York 10017
Telephone: (212) 655-3580
E-mail: gpa@msf-law.com