UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CHERYL COOK, GWENDOLYN CHISOLM, and
THE ESTATE OF WILLIAM A. STEWART JR.

                    Plaintiffs,

              - against -

SUGAR HILL MUSIC PUBLISHING, LTD.,
DIAMOND HEAD MUSIC, INC. d/b/a TWENTY
NINE BLACK MUSIC, JOEY ROBINSON,
SYLVIA ROBINSON and LELAND ROBINSON,

                   Defendants.
-----------------------------------------------------------X

Index No.: 10 CIV 2632
(LTS)(JLC)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**MEISTER SEELIG & FEIN LLP**
*Attorney for Plaintiff*
**Two Grand Central Tower**
**140 East 45th Street, 19th Floor**
**New York, New York 10017**
**(212) 655-3580**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... iii

THE SUMMARY JUDGMENT STANDARD .................................................................. 1

ARGUMENT .................................................................................................................... 1

POINT I  DEFENDANTS' MOTION LACKS ADMISSIBLE EVIDENTIARY SUPPORT .. 2

    A.    THE DECLARATION OF LAVABA MALLISON MUST BE EXCLUDED ........... 2

    B.    THE ALLEGED AGREEMENTS ARE INADMISSIBLE ........................................ 4

POINT II PLAINTIFF'S CLAIM OF COPYRIGHT INFRINGEMENT
CANNOT BE DISMISSED ............................................................................................... 6

    A.    THE ALLEGED ASSIGNEMENT IS NOT INCONTESTABLE ............................ 7

    B.    THE APPLICATION OF U.S. COPYRIGHT LAW IS PROPER HERE ................... 8

POINT III PLAINTIFF IS NOT PRECLUDED FROM
ASSERTING CONTRACT CLAIMS ............................................................................... 10

    A.    PLAINTIFF HAS NOT ELECTED A REMEDY ................................................... 10

    B.    THE DOCTRINE OF ELECTION OF REMEDIES IS INAPPOSITE ................... 15

POINT IV ALTERNATIVELY PLAINTIFFS CONTRACT CLAIMS
CANNOT BE DISMISSED ............................................................................................. 17

    A.    PLAINTIFF DID NOT BREACH THE ALLEGED AGREEMENTS AND
DEFENDANTS ARE NOT ENTITLED TO AN OFFSET ................................................. 17

    B.    PLAINTIFF IS ENTITLED TO RESCISSION ...................................................... 21

    C.    RESCISSION IS NOT BARRED BY THE STATUE OF LIMITATIONS ............. 23

    D.    MALLISON IS NOT A PARTY TO THE ALLEGED AGREEMENTS ................. 24

    E.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM CANNOT BE DISMISSED ...... 24

    F.    THIS COURT HAS SUBJECT MATTER JURISDICTION ................................... 25

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*Am. Oil Co. v. Coughlin*,
   261 A.D. 852, 24 N.Y.S.2d 731 (App. Div. 1941) ................................................................ 18

*Aniero Concrete Co., Inc. v. N.Y. City Constr. Auth.*,
   308 F.Supp.2d 164 (S.D.N.Y.2003) ...................................................................................... 18

*Arden v. Columbia Pictures Indus., Inc.*,
   908 F. Supp. 1248 (S.D.N.Y. 1995) ....................................................................................... 6

*Aristocrat Leisure Ltd. v Deutsche Bank Trust Co. Americas*,
   727 F Supp 2d 256 (S.D.N.Y. 2010) .................................................................................... 18

*Astroworks, Inc. v. Astroexhibit, Inc.*,
   257 F. Supp. 2d 609 (S.D.N.Y. 2003) .................................................................................. 12

*Atkins v. County of Orange*,
   372 F.Supp.2d 377 (S.D.N.Y.2005) ....................................................................................... 2

*Barrett v. United States*,
   689 F.2d 324(2d Cir.1982), cert. denied, 462 U.S. 1131, 103 S.Ct. 3111,
   77 L.Ed.2d 1366 (1983).......................................................................................................... 23

*Beleson v. Schwartz*,
   599 F. Supp. 2d 519 (S.D.N.Y. 2009) *aff'd*, 419 F. App'x 38 (2d Cir. 2011).......................... 1

*Beleson v. Schwartz*,
   599 F.Supp.2d 519 (S.D.N.Y. 2009) ....................................................................................... 1

*Byrnie v. Town of Cromwell, Bd. of Educ.*,
   243 F.3d 93 (2d Cir.2001) ......................................................................................................... 4

*Callanan v. Powers*,
   199 N.Y. 268 , 92 N.E. 747 (1910)...................................................................................... 22

*Cerbone v. ILGWU*,
   768 F.2d 45 (2d Cir.1985). ................................................................................................... 23

*Croce v. Kurnit*,
   565 F. Supp. 884(S.D.N.Y. 1982) *aff'd*, 737 F.2d 229 (2d Cir. 1984) .................................... 16

*Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.,*
    499 U.S. 340 , 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991) ..................................... 6

*Foxley v. Sotheby's Inc.,*
    893 F. Supp. 1224 (S.D.N.Y. 1995) ................................................................. 23

*Guadango v. Wallack Ader Levithan Assocs.,*
    950 F. Supp. 1258 (S.D.N.Y. 1997) ................................................................. 14

*Hamelin v. Faxton-St. Luke's Healthcare,*
    274 F.R.D. 385 (N.D.N.Y. 2011) .............................................................. 13, 14

*IDT Corp. v. Morgan Stanley Dean Witter,*
    12 N.Y. 3d 132, 879 N.Y.S.2d 355 (2009) ......................................................... 25

*In re Syosset Laboratories Co., Inc.,*
    94 CV 5914, 1995 WL 432621 (E.D.N.Y. July 14, 1995) ..................................... 16

*Jeffreys v City of New York,*
    426 F3d 549 (2d Cir. 2005) ............................................................................ 4

*Jorgensen v. Epic/Sony Records,*
    351 F.3d 46 (2d Cir. 2003) ............................................................................ 6

*Nat'l Union Fire Ins. Co. v. Turtur,*
    892 F.2d 199 (2d Cir.1989) .......................................................................... 19

*Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.,*
    88-CV-819, 1992 WL 121726 (N.D.N.Y. May 23, 1992) ..................................... 21

*Nolan v. Sam Fox Pub. Co., Inc.,*
    499 F.2d 1394 (2d Cir. 1974) ....................................................................... 22

*Nordic Bank PLC v. Trend Group, Ltd.,*
    619 F. Supp. 542 (S.D.N.Y. 1985) ............................................................ 18, 19

*Omega Executive Services v. Grant,*
    78 CIV. 4616, 1980 WL 1432 (S.D.N.Y. Aug. 22, 1980) ..................................... 16

*Padre Shipping, Inc. v. Yong He Shipping,*
    553 F. Supp. 2d 328 (S.D.N.Y. 2008) ............................................................. 12

*Prince Group, Inc. v MTS Products,*
    95 CIV. 1160 (BN), 1998 WL 273099 (S.D.N.Y. May 27, 1998) ........................... 14

*Prudential Oil Corp. v. Phillips Petroleum Co.*,
　418 F. Supp. 254 (S.D.N.Y. 1975) ................................................................. 10

*Repp v. Webber*,
　914 F. Supp. 80 (S.D.N.Y. 1996) ..................................................................... 9

*Richard Feiner & Co., Inc. v. BMG Music Spain, S.A.*,
　01 CIV. 0937 (JSR), 2003 WL 740605 (S.D.N.Y. Mar. 4, 2003) ........................... 8

*Robert Stigwood Group Ltd. v. O'Reilly*,
　530 F.2d 1096 (2d Cir. 1976) .......................................................................... 9

*Roswell Capital Partners LLC v. Alternative Const. Technologies*,
　638 F. Supp. 2d 360 (S.D.N.Y. 2009) .............................................................. 11

*Rule v. Brine, Inc.*,
　85 F.3d 1002 (2d Cir. 1996) ........................................................................... 16

*Scotto v. Almenas*,
　143 F .3d 105 (2d Cir.1998) ............................................................................. 4

*Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*,
　391 F.3d 77 (2d Cir. 2004) .............................................................................. 1

*Septembertide Pub., B.V. v. Stein & Day, Inc.*,
　884 F.2d 675 (2d Cir. 1989) ........................................................................... 22

*Stone v. Williams*,
　970 F.2d 1043 (2d Cir 1992) ........................................................................... 23

*The Ernest M. Munn*,
　66 F. 356 (2d Cir. 1895) ................................................................................ 22

*Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*,
　103 F. Supp. 2d 711(S.D.N.Y. 2000) *aff'd*, 294 F.3d 383 (2d Cir. 2002) ............... 11

*Trans Sport, Inc. v. Starter Sportswear, Inc.*,
　964 F.2d 186 (2d Cir. 1992) ........................................................................... 22

*Update Art, Inc. v. Modiin Pub., Ltd.*,
　843 F.2d 67 (2d Cir. 1988) .............................................................................. 9

*Wechsler v. Hunt Health Sys., Ltd., 94 CIV. 8294 PKL*,
　1999 WL 672902 (S.D.N.Y. Aug. 27, 1999) .................................................. 13, 14

*Weiner v. McGraw-Hill, Inc.,*
   57 N.Y.2d 458 , 443 N.E.2d 441 (1982)........................................................... 7

*Williams v County of Orange, 03 CIV.,*
   5182 (LMS), 2005 WL 6001507 (S.D.N.Y. Dec. 13, 2005) ............................. 2

*Winter v. United States,*
   196 F.3d 339 (2d Cir. 1999) ............................................................................. 1

**Statutes**

17 U.S.C. § 106...................................................................................................... 9

17 U.S.C. § 410(c) ................................................................................................. 6

28 U.S.C. § 1332(a) ............................................................................................... 25

CPLR § 213(6) ....................................................................................................... 23

**Rules**

Fed. R. Civ. P. 1 .................................................................................................... 2

Fed. R. Civ. P. 26 .............................................................................................. 2, 3, 4

Fed. R. Civ. P. 33 ................................................................................................. 13

Fed. R. Civ. P. 37(c)(1) ...................................................................................... 2, 4

Fed. R. Civ. P. 56(c) ........................................................................................ 1, 4, 6

Fed. R. Civ. P. 8(d)(2)-(3)................................................................................... 12

Fed. R. Evid. 901(b)(2) ......................................................................................... 5

## PRELIMINARY STATEMENT

Plaintiff respectfully submits this memorandum of law[1] in opposition to Defendants'
motion for summary judgment.  Defendants' motion must be denied as they have failed to
demonstrate entitlement to judgment as a matter of law and further have failed to show that there
are no genuine issues of material fact as to the elements of the claims they seek to dismiss.

## THE SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only if there is no genuine issue as to any material
fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c);
*e.g., Winter v. United States*, 196 F.3d 339, 346 (2d Cir. 1999).  "If, as to the issue on which
summary judgment is sought, there is any evidence in the record from which a reasonable
inference could be drawn in favor of the opposing party, summary judgment is improper."  *See,
e.g., Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 82-83 (2d Cir.
2004).  To defeat summary judgment, the non-moving party need offer only enough evidence to
enable a reasonable jury to return a verdict in its favor. *See id.*[2]

## ARGUMENT

As will be demonstrated at length herein, Defendants have come to this Court to ask for
relief when they are entitled to none.  Defendants have admitted that they exploited "No Diggity"
(the "Composition"), that they received money as a result of that exploitation and that they failed
to pay Plaintiff.  Amazingly, despite their acknowledgement of their own wrongdoing,
Defendants have moved this Court to preclude Plaintiff from any theory of recovery, when they

---

[1] This memorandum of law is submitted with the Declaration of Gary Adelman dated December 9, 2011, together
with the exhibits annexed thereto (the "Adelman Decl.") and the Declaration of Jeff Gandel, dated December 9,
2011 (the "Gandel Decl."), which are fully incorporated herein by reference.
[2] Additionally these standards do not change when the Court is faced with cross motions for summary judgment.
The court must consider each motion independent of the other. *See Beleson v. Schwartz*, 599 F.Supp.2d 519
(S.D.N.Y. 2009).

know that it would result in a gross injustice to Plaintiff.  Allowing Defendants to use summary

judgment to obtain an unjust result would be contrary to the mandate of Fed. R. Civ. P. 1 and

cannot be allowed here.  Defendants are also not entitled to summary judgment because they

have failed to support their motion with admissible evidence.  Moreover, in furtherance of their

campaign to preclude Plaintiff from obtaining relief from Defendants' wrongs, Defendants have

proceeded buffet style through the record, ignoring facts that are inconvenient to them, which

clearly preclude summary judgment.  For all these reasons, Defendants motion must be denied.

**POINT I**
**DEFENDANTS' MOTION LACKS ADMISSIBLE EVIDENTIARY SUPPORT**

**A.    THE DECLARATION OF LAVABA MALLISON MUST BE EXCLUDED**

Defendants must be excluded from using statements made by Lavaba Mallison

("Mallison") in support of this motion or at trial.  Defendants failed to disclose Mallison's

statements and his contact information during discovery as was their obligation to do so.  Thus

Mallison's statements cannot be used.  Fed. R. Civ. P. 37(c)(1) mandates that:

> If a party fails to provide information or identify a witness as required by Rule
> 26(a) or (e), the party is not allowed to use that information or witness to supply
> evidence on a motion, at a hearing, or at a trial, unless the failure was
> substantially justified or is harmless.

Rule 37(c)(1) is "self-executing," and the exclusion of undisclosed information is

automatic unless the non-disclosing party sustains its burden of showing that the failure to

disclose was either substantially justified or harmless. *See Atkins v. County of Orange,* 372

F.Supp.2d 377, 395 (S.D.N.Y.2005).[3]

Here Defendants failed to provide Mallison's contact information and failed to produce a

copy of his declaration containing his statements during discovery as was their obligation

pursuant to Fed. R. Civ. P. 26(a) and (e).  Defendants disclosed Mallison's name as a possible

---

[3] *See also Williams v County of Orange,* 03 CIV. 5182 (LMS), 2005 WL 6001507 (S.D.N.Y. Dec. 13, 2005).

2

witness to events at issue, however neither Mallison's phone number nor his address were provided. *See* Adelman Decl., ¶3, Ex. 2. Defendants never supplemented this information. *Id.*

At his deposition on September 9, 2011, Robinson testified that he had in fact obtained Mallison's contact information. *See* Adelman Decl., ¶4, Ex. 3, Robinson Dep. ("A friend of mine had given me [Lavaba's] number through facebook" 81:15-16; "At the time I wrote it on a pad, paper." 82:5-6). When asked if he had given Mallison's information to his attorney he testified under oath that he had not. *See* Adelman Decl., ¶4, Ex. 3, Robinson Dep. 82:10-12.

Upon receipt of Defendants' motion it became unclear if Robinson was completely forthcoming about not giving Mallison's contact information to his attorney, as Defendants had already drafted and secured Mallison's Declaration dated June 28, 2011 ("Mallison Decl."), months before Robinson's deposition. *See* Mallison Decl. dated June 28, 2011. What was clear was that at the time of Robinson's Deposition Defendants already had been in contact with Mallison, had obtained a Declaration from him, but had failed to produce or make Plaintiff aware of the existence of Mallison's Decl., despite the fact that Plaintiff specifically requested "[a]ny and all statements received by the Defendants in connection with the Stewart Composition." *See* Adelman Decl., ¶15, Ex. 14, Request No. 4.

Defendants had an obligation to supplement their response to Plaintiff's interrogatory and provide Mallison's contact information at the time they obtained it under Fed. R. Civ. P. 26(e). Defendants also had an obligation to disclose a copy of the Mallison Decl. as soon as it was within their possession as it is directly responsive to Plaintiffs' Document Request No. 4.

Despite their **clear** obligation to produce Mallison's contact information and his declaration Defendants never did. Based upon the above it is obvious that Defendants' have intentionally shirked their discovery obligations in what appears to be a concerted effort to

sandbag Plaintiff on this motion.  Because of Defendants' willful failure to adhere to their

obligations under Fed. R. Civ. P. 26(a) and (e), in accordance with Fed. R. Civ. P. 37(c)(1), this

Court must exclude Mallison's statements from consideration on this motion and at trial.[4]

## B.   THE ALLEGED AGREEMENTS ARE INADMISSIBLE

The Alleged Agreements[5] also cannot be used to support Defendants' motion.  There is

no credible evidence to authenticate the Alleged Agreements and as such they are inadmissible.

Contrary to Defendants assertion, the Alleged Assignment is not incontestable.  Joseph

LaMontagne, who Defendants claim notarized the Alleged Assignment, did not testify

unequivocally that he witnessed Stewart's signature.  Although he testified as to his custom and

practice, when asked if he recalled Mr. Steward, he testified, "No.  I don't even remember

notarizing this document."  *See* Adelman Decl., ¶13, Ex. 12, LaMontagne Dep. 12:3-6.

Additionally, the Alleged Assignment cannot be incontestable where it was not signed or

notarized by the second party to the agreement, where the plain language of the jurat clause of

the Alleged Assignment indicates that both signatures were intended to be notarized.  It states

---

[4] Even if the Mallison Decl., did not have to be excluded due to Defendants' intentional failure to disclose the Mallison Decl., it is not credible as a matter of law as Mallison's statements have not been made on personal knowledge and are contradicted by the attachments thereto. *See* Fed. R. Civ. P. 56(c)(4) (an affidavit or declaration used to support or oppose a motion for summary judgment "must be made on personal knowledge"). The Mallison Decl., contains no statement that reveals his basis of knowledge for the statements. Mallison does not state that he was present for, saw or witnessed the alleged events. To this end Mallison's statements appear to be speculation about what he think happened based upon looking at the Alleged Pub. Agr.

Additionally Mallison's statements are blatantly contradicted by the documents he alleges support them. By way of example, Mallison declared that "Exhibit 1 is a copy of an agreement which. . . Joseph Robinson, Sr. . . . signed", and that "Mr. Robinson . . . executed the attached Exhibit 1." *See* Mallison Decl. ¶1, 2. However Exhibit 1 is clearly not signed by Joseph Robinson Sr., or any representative of Sugar Hill. *See* Mallison Decl. Ex. 1. Nicole Branker also testified that she had never seen the Alleged Pub. Agr., and never heard of Lavaba Mallison. *See* Adelman Decl., ¶14, Ex. 13, Branker Dep., 22:3-11. Moreover, Mallison's statements are the **only evidence** Defendants have proffered in support of key elements of this case. Statements such as those made in the Mallison Decl., that are so lacking in credibility cannot be considered here and must be disregarded by this Court. *See Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d 93, 101 (2d Cir.2001) ("party may not rely on conclusory allegations or unsubstantiated speculation") (quoting *Scotto v. Almenas,* 143 F .3d 105, 114 (2d Cir.1998)); *Jeffreys v City of New York,* 426 F3d 549, 554-55 (2d Cir. 2005) (court may disregard testimony that constitutes the exclusive basis for a disputed issue of fact or is largely unsubstantiated and which is so lacking in credibility because it is **incomplete** and/or replete with **inconsistencies** that no reasonable juror could find for that party).

[5] The "Alleged Agreements" shall collectively refer to Defendants 1, individually referred to as the "Alleged Assignment", and Defendants 2, individually referred to as the "Alleged Pub. Agr." *See* Robinson Decl. Exs. 1, 2.

"by and between the **individuals** described in and who executed the within instrument and acknowledged to me that **they** executed the same" (Emphasis Added). *See* Robinson Decl. Ex. 1. Clear intent that the parties were to have both signatures notarized.   It is undisputed that the Alleged Assignment was not notarized or signed by a representative of Sugar Hill. *See* Robinson Decl. Exs 1 and 2.  There is no evidence that the parties ever finalized an agreement, and as such the Alleged Assignment cannot be admitted as evidence of an agreement.

Perhaps more importantly, the Alleged Assignment cannot be admitted without the Alleged Pub. Agr., as they are part of one agreement.  *See* Adelman Decl. ¶4, Ex. 3, Robinson Dep. 74-75:9 ("Its part of the same agreement" 75:7); Robinson Decl. Ex. 1 (the Alleged Assignment unequivocally states that "THIS INSTRUMENT is subject to all the terms and conditions of the Agreement dated March 13, 1998[6] between Assignor(s) and Assignee").

In fact the only admissible evidence in the record that is relevant to determining the authenticity of the Alleged Agreements decidedly proves that the Alleged Agreements are not authentic and thus are inadmissible.  Nicole Branker ("Branker"), Stewart's former girlfriend who helped him with his business affairs, testified that she was familiar with Stewart's signature, but that the signature on the Alleged Assignment was not Stewart's signature. *See* Adelman Decl., ¶14, Ex. 13, Branker Dep. 16:3-24 ("It is not his signature.").  She further testified that the two alleged signatures, of Stewart, on the Alleged Assignment, were different. *Id* at 16:15-16. Branker's testimony is admissible under Fed. R. Evid. 901(b)(2).[7]  Moreover, Defendants cannot contradict this testimony with admissible evidence. Defendants themselves cannot authenticate the document as they lack personal knowledge of its creation or signature. *See* Adelman Decl.,

---

[6] Referring to the Alleged Pub. Agr.
[7] A "non-expert's opinion that handwriting is genuine, based on a familiarity with it that was not acquired for the current litigation" is admissible evidence that can be used to authenticate, or in this case preclude the authentication requirement of a document. *See* Fed. R. Evid. 901(b)(2).

¶4, Ex. 3, Robinson Dep. 69:21-25, 70:2-5, 78:6-7. Additionally, Sylvia Robinson, before her death verified that she had no knowledge of this matter. *See* Adelman Decl. ¶3, 12, Ex. 2 and 11. In fact Robinson testified that he had never seen the Alleged Assignment prior to receiving the Summons and Complaint in this action. *See* Adelman Decl. ¶4, Ex. 3, Robinson Dep. 69:5-17. The above evidence overwhelmingly demonstrates that the Alleged Agreements cannot be authenticated and thus are inadmissible. Further, for the reasons set forth above, Mallison's statements cannot be used to authenticate the Alleged Pub. Agr. Defendants have no other admissible evidence to that could be used to authenticate the Alleged Agreements or their allegation that they paid Stewart the $2,500. Since Defendants have not supported their motion with admissible evidence, as is required by Fed. R. Civ. P. 56(c), their motion must be denied.

## POINT II
## PLAINTIFF'S CLAIM OF COPYRIGHT INFRINGEMENT CANNOT BE DISMISSED

Defendants cannot prevail in dismissing Plaintiff's copyright infringement claim because the evidence in the record would allow a reasonable juror to find in Plaintiff's favor.

In order to succeed on a claim of copyright infringement, a copyright owner must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *See Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991).

Here Plaintiff has satisfied both elements. It is well established that a certificate of registration from the United States Register of Copyrights constitutes *prima facie* evidence of the valid ownership of a copyright. *See* 17 U.S.C. § 410(c); *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003). Plaintiff owns a valid interest in the copyright in the composition entitled "No Diggity" (the "Composition"). *See* Cinque Decl., ¶2, Ex. A(A); Adelman Decl. ¶10, Ex. 9. Furthermore, it is undisputed that Defendants have exploited the Composition. *See*

Cinque Decl., Ex. B, ¶15. As Defendants cannot contest these facts, summary judgment on this claim should be denied.

### A.   THE ALLEGED ASSIGNMENT IS NOT INCONTESTABLE

Defendants contend that Plaintiff's copyright infringement claim should be dismissed because Stewart assigned his interest in the Composition to Sugar Hill, and thus Plaintiff's claim of infringement against Defendants is precluded.  However, contrary to Defendants' assertion the Alleged Assignment is not incontestable.[8]   The evidence in the record does not demonstrate that the Alleged Agreements are authentic, admissible or valid.  *See* Point I above.

The Alleged Agreements are further inadmissible for lack of authentication as Branker has confirmed that the signatures on the Alleged Assignment are not the signatures of Stewart. *See* Adelman Decl., ¶14, Ex. 13, Branker Dep. 16:3-24.   The alleged notary does not remember witnessing the Alleged Agreement. *See* Adelman Decl., ¶13, Ex. 12, LaMontagne Dep. 12:5-6. Moreover Defendants cannot authenticate that either of the Alleged Agreements as they are not signed by any of Defendants' representatives and Robinson has no personal knowledge of their creation or signature.  *See* Adelman Decl., ¶4, Ex. 3, Robinson Dep. 69:21-25, 70:2-5, 78:5-7.

Additionally, Defendants have failed to proffer admissible evidence that consideration was ever paid to Stewart under the Alleged Assignment, which renders the Alleged Agreements invalid as a matter of law. *See Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458, 464, 443 N.E.2d 441 (1982)(it is settled law that "the presence of consideration ... is a fundamental requisite" to any valid contract).  As discussed in Point I above, Defendants cannot rely on the Mallison Decl., to support this point.  Also, Defendants have proffered no personal knowledge, or evidence of the alleged payment of $2,500.  *See* Adelman Decl. ¶4, Ex. 3, Robinson Dep. 80:25, 81:1-8.

---

[8] Although Defendants claim they have been assigned an interest in "No Diggity" their Alleged Assignment was never recorded with the Copyright Office, and thus Plaintiff's Certificate of Registration is *prima faice* evidence of its ownership in the Composition.  *See* Adelman Decl. ¶17, Ex. 15.

As Defendants have no admissible evidence to support the contention that they received an assignment or had authorization to exploit the Composition, they cannot prevail in dismissing this claim based upon the Alleged Assignment.[9]  Based upon the above, a reasonable jury would find for Plaintiff on its claim of copyright infringement as all elements are satisfied.

Alternatively, even if this Court finds that the Alleged Agreements could be authenticated for purposes of admissibility, drawing reasonable inferences in Plaintiff's favor, the above evidence clearly demonstrates that there is a genuine issue of material fact that precludes summary judgment here. The above evidence disputing the authenticity of the Alleged Agreements is more than sufficient to overcome any *prima faice* evidence of an alleged transfer, and would permit a reasonable jury to find that Stewart never transferred his ownership interest in the copyright in the Composition, making summary judgment improper.

## B.    THE APPLICATION OF U.S. COPYRIGHT LAW IS PROPER HERE

The Court does not lack jurisdiction over the extraterritorial exploitation of the Composition because the Defendants infringed Plaintiff's rights in the Composition while they were in the United States.  Defendants' argument that they cannot be liable because they licensed the Composition to their sub-publishers abroad fails.  While in the United States, Defendants committed the predicate acts of copyright infringement that led to further reproduction and infringement abroad.  Thus they are liable under the Copyright Act, and jurisdiction is proper.

It is well settled that while the United States copyright regime does not generally have extraterritorial application, "an exception exists where the defendant commits a predicate act of infringement within the United States." *See Richard Feiner & Co., Inc. v. BMG Music Spain,*

---

[9] Defendants have attempted to argue that the Alleged Assignment did not require Sugar Hill to make payments to Stewart.  However this position is untenable.  As explained, above the Alleged Assignment must be read subject to the terms of the Alleged Pub. Agr., as the language of the Alleged Assignment explicitly states that it is subject to the terms of the Alleged Pub. Agr.. *See* Robinson Decl. Ex. 1; Adelman Decl. ¶4, Ex. 3, Robinson Dep. 74-75:9 ("Its part of the same agreement" 75:7).

*S.A.*, 01 CIV. 0937 (JSR), 2003 WL 740605 (S.D.N.Y. Mar. 4, 2003) *citing Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988)(applicability of American copyright laws depends on the occurrence of a predicate act in the United States); *Robert Stigwood Group Ltd. v. O'Reilly*, 530 F.2d 1096, 1100 (2d Cir. 1976)(an established exception provides that extraterritorial acts are subject to the Act when there is infringement *within* the United States "that permits further reproduction abroad").

Here Defendants authorized activities enumerated by 17 U.S.C. § 106, which is an infringement itself. *See* 17 U.S.C. § 106 ("the owner of copyright under this title has the **exclusive rights** to do and **to authorize** any of the following ") (Emphasis Added); *Repp v. Webber*, 914 F. Supp. 80, 83 (S.D.N.Y. 1996) (the granting of licenses, 17 U.S.C. § 106 (protecting the right "to do and to authorize" the activities enumerated in that section), are rights protected). When Defendants licensed the Composition they also infringed under 17 U.S.C. § 106(3). Although the sub-publishers may have only committed their infringing acts abroad, **Defendants committed the predicate act of infringement within the United States**, by authorizing their sub-publisher to do activities enumerated in 17 U.S.C. § 106 when Defendants were not authorized to do so. Defendants reside in New Jersey. *See* Cinque Decl., Exs. A and B. Additionally the sub-publishing agreements were signed by Sugar Hill and Diamond Head's corporate officers while in the United States. *See* Adelman Decl., Ex. 4 (sub-publishing agreements made in New Jersey pgs 1569, 1572, 1578, 1597-1583 (agreement faxed from New Jersey area code 201 fax number date stamped, the same day the agreement was signed)).[10]

---

[10] Defendants do not dispute that the Alleged Agreements are between Sugar Hill and Stewart (Robinson Decl., ¶8, 11 n.1). Defendants admitted that Sugar Hill exploited the Composition. (Cinque Decl., Ex. B, ¶15). Defendants stated that it uses the services of IQ Music, Budde Music, Sweden Music, and Muziekuitgeverig Artemis B.V. (also known as Warner/Chappel) to exploit the composition. (Robinson Decl. ¶4). Defendants admitted that Sugar Hill

Since the predicate infringing act took place in the United States, the Copyright Act applies here. The fact that Defendants did not also receive income from third party licensees who are in the United States is inapposite. Moreover, the fact that Defendants' sub-publishers subsequent exploitation occurred outside of the United States does not matter.[11] The evidence in the record demonstrates that the predicate act of infringement, which permitted further reproduction and other infringement abroad was committed by Defendants within the United States. Thus the Copyright Act applies here. For the foregoing reasons, Defendants have failed to demonstrate that Plaintiff's copyright infringement claim can be dismissed as a matter of law.

## POINT III
## PLAINTIFF IS NOT PRECLUDED FROM ASSERTING CONTRACT CLAIMS

Defendants have also argued that Plaintiff is precluded from pursuing its contract claims based upon the doctrine of election of remedies. However Defendants argument fails. Plaintiff has not elected a remedy and the doctrine is inapplicable here. The purpose of the doctrine of election of remedies is to prevent double redress. Here, as explained at length below, double redress for a single wrong is not possible. Thus Plaintiff is not precluded from these claims.

### A.   PLAINTIFF HAS NOT ELECTED A REMEDY

Defendants' argument that Plaintiff's actions constitute an election of remedies is without merit. None of the examples cited by Defendants have the effect of precluding Plaintiff's proof.

The doctrine of election of remedies is designed to prevent a party from obtaining duplicate relief for a single wrong. *See Prudential Oil Corp. v. Phillips Petroleum Co.*, 418 F. Supp. 254, 257 (S.D.N.Y. 1975). With reference to contract claims, the doctrine is commonly

---

received monies from these sub-publishers from the exploitation of the Composition. (Robinson Decl. ¶13). Moreover these were the only sub-publishing agreements produced by Defendants. *See* Adelman Decl. ¶5.
[11] It should be noted that the monies received from Defendants' acts of infringement in the United States, were received by Defendants in the United States.

applied where a "non-breaching party that ... accepts the performance of the breaching party affirms the contract and waives its right to terminate." *See Oppenheimer & Co. Inc. v. Metal Mgmt., Inc.*, 08 CIV. 3697LTSFM, 2009 WL 2432729 (S.D.N.Y. July 31, 2009) *objections overruled*, 08CIV.3697LTSFM, 2010 WL 743793 (S.D.N.Y. Mar. 2, 2010*)*(Swain, J.).[12]

Here Plaintiff has not accepted the performance of Defendants, the breaching party, nor has it continued under the Alleged Agreements.  To this end, Defendants have not even alleged that Plaintiff has done so.  Defendants have argued that Plaintiff's alleged election is based upon one or more of the following: (i) ¶25 of the Complaint; (ii) ¶¶ 24, 27 and 93 of the Amended Complaint; (iii) Plaintiff's supplemental responses to Defendants' contention interrogatories; (iv) Nicole Branker's testimony that she did not know whether Stewart had agreements with any music publishing companies other than his companies; and (v) the fact that Plaintiff was not in possession of copies of the Alleged Agreements and did not produce them in discovery. However none of these are an election, nor could they possibly be construed as such.

Paragraph 25 of the Complaint and Paragraph 27 and 93 of the Amended Complaint were made upon information and belief.  Just like it is not proper to support a summary judgment motion with allegations made on information and belief, it would be inappropriate to bind Plaintiff to these allegations. Thus they should not be received into evidence as binding judicial admissions on this motion. *See* 32 C.J.S. Evidence § 545 ("Allegations based on information and belief may not be received in evidence as formal or informal judicial admissions"); *Roswell Capital Partners LLC v. Alternative Const. Technologies*, 638 F. Supp. 2d 360, 367 (S.D.N.Y. 2009)(information-and-belief allegations are insufficient on summary judgment motion— admissible evidence is required); Individual Practices Rules of Hon. Laura Taylor Swain 2.E

---

[12] *See also Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*, 103 F. Supp. 2d 711, 736 (S.D.N.Y. 2000) *aff'd*, 294 F.3d 383 (2d Cir. 2002) (Once a party elects to continue the contract it cannot later renounce its election and terminate the contract based on that breach).

("[r]ecitals in notices of motion, attorneys' affirmations, assertions of material factual matters

"on information and belief" and the like are generally insufficient to establish factual matters").

Additionally, Paragraph 93 of the Amended Complaint, was contained in Plaintiff's

alternative cause of action and specifically drafted in conjunction with ¶94 which states that:

> In the event that a fact finder determines that (i) March 13, 1995 Purported
> Agreement exists and is valid and (ii) that the Purported Assignment is valid, to
> the extent that Defendants have obligations under said agreements or made
> promises to perform or provide consideration under said agreements, Defendants
> have breached said agreements by failing to perform said promises and
> obligations and failing to provide any consideration to Plaintiff or William
> Stewart d/b/a Libvirg Publishing. *See* Cinque Decl., Ex. A, ¶94.

As such it cannot be construed to preclude Plaintiff from this claim.

As to Paragraph 24 of the Amended Complaint, it is a legal allegation in connection with

the whether the Alleged Agreements amounted to a contract that "assigned" Stewart's interest.

Such legal allegations are properly plead in the alternative.[13] *See Astroworks, Inc. v. Astroexhibit,*

*Inc.*, 257 F. Supp. 2d 609, 616 (S.D.N.Y. 2003):

> It is black letter law that a complaint *may* plead in the alternative. A complaint
> may not allege inconsistent *facts-e.g.,* whether there was an agreement-because
> facts are binding judicial admissions. **But legal allegations-***e.g.,* **whether that**
> **agreement amounted to a "contract"-may be pled in the alternative. Indeed,**
> **legal theories may be pled in the alternative even if the alternatives are**
> **wholly contradictory.** (Emphasis Added).[14]

Furthermore, contrary to Defendants' argument, Plaintiff's supplemental responses to its

contention interrogatories Nos. 1 and 3 cannot be treated as binding judicial admissions and do

not preclude Plaintiff from pursuing its contract based claims.  As mentioned in Defendants' own

---

[13] Additionally, to the extent that Plaintiff made certain allegations related to one claim that are inconsistent with
another they cannot be an admission against the other claim. Such a rule would nullify the purpose of Fed. R. Civ. P.
8(d)(2)-(3), as parties alternative allegations would nullify one another, and Plaintiff would be unable to recover
under any theory. *See Padre Shipping, Inc. v. Yong He Shipping*, 553 F. Supp. 2d 328, 333 (S.D.N.Y. 2008)
("plaintiffs are allowed to assert inconsistent facts in support of alternative claims, and courts may not construe
allegations regarding one claim to be an admission against another").

[14] Defendants left the second part of this quotation out of their brief.  Likely because it was an inconvenient holding
to their argument. *See* Def. Mem. p. 13.

brief in support of their motion for summary judgment the "Second Circuit has not ruled on the issue of whether interrogatory responses are binding judicial admissions." *See* Def. Mem. p. 12, *citing Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385, 290 (N.D.N.Y. 2011).

Additionally, there is no legal support for Defendants' argument that this Court should treat them as such here. The cases cited by Defendants are distinguishable from the facts here.

In *Wechsler* the Court's opinion that the contention interrogatory responses were binding judicial admissions which had a preclusive effect hinged upon the fact that Judge Pitman had specifically informed the responding party at a discovery conference, and later in an order, that "plaintiff would be precluded from later making arguments not identified in response to applicable questions." *See Wechsler v. Hunt Health Sys., Ltd.*, 94 CIV. 8294 PKL, 1999 WL 672902 (S.D.N.Y. Aug. 27, 1999). The facts here diametrically oppose those in *Wechsler* and as such *Wechsler*, and cases like it, are inapposite to this determination. Here, Plaintiff specifically objected to Defendants' contention interrogatories Nos. 1 and 3 on the grounds that Defendants would try to use the answers to preclude Plaintiff from pursuing its alternative theories of relief. *See* Adelman Decl., ¶6, 7, Exs. 5 and 6. Following those objections, when ordering Plaintiff to respond Judge Cott specifically stated that:

> Whatever Plaintiff's responses may be, **the parties remain free to make any arguments on summary judgment and at trial with respect to the issues raised in these interrogatories**. *See generally* 8B, Wright, Miller & Marcus, Federal Practice and Procedure, § 2181 at 105-06 (2010)(**parties not irrevocably bound to answer given**, **especially in response to contention interrogatories**); Advisory Notes to 1970 Amendment to Fed. R. Civ. P. 33 (**"[t]he general rule governing the use of interrogatories is that under ordinary circumstances they do not limit proof.**"). (Emphasis Added).

*See* Adelman Decl. ¶8, Ex. 7. Unlike *Wechsler,* when ordering a response, the Court here clearly intended that the responses would not be binding and preclusive. Specifically the Court

affirmatively ordered that the parties remained free to make arguments with respect to the issues raised in the interrogatories **on summary judgment and at trial.**  Given this Order, Plaintiff cannot be precluded from proffering other proof and arguments on summary judgment or at trial.

This action is also distinguishable from the other cases offered by Defendants[15], as Plaintiff has not been afforded an opportunity to consult all sources of information prior to answering the question and there is no resulting prejudice.  *See Wechsler*, 1999 WL 672902(party has been afforded opportunity to consult all pertinent sources of information bearing on the question); *Hamelin*, 274 F.R.D., 391(although answers generally do not limit proof, they are binding here because defendant must know which of its employment policies each opt in plaintiff is proceeding under otherwise it will be prejudiced).

Here, as Defendants know, Stewart is deceased.  *See* Adelman Decl. ¶10, Ex. 9.  Plaintiff the Estate was not aware of the Alleged Agreements, prior to when they were produced in discovery in this action.  *See* Adelman Decl., ¶14, Ex. 13, Branker Dep. 30:3-6; Gandel Decl. ¶8. Nor could Plaintiff have been aware of the Alleged Agreements given that Robinson himself claims to have been unaware of them until after he was served with the Summons and Complaint.  *See* Robinson Decl. ¶12; Adelman Decl. ¶4, Ex. 3, Robinson Dep. 69:9-17.  Plaintiff never had the benefit of Stewart's of execution of the Alleged Agreements.  As such precluding Plaintiff from offering other proof in the record to support its alternative claims is inappropriate.

---

[15] The case *Prince Group, Inc. v MTS Products*, 95 CIV. 1160 (BN), 1998 WL 273099 (S.D.N.Y. May 27, 1998), which was cited as support by Defendants (Def. Mem. p 12) is not addressed here because its holding is not even close to relevant.  The *Prince* holding found that a deposition answer was an evidentiary admission and not a judicial admission.  Contention interrogatories were not even at issue in the case.  They were only discussed as an illustrative example of the difference between different types of possible admissions. Similarly, the court in *Guadango v. Wallack Ader Levithan Assocs.*, 950 F. Supp. 1258, 1261 (S.D.N.Y. 1997), was dealing with the evidentiary effect of statements given at a deposition.  In fact that *Guadango* court specifically noted that if the answer had been given in answer to a contention interrogatory it **might** be binding or preclusive, but not stating that it would be as a matter of right.

More importantly, Defendants have not shown that they have been or will be prejudiced. In fact Defendants have not even argued this in their motion.  To the contrary, Defendants have argued that there is a benefit to them to enforce the Alleged Agreements. To this end, Defendants cannot be prejudiced by Plaintiff offering other proof and pursing its contract claims as it is Defendants who seek to affirmatively recover under the Alleged Agreements.  If the Alleged Agreements are admissible, any argument made on reply that Defendants would be prejudiced by Plaintiff reciprocally recovering for Defendants' own breaches of those agreements is illogical. Plaintiff's responses to the contention interrogatories are not binding judicial admissions and do not preclude Plaintiff from pursuing its alternative claims of breach of contract and rescission.

Lastly, Branker's lack of knowledge of the Alleged Agreements and the fact that Plaintiff did not produce copies of the Alleged Agreements does not amount to an admission that they do not exist.  Such a claim is preposterous.  Defendants produced them in discovery, that is enough. This is especially true where the reason Plaintiff did not have copies is because Defendants never provided them prior to the lawsuit.  *See* Gandel Decl. ¶6-9.

None of the above constitutes an election of remedies nor does it evidence a continuation of the Alleged Agreements or acceptance of Defendants' performance by Plaintiff.  No election has been made by Plaintiff that would preclude it from pursuing alternative claims.

**B.   THE DOCTRINE OF ELECTION OF REMEDIES IS INAPPOSITE**

Similarly, Defendants' argument that Plaintiff has made an election of remedies by moving for summary judgment on its copyright infringement claim is also incorrect as it has no bearing on the purpose of the doctrine of election of remedies.

The doctrine of election of remedies is a common law doctrine.  The "purpose of the election of remedies doctrine is **not to prevent recourse to any remedy but to prevent double**

**redress for a single wrong**." *See e.g. In re Syosset Laboratories Co., Inc.*, 94 CV 5914, 1995 WL 432621 (E.D.N.Y. July 14, 1995)(Emphasis added).

Here the doctrine of election of remedies is inapplicable. Plaintiff has sought redress for Defendants admitted wrongdoing by pursuing alternative claims. However it is not disputed that Plaintiff cannot simultaneously prevail on conflicting claims. As explained above, Plaintiff has made no such election and Defendants have not relied on any such election to their detriment.

Absent prejudice to Defendants that resulted from some election by Plaintiff upon which Defendants relied, a party "may not be precluded from pleading and seeking to prove at trial alternative legal theories despite the inconsistency of these theories." *See Omega Executive Services v. Grant*, 78 CIV. 4616, 1980 WL 1432 (S.D.N.Y. Aug. 22, 1980); *Croce v. Kurnit*, 565 F. Supp. 884, 894 (S.D.N.Y. 1982) *aff'd*, 737 F.2d 229 (2d Cir. 1984)(election should be made after trial); *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996)(where the complaint asserts claims on theories of both contract and quantum meruit and there is a genuine dispute as to the existence of a contract, the plaintiff need not make a pretrial election between these theories; he is entitled to have the case submitted to the jury on both theories).

Here Defendants have not alleged that they have been prejudiced, nor could they be from allowing Plaintiff to pursue alternative claims because it is undisputed that Plaintiff cannot recover on all of its claims simultaneously. If the Court finds that the Alleged Agreements are inadmissible, [16] Plaintiff can recover on its copyright infringement claim on summary judgment.[17] If the Court finds that the Alleged Agreements are admissible, Plaintiff could

---

[16] Plaintiff maintains that the Court can resolve the issues of admissibility in connection with the Alleged Agreements based upon Defendants' inability to authenticate the Alleged Agreements. *See* Point I above. However in the event that the Court finds that the agreements can be authenticated for purposes of admissibility there are still genuine issues of material fact as to the genuineness and validity of the Alleged Agreements.
[17] Similarly if the Alleged Agreements were admitted at trial a fact finder could find them to be invalid or not genuine and could find for Plaintiff on its claim of copyright infringement.

recover on its claim of breach and termination, as Defendants have admitted that they materially breached the Alleged Agreements.  *See* Robinson Decl., ¶12, 16.  Alternatively, if the Court finds that Defendants' admitted breach was so severe as to defeat the purpose of the contract, and that Defendants' failure to pay royalties was total[18] Plaintiff is entitled to rescission and Plaintiff may recover the monies that Defendants collected and unjustly retained from their exploitation of the Composition.  It is clear that Plaintiff would not be able to, and has not, chosen one of two inconsistent remedies that would result in double recovery for a single wrong.

As such the doctrine of election of remedies does not preclude Plaintiff from seeking to prove, on summary judgment or at trial, its alternative legal claims.

### POINT IV
### ALTERNATIVELY PLAINTIFFS CONTRACT CLAIMS CANNOT BE DISMISSED

Defendants have further moved for summary judgment dismissing Plaintiff's claims of breach of contract, rescission and unjust enrichment.  Even if the Court finds that the Alleged Agreements are able to be authenticated for admissibility purposes, Plaintiffs' Counts 7, 8 and 9 still cannot be dismissed.

### A.  PLAINTIFF DID NOT BREACH THE ALLEGED AGREEMENTS AND DEFENDANTS ARE NOT ENTITLED TO AN OFFSET

Defendants have argued that Plaintiff breached the Alleged Agreements and as a result of that breach: (i) Plaintiff is precluded from recovery on its own breach of contract claim; and (ii) Defendants are entitled to an offset.  While it is undisputed that Plaintiff collected monies from the exploitation of the Composition, this was not a breach of the Alleged Agreements and Defendants cannot demonstrate the other factors to show entitlement to an offset.  Thus Plaintiff's claim is not barred and Defendants are not entitled to an offset.

---

[18] As discussed above, the Mallison Decl., may not be used to support the argument that they paid Stewart $2,500.

As an initial matter, in claiming offset Defendants bear the burden of proof. New York state courts consistently require the party that would benefit from the offset to prove its entitlement to a reduction of damages. *See Aristocrat Leisure Ltd. v Deutsche Bank Trust Co. Americas*, 727 F Supp 2d 256, 289-90 (S.D.N.Y. 2010) *citing Am. Oil Co. v. Coughlin*, 261 A.D. 852, 24 N.Y.S.2d 731, 732 (App. Div. 1941)(holding that, where defendants "pleaded a counterclaim or set-off," they "had the burden of proof on [that] issue").[19]

Assuming the Alleged Agreements are admissible, Defendants cannot satisfy the elements required to prove a claim of breach of contract against Plaintiff to be entitled to an offset. *See Nordic Bank PLC v. Trend Group, Ltd.*, 619 F. Supp. 542, 561 (S.D.N.Y. 1985) (elements for breach of contract are: (1) the existence of a contract[20]; (2) due performance of the contract by the plaintiff; (3) breach of contract by the defendant; and, (4) damages resulting from the breach). Defendants cannot prove due performance of the Alleged Agreements, breach by Plaintiff or damages resulting from the breach.

Here Defendants claim that Plaintiff is barred by its own breaches and claim of offset are both premised upon Defendants mistaken belief that Plaintiff breached the Alleged Agreements and that Defendants are entitled to a portion of the monies Plaintiff collected. Although in other circumstances assignors may be liable to assignees and offsets may be appropriate, that is clearly not the case here. Even if the Alleged Agreements were admissible and valid, Plaintiff did not breach the Alleged Agreements. The Alleged Pub. Agr., does not state that it is exclusive and

---

[19] *See also Aniero Concrete Co., Inc. v. N.Y. City Constr. Auth.*, 308 F.Supp.2d 164, 190–91 n. 17 (S.D.N.Y.2003) (stating that because "the defendant wishes to reduce the amount of [plaintiff's] claim by asserting its right to a 'credit,' 'offset,' or 'setoff,' defendant bears the burden of proving its entitlement by a preponderance of the evidence").

[20] As set forth at length above Plaintiff has demonstrated that it is doubtful that ultimately at trial Defendants would be able to demonstrate that there is a valid existing agreement, however Plaintiff's alternative claim of breach of contract is in the event that Defendants can demonstrate there is a valid existing agreement. As such Plaintiff does not concede this point for the purpose of its copyright infringement claim, nor should this be construed as a waiver on Plaintiff's right to offer proof on this matter.

there is no evidence that the right to collect on the Composition was exclusive to Defendants.[21]
*See* Robinson Decl. Ex. 2. The Alleged Pub. Agr., states "This advance will be applied against
any and all monies that are **received by Sugar Hill Music** on your behalf. Of all monies
collected you will receive 60%. The remaining 40% will be split between Lavaba Mallison
(20%) and Sugar Hill Music (20%)." (Emphasis Added)). *Id.*

More importantly, Defendants never collected for exploitations in the United States and
Defendants never registered as a publisher to collect performance societies in the United States.
*See* Adelman Decl., ¶4, Ex. 3,Robinson Dep. 100:19-22 (Defendants not registered as publisher
for the Composition with BMI); Robinson Decl. ¶13 (**"no income was received by Sugar Hill
from exploitation of "No Diggity" within the United States**."(Emphasis Added)). According
to Robinson's statements, although he has been responsible for administering Sugar Hill's
business for over 10 years, he was not aware of Sugar Hill's interest in the Composition until the
commencement of this action. *See* Robinson Decl. ¶2, 12.[22] Plaintiff did not breach the Alleged
Agreements, it collected monies it was due. Monies Defendants forgot about or failed to collect.

Defendants have also failed to demonstrate due performance of the Alleged
Agreements.[23] The Alleged Pub. Agr., requires 60% of monies collected by Sugar Hill to be
paid to Stewart. *See* Robinson Decl. Ex. 2. But Sugar Hill did not pay Stewart 60% of all
monies received. Joey Robinson admitted that Sugar Hill was unaware of its obligations under
the Alleged Agreements and failed to pay Stewart or Plaintiff. *See* Robinson Decl. ¶12, 16;

---

[21] It should be noted that even if Defendants could prove the right to collect was exclusive and Plaintiff was
supposed to refrain from collection, which they cannot, Plaintiff would have been excused from its obligation as a
result of Defendants material breach. *See Nat'l Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 204 (2d Cir.1989)
(material breach excuses performance of the non-breaching party to a contract).
[22] Sylvia Robinson submitted a verification confirming she has no knowledge of these events. *See* Adelman
Decl.¶12, Ex. 11.
[23] The Alleged Assignment specifically states that it is "subject to all the terms and conditions of" the Alleged Pub.
Agr., between the parties. *See* Robinson Decl. Ex. 1. As discussed above and as testified to by Joey Robinson,
together the Alleged Assignment and the Alleged Pub. Agr., are one agreement and must be read together.
Defendants cannot claim that they were not required to make payments under the Alleged Assignment.

Adelman Decl., ¶4, Ex. 3, Robinson Dep. 80:25, 81:1-8, 91:14-25, 92:1-25, 93:1-10 (Robinson testified he had no personal knowledge or records to show payment of the $2,500, royalty payments to Stewart or accountings sent to Stewart).  Defendants have materially breached the Alleged Agreements and are not entitled to affirmative recovery, credit or offset under same.

Lastly Defendants cannot prove damages resulting from the alleged breach.  The express terms of the Alleged Pub. Agr., make it clear that Sugar Hill is at best entitled to keep 20% of monies collected by **Sugar Hill**.  *See* Robinson Decl. Ex. 2.  Here Defendants seek a percentage of monies they did not collect or even try to collect.  As testified to by Robinson, Sugar Hill and Diamond Head are publishing companies that administer copyrights of songs. When they receive money they pay the publisher and the writer and, in consideration for their work in collecting that money, keep an administration fee that is set by contract.  *See* Adelman Decl., ¶4, Ex. 3, Robinson Dep. pg 33:21-25, 34:1-17.  Here Defendants argue that regardless of their failure to collect on the Composition, they are still entitled to an administration fee for not performing under the Alleged Agreements and not even being aware that they were supposed to collect. Defendants' request cannot be sustained as they cannot be entitled to a fee for services they did not perform.

In addition to all this, Defendants damages calculation in and of itself is inadmissible. First Defendants have made claim to 40% of monies collected by Plaintiff, when the contract expressly states that at best they can retain 20% of monies they collect.  Additionally Defendants calculation is based on faulty math and guesstimations, which is not admissible.  *See e.g.* Robinson Decl., ¶13 ("Sugar Hill received **approximately** $30,000 of income from its exploitation of "No Diggity" since 2005); ¶15 (Stewart and Plaintiff collected "**over** $100,000. . . since the May 25, 1999 Assignment"); Def. Mem. p. 19 (Sugar Hill "received **about** $30,000");

p. 19 ("**about** $15,000") (Emphases added).  *See* Def. Mem. p. 19.  Guesswork cannot form the

basis for damage estimate on summary judgment.  *See Niagara Mohawk Power Corp. v. Stone &*

*Webster Eng'g Corp.*, 88-CV-819, 1992 WL 121726 (N.D.N.Y. May 23, 1992)(the court agrees

with movant that given the guesswork and unsupported assumptions which form the basis for

this damage estimate, summary judgment on against non-movant is mandated).

Moreover, Defendants' statement that it only collected about $30,000 is directly

contradicted by the Expert Report of Jay L. Berger who opined that Defendants have collected

$317,106.77.  *See* Adelman Decl. ¶11, Ex. 10. As set forth above Defendants have failed to

prove a breach by Plaintiff or their entitlement to an offset or credit.[24]

## B.   PLAINTIFF IS ENTITLED TO RESCISSION

If the Alleged Agreements are admissible, Plaintiff is entitled to an order rescinding them

*ab initio.*  Contrary to Defendants statements, Plaintiffs are entitled to rescission for Defendants'

total failure to perform the primary objectives of the Alleged Agreements.

For the reasons set forth in Point IV(A) above, Defendants second argument that Plaintiff

has been paid by virtue of the monies Plaintiff collected fails.  Defendants are not entitled to any

credit or offset of the amounts they failed to collect that were collected by Stewart.  Plaintiff has

not been paid.   Moreover here Defendants failure to pay Stewart and Plaintiff is **total**.

Defendants have also failed to produce admissible evidence that may be used to support

their claim that they paid Stewart $2,500. As discussed at length above the Mallison Decl., may

not be used to support this contention.  *See* Point I.  The record further reveals that Defendants

have no personal knowledge of the payment of the alleged $2,500 advance.  Robinson testified

that he only "believes" it was paid.  *See* Adelman Decl. ¶4, Ex. 3, Robinson Dep. 80:25, 81:1-8.

---

[24] In the unlikely event that the Court found they had proved all elements, the Report of Jay L. Berger creates a genuine issue of material fact as to the amount of offset and/or credit that Defendants could be entitled to and as such summary judgment on the claim of offset must be denied. *See* Adelman Decl. ¶11, Ex. 10.

*See Trans Sport, Inc. v. Starter Sportswear, Inc.*, 964 F.2d 186, 188 (2d Cir. 1992)(conjecture or surmise not admissible evidence).  Robinson further acknowledged that Defendants do not have any documentation to prove that the alleged advance or any royalties thereafter were ever paid.  *See* Adelman Decl. ¶4, Ex. 3, Robinson Dep.83:19-25, 84:1-25, 85:20-25, 86:1-9, 87-88.[25]

However, even assuming *arguendo,* that Defendants could establish payment of the $2,500 advance to Stewart, Defendants would have only paid Stewart 1.3% of the royalties due to him under the Alleged Agreements.[26]  Payment of only 1.3% of royalties under an agreement is total.  The object is that Plaintiff receives 100% of royalties due to him under the Alleged Agreement.  Here, Defendants kept 98.7% of royalties that were due to Plaintiff, which absolutely defeated the object of the parties in making this contract.  Moreover, this type of failure is distinguishable from *Nolan,* where the Court denied rescission because Fox paid 26% of royalties due under the agreement. *See Nolan v. Sam Fox Pub. Co., Inc.*, 499 F.2d 1394, 1399 (2d Cir. 1974).[27]

Lastly, Plaintiff does not have to offer to restore that payment as it has been restored. *See The Ernest M. Munn*, 66 F. 356, 358 (2d Cir. 1895)(restoration of consideration satisfies requirement).  As set forth above, Defendants have kept 98.7% of royalties that were due to Plaintiff.  In fact, they have collected a total of $317,106.77 from the exploitation of the Composition. *See* Adelman Decl., ¶11, Ex. 10 p. 13.  Assuming for arguments sake that

---

[25] The Court cannot consider the statements made in the Robinson's Decl. to support this fact as they were not made upon personal knowledge.

[26] As stated in the Berger Report, assuming Plaintiff is to receive 60% of what Defendants collected on the Composition.  According to the Berger Report Defendants collected $317,106.77. *See* Adelman Decl., ¶11, Ex. 10. Thus, under their obligation to pay Stewart 60% Defendants would owe Plaintiff $190,264.06. *See Id.* p. 13-14. $2,500 is only 1.3% of the $190,264.06 that was due to Plaintiff under the Alleged Agreements.

[27] As noted in Def. Mem. Under New York Law, rescission is permitted where the breach of an agreement is "material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract." *Septembertide Pub., B.V. v. Stein & Day, Inc.,* 884 F.2d 675, 678 (2d Cir. 1989), *citing Callanan v. Powers,* 199 N.Y. 268, 282, 92 N.E. 747 (1910).  Specifically with reference to assignment and publishing agreements, it is well settled law that rescission is proper, despite the absence of any showing of fraud, in cases in which a publisher has made none of the royalty payments under an agreement. *See Nolan v. Sam Fox Pub. Co., Inc.,* 499 F.2d 1394, 1399 (2d Cir. 1974) (rescission is available where there is a total failure to pay royalties).

Defendants could establish payment of the $2,500, Defendants have more than recouped this advance and it has been restored. During his deposition, Joey Robinson even admitted that the $2,500, if paid, was already recouped. *See* Adelman Decl., ¶4, Ex. 3, Robinson Dep., 92:13-19. Given the clear facts that show a reasonable jury could find for Plaintiff, the claim of rescission cannot be dismissed.

## C.   RESCISSION IS NOT BARRED BY THE STATUE OF LIMITATIONS

Additionally, Plaintiff's rescission claim cannot be barred by the statue of limitations. Contrary to Defendants' blanket statement, claims are governed by CPLR § 213(6). This provision provides a two year extension on the statute of limitation "from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it." *See* CPLR § 213(6); *Foxley v. Sotheby's Inc.*, 893 F. Supp. 1224, 1234 (S.D.N.Y. 1995). Here Defendants did not even know about the Alleged Agreements until the commencement of this action. *See* Robinson Decl. ¶12; Adelman Decl., ¶4, Ex. 3, Robinson Dep. 69:9-17. Plaintiff did not know about the Alleged Agreements prior to when they were produced by Defendants after the commencement of this lawsuit. *See* Cinque Decl. Ex. D (Plaintiff's original complaint did not assert a rescission claim); ¶9 (Branker did not know about the Alleged Agreements). Moreover a reasonable person could not have discovered the existence of the Alleged Agreements, when Defendants themselves had no knowledge of them. [28] Since Plaintiff asserted it claims for rescission, within two years from when the Alleged

---

[28] To the extent Defendants argue Plaintiff should have known, Defendant refused to provide Plaintiff with any information, thus the statute would still be tolled. The law is clear that fraudulent concealment of the existence of a cause of action tolls the running of the statute of limitations. *See, e.g., Barrett v. United States*, 689 F.2d 324, 327 (2d Cir.1982), cert. denied, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983). But such tolling is not indefinite. It lasts only so long as the fraud is effective. *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir 1992). Tolling of the statute of limitations will occur only where a reasonably prudent person could not discover operative facts that were actively concealed from him by the party against whom estoppel is sought. *See Cerbone v. ILGWU*, 768 F.2d 45, 48–49 (2d Cir.1985). *See also Barrett v. U.S.*, 689 F.2d (2d Cir.1982).

Agreements were discovered by Defendants and Plaintiff, the claim cannot be barred by the statute of limitations. *See* Cinque Decl., Ex. A.

**D.    MALLISON IS NOT A PARTY TO THE ALLEGED AGREEMENTS**

In addition to the above, Plaintiff is still entitled to rescission even though Mallison is not a party to this lawsuit, because Mallison is not a party to the Alleged Agreements.[29]  The express terms of the Alleged Pub. Agr., state that the agreement is "by and between William Stewart c/o Nicole Barnker . . . and Sugar Hill Music Publishing." *See* Robinson Decl., Ex. 2.  Although the Alleged Pub. Agr., expresses that 20% of monies collected remitted to Mallison, any alleged entitlement to a revenue stream in the Composition is not governed by the Alleged Pub. Agr., and as such is not at issue here.   It is important to note that Mallison's Decl., does not allege that he is entitled to a revenue stream under the Alleged Pub. Agr., nor does it state that he has a right that would be affected by Plaintiff's claims in this action.[30] *See* Mallison Decl.  If Mallison alleges that he has rights to a royalty stream in the Composition by virtue of a separate agreement and is still entitled to them, he can pursue those rights separately.  More importantly, it is clear that Defendants do not seriously think that he is entitled to money under the Alleged Agreements, as they did not even keep his address to pay him. *See* Adelman Decl., ¶4, Ex. 3, Robinson Dep. 82:3-12.  Defendants have submitted no admissible evidence to demonstrate that Mallison is a party to the Alleged Agreements, thus Plaintiff's claim is not precluded.

**E.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM CANNOT BE DISMISSED**

---

[29] It is undisputed that Mallison is not a party to the Alleged Assignment. *See* Robinson Decl., Ex. 1. It is further undisputed that, as set forth above, the Alleged Assignment and Alleged Pub. Agr., are one agreement.  Defendants claim that they could be read separately and that they do not owe Plaintiff monies under the Alleged Assignment contradicts the express terms of the agreement which make the Alleged Assignment subject to the terms and conditions of the other agreement.

[30] Although, as set forth above Mallison's Decl., cannot be used to support Defendants' factual contentions in this motion, the absence of these obviously relevant statements is telling that Mallison has no rights under the Alleged Pub. Agr.

Plaintiff is also not precluded from its claim of unjust enrichment.  By Defendants own admission in order for the claim to be excluded the Alleged agreements must be "valid and enforceable." *See* Def. Mem. 19 *citing IDT Corp. v. Morgan Stanley Dean Witter,* 12 N.Y. 3d 132, 142, 879 N.Y.S.2d 355, 361 (2009).  Here, as discussed at great length above, there is not admissible evidence to support that the Alleged Agreements are valid or enforceable as a matter of law.  Moreover Plaintiff is entitled to recovery of the monies collected and unjustly retained by Defendants, if the Court rescinds the Alleged Agreements *ab initio.*  As such Plaintiff is not barred from recovery under its theory of unjust enrichment.

**F.    THIS COURT HAS SUBJECT MATTER JURISDICTION**

As set forth above, the Berger Report demonstrates that the amount in controversy under Plaintiff's claims of breach of contract is at least $190,264.06 and up to $317,106.77 for unjust enrichment and rescission.  *See* Adelman Decl., ¶11, Ex. 10, p. 13-14.  This more than satisfies the diversity requirement of $75,000 as set forth in 28 U.S.C. § 1332(a).[31]

**CONCLUSION**

For all of the foregoing reasons Plaintiff respectfully requests that this Court deny Defendants' motion in its entirety.

Dated: New York, New York
December 9, 2011

Respectfully submitted,

MEISTER SEELIG & FEIN LLP

Gary Adelman, Esq.
*Attorneys for Plaintiff*
140 East 45th Street, 19th Floor
New York, New York 10017
Telephone: (212) 655-3580
E-mail: gpa@msf-law.com

[31] The damages set forth in the Robinson Decl. should be disregarded by this court as they are guesstimates. Even if they are not the Berger Report is sufficient to create a genuine issue of material fact as to this issue that would make summary judgment improper here.