UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHERYL COOK, GWENDOLYN CHISOLM, and
THE ESTATE OF WILLIAM A. STEWART JR.          Index No.: 10 CIV 2632
                                              (LTS)(JLC)
                   Plaintiffs,

       - against -

SUGAR HILL MUSIC PUBLISHING, LTD.,
DIAMOND HEAD MUSIC, INC. d/b/a TWENTY
NINE BLACK MUSIC, JOEY ROBINSON,
SYLVIA ROBINSON and LELAND ROBINSON,

                   Defendants.
------------------------------------------------------------X


## PLAINTIFF'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**MEISTER SEELIG & FEIN LLP**
*Attorney for Plaintiff*
**Two Grand Central Tower
140 East 45th Street, 19th Floor
New York, New York 10017
(212) 655-3580**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................. 1

    I.    PLAINTIFF HAS PROVED ITS DAMAGES ............................................... 2

    II.   THE ALLEGED ASSIGNMENT IS NOT PER SE VALID ........................... 6

    III.  THE MALLISON DECL. CANNOT BE USED IN SUPPORT ..................... 7

    IV.  THE CORPORATE VEIL MUST BE PIERCED ........................................... 9

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Aristocrat Leisure Ltd. v Deutsche Bank Trust Co. Americas,*
   727 F Supp 2d 256 (S.D.N.Y. 2010) .................................................................................. 4

*Atkins v. County of Orange,*
   372 F.Supp.2d 377 (S.D.N.Y. 2005) .................................................................................. 8

*Beleson v. Schwartz,*
   599 F. Supp. 2d 519 (S.D.N.Y. 2009) *aff'd,* 419 F. App'x 38 (2d Cir. 2011) .................... 1

*Dietrich v. Bauer,*
   95 CV.7051, 2000 WL 1171132 (S.D.N.Y. Aug. 16, 2000) ................................................ 5

*Nolan v. Sam Fox Pub. Co., Inc.,*
   499 F.2d 1394 (2d Cir. 1974) .............................................................................................. 7

*Wm. Passalacqua Builders, Inc., v. Resnick Developers South, Inc.,*
   933 F.2d 131 (2d Cir. 1991) ................................................................................................ 9

**Statutes**

New York General Obligations Law § 5-1107 ......................................................................... 6

**Rules**

Fed. R. Civ. P. 26(a) ............................................................................................................... 1

Fed. R. Civ. P. 26(e) ............................................................................................................... 8

Fed. R. Civ. P. 34 .................................................................................................................... 5

Fed. R. Civ. P. 37 ................................................................................................................ 8, 9

Fed. R. Evid. 702 .................................................................................................................... 5

Fed. R. Evid. 901 .................................................................................................................... 7

## PRELIMINARY STATEMENT

This memorandum of law is submitted in further support of Plaintiff's motion for summary judgment.[1] Defendants' opposition failed to avoid summary judgment. To the contrary of what Defendants' intended, their opposition shows that they must be held liable for the wrongs committed against Plaintiff. Defendants' opposition is nothing more than a rambling diatribe[2] of gross misinterpretations of evidence, inapposite legal authority and failed excuses.

Defendants have essentially asked this Court to excuse every obligation they have under the Alleged Agreements and the FRCP. To prevail here, the Court would have to excuse all of Defendants many failures including: (i) that Defendants forgot to collect on the Composition in the U.S.; (ii) that Defendants have never paid or accounted to Plaintiff; (iii) that since **June of 2010** they forgot to disclose the contact information and written statement **of the only living witness** who allegedly has knowledge of the signing of the Alleged Pub. Agr.; (iv) that they failed to satisfy the requirements Fed. R. Civ. P. 26(a)(2)(B); (v) that their expert, Cohen, failed to state a methodology in his report and failed to assert opinions produced by reliable principles and methods; and (vi) that for ten years Defendants have not observed corporate formalities.

---

[1] As used herein the Declaration of Gary Adelman in support of Plaintiffs' motion, dated November 18, 2011 shall be referred to herein as the "Adelman Decl.," the Declaration of Jay L. Berger dated November 18, 2011 shall be referred to as the "Berger Decl.", the memorandum of law submitted in support of Plaintiff's motion dated November 18, 2011 shall be referred to herein as the "Pl., Mem.", Defendants memorandum of law dated December 22, 2011 submitted in support of Defendants' opposition shall be referred to herein as "Def. Mem.", the Declaration of Joseph Robinson Jr. dated December 20, 2011 submitted in support of Defendants' opposition shall be referred to as the "Robinson Decl.", and the Declaration of Gary Cohen dated December 20, 2011 shall be referred to as the "Cohen Decl." Additionally this memorandum of law shall refer to the Declaration of Joseph Robinson dated November 15, 2011 as the "11/15/11 Robinson Decl.", the Declaration of Lavaba Mallison dated June 28, 2011 as the "Mallison Decl.", the Declaration of James P. Cinque dated December 22, 2011 submitted in reply to Defendants' motion (the "Cinque Decl.") the other Declaration of Joseph Robinson Jr., dated December 20, 2011 submitted in further support of Defendants' motion ("Robinson Reply Decl."), Plaintiff's memorandum of law in opposition to Defendants' motion dated December 9, 2011 ("Pl. Op. Mem.") and the Declaration of Gary Adelman dated December 9, 2011 ("Adelman Op. Decl."). Papers submitted in connection with Defendants' motion for (Docket No.: 61) were referred to by Defendants in their opposition, thus they are addressed here.

[2] To this end Defendants five page factual statement contains virtually no citations to the record, nor do many of Defendants statement appear in the material submitted in support of Defendants' opposition.

1

Defendants' excuses have no merit. To the contrary they are a desperate, diversionary tactic implemented in the hopes that this Court will be distracted from the truth. Defendants have systematically evaded their obligations at every possible chance. In the simplest of terms Defendants have asked this Court to excuse the fact that they materially breached those Alleged Agreements, to allow them to continue to exploit the Composition, without paying Plaintiff, and amazingly, to be rewarded by getting credit for monies they admittedly never tried to collect and are not entitled to. Defendants' requests are deeply opposed to all notions of justice. For all of the reasons set forth herein, Plaintiff respectfully requests that this Court grant its motion.

## I.   PLAINTIFF HAS PROVED ITS DAMAGES

Defendants' argument that Plaintiff has not proved its damages is without merit. It misunderstands and misrepresents the point. Defendants have either failed to read the Berger Report or have attempted to confuse the issues. Regardless, their argument must be disregarded.

Defendants' assertions that Berger reduced the damages that he opined Plaintiff was due and admitted the validity of the Alleged Agreements, are false. In no uncertain terms, Berger opined the amount of damages due to Plaintiff in two different circumstances: $317,106.77 if Plaintiff is owed 100% of monies collected by Defendants and $190,264.06 if Plaintiff is owed 60% of what was collected by Defendants. *See* Adelman Decl., Ex. 5., p. 8, 13-14. This is not an admission that the Alleged Agreements are valid. Moreover, in the Berger Decl., the damages were not reduced. The Berger Decl., set forth re-calculations of part of the damages analysis based upon Cohen's suggestion that it would be better to estimate the units sold as a mathematical average rather than estimating units sold at the top of the range. *See* Berger Decl., ¶2-4. Contrary to what Defendants have asserted, the re-calculation based upon Cohen's suggestion increased damages from $259,212.34 to $444,363.70 if Plaintiff is entitled to 100%,

2

and from $155,527.40 to $266,618.22, if Plaintiff is entitled to 60%.[3] *See* Adelman Decl., Ex. 5, p. 11-12; Berger Decl. ¶¶2-4. Berger did not adopt these numbers, however if Defendants think the calculation using Cohen's estimates is more reasonable, Plaintiff is amenable.

Defendants' next argument that Plaintiff seeks to collect income paid prior to May 25, 1999 is equally unfounded. Berger's testimony, cited by Defendants, that the monies earned in the **United States** would have been paid in approximately a year, is irrelevant to his analysis of when monies paid on foreign exploitation would be paid. *See* Cinque Decl., Ex. A (p. 39-40 discussing general payment periods and explaining that Sugar Hill had the right to receive back payments); (p. 47-49 discussing "U.S. sales . . . just U.S."). As clearly stated by Berger, "[i]t is [his] experience that foreign societies' limitations on payouts are six (6) to eight (8) years after receipt of the income." *See* Adelman Decl., ¶7, Ex. 5, p. 10. Based on the release date of 1997 the Defendants began collecting that income between the summer of 2004 and 2006, well after Defendants contend they were authorized to collect. *See Id.* Berger's opinion is supported by Defendants' own production of royalty statements from sub publishers, the earliest of which is in 2004. Robinson's bare bones denial that Sugar Hill did not collect certain income, is also discredited by his previous statements. Robinson previously admitted that before this lawsuit he did not even notice that the Composition was in Sugar Hill's catalogue. *See* 11/15/11 Robinson Decl., ¶12, 16. Thus, he could not have been aware of receipt of those monies.

Moreover, Defendants records do not support their statement as they are obviously incomplete. Despite their alleged "business practice" of keeping royalty statements for "approximately" six years (11/15/11 Robinson Decl. ¶13), they obviously do not.[4] Defendants

---

[3] If the number of units used to find a per unit price is reduced, price per unit increases. As an example, $100 for 10 units=$10 per unit, whereas $100 for 2 units= $50 per unit.
[4] There are time periods missing from the royalty statements. Moreover this is contradicted by Robinson's statement that he only reviewed the statements in their "possession." *See* 11/15/11 Robinson Decl., ¶13.

failed to produce statements from Budde and Warner Chappell for 2004. Additionally rather than produce the royalty statements, in many instances, Defendants produced summary sheets that were created by Robinson. *See* Adelman Decl., ¶14, Ex. 11, Cohen Dep. 43:7-11, 51:5-13. Defendants' records are incomplete and as such, Robinson has no basis for denying receipt of income. Defendants' statute of limitations argument is also flawed. Given that Defendants receipt of monies started in 2004, Plaintiff is well within a six-year statue of limitations.

Defendants' assertion that the Berger Report should have considered monies collected by Plaintiff, is also absurd. Defendants have the burden of proving entitlement to an offset. *See Aristocrat Leisure Ltd. v Deutsche Bank Trust Co. Americas*, 727 F Supp 2d 256, 289-90 (S.D.N.Y. 2010) (holding that, where defendants "pleaded a counterclaim or set-off," they "had the burden of proof on [that] issue"). As stated in the Berger Report, Berger was engaged to determine the amount of damages due **Plaintiff**. *See* Adelman Decl., ¶7, Ex. 5, p. 6. It is not Plaintiff's burden to prove Defendants' "offset." As such the Berger Report is not flawed because he did not do so. More importantly, as discussed at length in Pl. Op. Mem., Point IV(A), Defendants are not entitled to an offset. Assuming its validity, pursuant to the **express language** of the Alleged Pub. Agr., Defendants are only entitled to retain 20% of **monies they collect**. *See* Adelman Decl., Ex. 7. Berger's quoted statements do not support Defendants' argument. In fact his statement that if the Alleged Agreements were valid, "Sugar Hill would collect," supports a finding that Defendants cannot be entitled any monies they did not collect.

If, as Defendants have argued, they were supposed to collect 100% of monies worldwide, then at best Defendants failure to collect on the Composition in the United States is an admission that Defendants materially breached the Alleged Agreements. At worst, their failure is evidence

that Defendants intentionally licensed the Composition to sub-publishers outside the U.S., in order to avoid detection because they never had the right to exploit the Composition.

Defendants have also not presented admissible expert testimony that Berger's assumptions and estimations were improper. As discussed at length in Pl. Mem. Point V(A), Cohen's opinions and testimony are inadmissible under Fed. R. Evid. 702. At his deposition Cohen admitted that his comments on Berger's assumption had no factual backing. *See* Adelman Decl., ¶14, Ex. 11, Cohen Dep. p. 68-69. Repeating Cohen's unreliable comments in the Cohen Decl., does not make them reliable. In fact Defendants' failure to oppose the challenge to Cohen's reliability is an admission that his opinion is unreliable and inadmissible.[5]

Defendants' assertion that Berger should have used documents that Defendants failed to produce is further flawed and unsupported. Defendants' document production was incomplete and contained self-created summaries despite the fact that royalty statements were requested by Plaintiff during discovery. *See* Adelman Decl., Ex. 18. The requested statements were **under Sugar Hill's control** within the meaning of Fed. R. Civ. P. 34, as Sugar Hill had a contractual right to obtain them. *See Dietrich v. Bauer*, 95 CV 7051, 2000 WL 1171132 (S.D.N.Y. Aug. 16, 2000). Defendants' argument that Plaintiff should have supported the Berger Report with statements they did not produce, defies logic. It is not Plaintiff's burden to produce documents sent to Sugar Hill nor can Sugar Hill use its failures in discovery to challenge Berger's opinions.

Defendants' statement that they did not produce these documents because Sugar Hill did not collect any other money other than that indicated on these statements must be disregarded as it is not supported by the Robinson Decl., or any other admissible evidence. Defendants' obviously do not even know what monies they collected. Although, Robinson stated that "Sugar

---

[5] Notably absent from Defendants' opposition and the supplemental Cohen report, are any attempts to rectify the deficiencies of the Cohen Report under Fed. R. Evid. 702. It is clear that Cohen's opinions and testimony are unreliable and must be excluded.

Hill did not collect any foreign performance income and there are no documents which would support Mr. Berger's speculation." *See* Robinson Decl., ¶19. This clearly is not true, given that the royalty statements produced by Defendants demonstrate that they received at least some performance income from societies such as GEMA and PRS. *See* Cinque Decl., Ex. A, 60:21-25, 61:1-3. Without documents that should have been produced by Defendants, Berger made assumptions where appropriate[6] and Defendants have no admissible evidence to the contrary.

Similarly untrue is Defendants statement that the Berger Report claims monies already collected by Plaintiff through BMI. As stated by Berger, it cannot be assumed that BMI is collecting 100% in foreign territories. *See* Berger Decl., ¶1. In fact here, we know that BMI is not collecting 100% worldwide. *See* Cinque Decl., Ex. A, 60:21-25, 61:1-3 (at least some foreign performance royalties were collected by Defendants as evidenced by their royalty statements).

Defendants' argument that Plaintiff has not proven damages is not supported. The glaring omission of admissible evidence that monies set forth in the Berger Report were not collected, is telling that they were. Defendants failed to produce admissible evidence to create an issue of fact as to the damages analysis in the Berger Report, thus Plaintiffs' motion should be granted.

## II.   THE ALLEGED ASSIGNMENT IS NOT PER SE VALID

Defendants have not shown that the Alleged Assignment is valid. Defendants never acted as if there was a binding agreement as they did not register with the Copyright Office or BMI, which are the most basic steps that a publisher would take to collect.

Defendants' argument that the Alleged Assignment did not require consideration is illogical. NY Gen. Oblig. Law § 5-1107 is not intended to excuse a party's failure to pay consideration where an assignment is **expressly given in consideration** for promises of

---

[6] Cohen's only major disagreement with Berger's assumptions is that he would have calculated them using a different sales number. The interesting result of Cohen's assertion is that it increased Plaintiff's damages.

payment. The law in Pl. Mem. Point I(A), unequivocally demonstrates that Defendants are wrong. Courts have consistently recognized that that an assignment, given in exchange for a promise of royalty payments, can be rescinded where there is a complete failure to pay. *See e.g. Nolan v. Sam Fox Pub. Co., Inc.*, 499 F.2d 1394, 1399 (2d Cir. 1974). Here the Alleged Assignment states that it "is subject to all the terms and conditions of the Agreement dated March 13, 1998."[7] *See* Adelman Decl., Ex. 7. Thus consideration was required here.

Defendants' argument that the Alleged Assignment did not need to be signed by Defendants is similarly flawed. The Alleged Assignment and the Alleged Pub. Agr., are one agreement. *See* Adelman Decl., ¶11, Ex. 8, Robinson Dep. 74-75:9 ("Its part of the same agreement" 75:7). Neither is signed by a representative of Defendants. Thus even if signature on the Alleged Assignment was excused, the lack of signature on the Alleged Pub. Agr., is not. Robinson's statement that it was his father's custom to have two signed originals is also irrelevant. In fact it discredits the notion that there was ever an actual agreement here because Defendants did not retain a counter executed original of either of the Alleged Agreements.[8]

As also discussed at length in the Pl. Mem. Point III, Defendants cannot authenticate the Alleged Agreements as they lack foundation to do so. The alleged notary testified that he did not remember notarizing the Alleged Assignment or witnessing Stewart's signature. *See* Adelman Decl., ¶15, Ex. 12, LaMontagne Dep. 12:3-6, 13:7-9. Branker, whose testimony is admissible under Fed. R. Evid. 901, testified that the signatures on the Alleged Assignment are not Stewart's signatures. *See* Adelman Decl., ¶16, Ex. 13, Branker Dep. 16:3-24.

### III. THE MALLISON DECL. CANNOT BE USED IN SUPPORT

---

[7] Referring to the Alleged Pub. Agr., which contains promises of payment to Plaintiff.
[8] This is especially true where the agreements produced with Defendants' sub-publishers, demonstrates that Defendants retained fully executed copies agreements they signed. *See* Adelman Op. Decl., ¶5, Ex. 4.

Defendants have used the Mallison Decl., to support two key issues: first that Stewart signed the Alleged Pub. Agr., and second that Stewart was paid $2,500. However, as set forth at great length in Pl. Op. Mem., Point I(A) the Mallison Decl., cannot be used in support. For five months, Defendants failed to disclose Mallison's contact information and written statement despite their clear duty to do so pursuant to four discovery mechanisms -- initial disclosures, interrogatories, document demands and deposition. *See* Adelman Op. Decl., ¶3,15, Exs. 2 and 14.[9] Defendants failure to disclose mandates the exclusion of the Mallison Decl., now. *See Atkins v. County of Orange,* 372 F.Supp.2d 377, 395 (S.D.N.Y. 2005) (Rule 37(c)(1) is "self-executing," and the exclusion of undisclosed information is automatic unless the non-disclosing party sustains its burden of showing that the failure to disclose was either substantially justified or harmless). Here, Defendants explanation for not disclosing this information after Robinson's deposition in September, (Robinson Reply Decl. ¶3-5; Cinque Decl. ¶4), fails to excuse the months before the deposition when Defendants sat on his statement.[10] Also, Defendants' failure was not justified or harmless as it prevented Plaintiff from cross-examining Mallison, etc.

Defendants attempt to accuse Plaintiff of violating the Individual Practice Rules of this Court or Fed. R. Civ. P. 37(a) is deeply disingenuous. The Individual Rule 2(B) requires informal efforts to resolve issues "prior to making a motion of any type." Here it was Defendants who failed to inform Plaintiff that they had the Mallison Decl., and planned to use it

---

[9] Cinque and Robinson's assertion that Plaintiff did not follow up on this request at the deposition lacks both sincerity and relevance. Robinson testified that he did not have the number, had not given the contact information to his attorney and could not get the number again. *See* Adelman Decl., ¶11, Ex. 8, Robinson Dep. 81:3-12. After Robinson's deposition, Plaintiff sent a copy of his transcript to Cinque for Robinson to review and make changes. There is no requirement that Plaintiff continually request that Defendants supplement discovery responses. When new information becomes available, Fed. R. Civ. P. 26(e) imposes the duty to supplement on **the disclosing party.**
[10] Although Defendants disclosed Mallison's phone number in the Robinson Reply Decl., they have **still failed to disclose his address or email address.** It is unlikely that they could have obtained the Mallison Decl., without some other contact information.

as evidence to support two key issues raised in their motion. Additionally, Plaintiff was not required to make efforts under Rule 37(a) as it did not make a Rule 37(a) motion to compel.

Defendants' argument that it should be allowed to repeatedly shirk its discovery obligations, sandbag Plaintiff on summary judgment, and prevent Plaintiff from excluding the very evidence that **Defendants failed to produce** is outrageous. Defendants failed to produce this evidence, when it was clearly relevant and clearly in their possession. Defendants failure is not justifiable as such the Mallison Decl., cannot be considered as evidence to support the contention that Stewart signed the Alleged Pub. Agr., that receipt of $2,500 was acknowledged, that $2,500 was ever given to Stewart, and that Robinson Sr., signed the agreement.

## IV. THE CORPORATE VEIL MUST BE PIERCED

Defendants attempt to avoid judgment against the individual Defendants Joey Robinson and the late Sylvia Robinson also fails. Even under the test articulated in *Wm. Passalacqua Builders, Inc., v. Resnick Developers South, Inc.,* 933 F.2d 131 (2d Cir. 1991), it is clear that personal liability should be imposed. Factors 1, 4, 5 and 10, focusing on the absence of corporate formalities, overlap in ownership and control, common office space and use of property, weigh heavily in favor of piercing the corporate veil here. As set forth in Pl. Mem. Point IV, Defendants have produced no corporate documents, including those that demonstrate they observe corporate formalities. *See* Adelman Decl., ¶21, Ex. 18, Demand No. 1. Moreover a fire in 2001, does not explain why Defendants have no corporate records for the last 10 years. In fact, the statement that all the minute books were destroyed in the fire (Robinson Decl., ¶28), is a tacit admission that Defendants have kept no corporate records or observed corporate formalities for at least 10 years. It is undisputed that Sugar Hill and Diamond Head share the same officers directors and shareholders. *See* Adelman Decl., ¶13, Ex. 10. The corporate records are kept in

the same place. *See* Adelman Decl., Ex. 8, Robinson Dep. 48:12-15. Most importantly Diamond Head uses Sugar Hill's property as if it were its own. *See* Adelman Decl., ¶4, Ex. 2, ¶15 (although Sugar Hill claims it is the assignee of an interest in the Composition, Diamond Head has admitted that it too exploited the Composition). Documents evidencing authorization to Diamond Head were not produced. *See* Adelman Decl., ¶21, Ex.18, Req. Nos. 41 and 42; ¶22.

Factors 2, 3, 6, 7, 8 and 9, also demonstrate that the veil should be pierced. Defendants refused and/or failed to produce bank statements, corporate records or any other documentation that would show a corporate shield exists.[11] *See* Adelman Decl., ¶21, Ex.18, Req. Nos. 1, 2, 41 and 42; ¶22. Defendants cannot now use the absence of requested documents to support the argument that there is no evidence that S. Robinson and J. Robinson used the corporations for their personal benefit. Most telling that the corporations are used for personal benefit, is the glaring omission of a denial of this fact in Robinson's declaration. Defendants have presented no admissible evidence to demonstrate there is a corporate structure, thus the veil should be pierced.

## CONCLUSION

For all of the foregoing reasons Plaintiff respectfully requests that the Court grant its motion for summary judgment, and hold Defendants liable for the wrongs they have committed.

Dated: New York, New York  
       January 3, 2012

Respectfully submitted,  
MEISTER SEELIG & FEIN LLP

_____  
Gary Adelman, Esq.  
*Attorneys for Plaintiff*  
140 East 45th Street, 19th Floor  
New York, New York 10017  
Telephone: (212) 655-3580  
E-mail: gpa@msf-law.com

---

[11] Defendants also failed to produce documents that show they have changed the way that they operate since the ruling piercing the corporate veil in *Tuff-N-Rumble Management, Inc. v. Sugarhill Music Pub. Inc.*, 2000 Copr. L. Dec. P 28050 (2000).

10