UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
ESTATE OF WILLIAM A. STEWART, JR.,

        Plaintiff,

  -v-                                      No. 10 Civ. 2632 (LTS)(JLC)

SUGAR HILL MUSIC PUBLISHING
LTD., et al.,

        Defendants.
------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

        The Estate of William A. Stewart, Jr. ("Plaintiff"), brings this breach of contract and copyright infringement action, alleging that Defendants Sugar Hill Music Publishing, Ltd. ("Sugar Hill"), Diamond Head Music, Inc., Joey Robinson, Sylvia Robinson, and Leland Robinson (collectively "Defendants") illegally profited by licensing Plaintiff's copyrighted 1996 musical composition, "No Diggity," to music subpublishers without Plaintiff's authorization. Defendants assert counterclaims for breach of contract on the basis of a purported agreement assigning Defendants the right to exploit "No Diggity." Plaintiff, in turn, disputes the validity of the purported assignment/agreement, but also brings alternative causes of action for rescission, breach of contract, and unjust enrichment which Plaintiff claims entitle it to recovery in the event the assignment is determined to be valid. The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1332. The parties now cross-move for summary judgment. For the following reasons, Plaintiff's motion is granted in part and denied in part. Defendants' motion is denied in its entirety.

BACKGROUND

The following facts are undisputed unless otherwise noted.[1] In or around 1996, decedent William A. Stewart ("Stewart") co-wrote and registered a copyright in a composition entitled "No Diggity." (Pl's 56.1 St. ¶¶ 4-6.) Plaintiff contends that Defendants "have infringed and continue to infringe the Estate's copyright in the work "No Diggity" by licensing "No Diggity" without authorization or permission, both inside and outside the United States." (Am. Compl. ¶ 28.)

Defendants aver that, in 1999, Stewart and the now-deceased Joe Robinson, Sr., negotiated an agreement whereby Stewart assigned his interest in "No Diggity" to Sugar Hill in exchange for 60% of the royalties. (Defs' 56.1 St. ¶ 1; Declaration of Joey Robinson ("Robinson Dec."), Ex. 1.) Defendants counterclaim, on the basis of the purported assignment ("Assignment"), that Stewart improperly exploited "No Diggity," and that Plaintiff owes Sugar Hill a portion of those proceeds. (Defs' 56.1 St. ¶ 2.)

Defendants have produced two documents that they claim support the existence of the alleged assignment. The first is a document, dated May 25, 1999, that purports to be the Assignment itself. (Robinson Dec., Ex. 1.) This document bears two signatures – one reading "William A. Stewart," and one of a notary public.[2] (Id.) It is not signed by any agent of Sugar Hill. (Id.) The Assignment states that it is "subject to all the terms and conditions of the

---

[1] Facts recited as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence as to which there is no non-conclusory contrary factual proffer. Citations to the parties' respective Local Civil Rule 56.1 statements ("Defs' 56.1 St." or Pl's 56.1 St.") and responses thereto ("Defs' Resp. 56.1 St." or "Pl's Resp. 56.1 St.") incorporate by reference the parties' citations to underlying evidentiary submissions.

[2] Defendants proffer the testimony of the notary public, Joseph Lamontagne, who confirms that his stamp is affixed to the Assignment. (Def's Resp. 56.1 St. ¶ 31.)

Agreement dated March 13, 1998, between Assignor(s) and Assignee." (Id.) Defendants also furnish a copy of the purported agreement ("Agreement") referenced in the Assignment. (Defs' 56.1 St. ¶ 9.) The Agreement appears to have been originally dated March 13, 1998, but was altered by hand to read May 25, 1998; these alterations are initialed "WAS." (Id.) The Agreement provides that Stewart would receive 60% of all royalties collected by Sugar Hill through the exploitation of "No Diggity," while the remaining 40% would be split evenly between Sugar Hill and Lavaba Mallison ("Mallison"), who is not a party to this action. (Defs' Resp. 56.1 St. ¶ 21.) Further, the Agreement states that a check for $2,500 was "[e]nclosed" to Stewart as an advance on the "No Diggity" royalties. The Agreement bears two signatures, which Defendants claim are those of Stewart and Mallison. The Agreement is not signed by an agent of Sugar Hill, nor does it bear a notary public's signature.

Sugar Hill asserts that it received $30,000 from the exploitation of "No Diggity" after the execution of the Assignment. Sugar Hill contends that Plaintiff was entitled to $15,500 – representing 60% of $30,000, less the $2,500 advance. (Defs' 56.1 St. ¶ 18.) While Defendants concede that they never paid Plaintiff the $15,500, they assert in the counterclaim that Plaintiff made $100,000 by improperly exploiting "No Diggity" after the execution of the Assignment and Agreement. Sugar Hill argues, in error, that it is entitled to 40% ($40,000) of that amount. (Id. ¶ 17.) In fact, the Agreement clearly states that Sugar Hill is entitled to net only 20% of the royalties. Mallison is not a party in this dispute, nor has he transferred his claim to Defendants. Thus, according to Sugar Hill's expert's calculations and the plain text of the Agreement, the value of its counterclaim is $4,500 (i.e., $20,000 minus the $15,500 Sugar Hill owes Plaintiff).

Plaintiff disputes the authenticity of the Assignment and the Agreement. (Pl's Resp. 56.1 St. ¶¶ 25-26.) Plaintiff proffers the declaration of Nicole Branker, Stewart's former business assistant, who avers that the signature on the Assignment is not Stewart's. (Pl's 56.1 St. ¶¶ 31-34.) Plaintiff also denies that Sugar Hill paid Stewart the $2,500 advance referenced in the Agreement. (Pl's 56.1 St. ¶ 9.) Because Joe Robinson, Sr., is deceased, no Defendant has personal knowledge as to whether Stewart was paid the advance. (Id. ¶¶ 9, 13.) Defendants aver that a fire destroyed most of Sugar Hill's business records, and that, as a result of the passage of time, Defendants cannot obtain bank records proving payment of the advance. (Defs' 56.1 St. ¶ 4; Defs' Resp. 56.1 St. ¶ 13.) The only evidence Defendants have proffered in response to Plaintiff's attacks on the Agreement's authenticity and Plaintiff's denial that Stewart received the $2,500 advance is a declaration by Mallison, who states that Stewart "advised [her] that . . . he wished to assign [his] interest to Sugar Hill" and that he "executed the [Agreement] . . . [and] gave Mr. Stewart a check in the amount of $2,500.00." (Defs' Resp. 56.1 St. ¶¶ 9-10, 12-14.)

Defendants have not provided Mallison's contact information to Plaintiff. (Pl's 56.1 St. ¶ 5.) On September 30, 2010, Defendant submitted a response to Plaintiff's first set of interrogatories listing Mallison as a potential witness, but stating that Mallison's current address was unknown. (Id.) At Joey Robinson's September 8, 2011, deposition, Plaintiff's counsel requested production of Mallison's contact information; Robinson replied that he had obtained Mallison's contact information via a third party acquaintance who had obtained the information through Facebook, but that he could not recall who had provided him the information, and that he could not obtain it again. (Deposition of Joey Robinson, at 82.) When asked by opposing counsel whether he had provided his attorney with Mallison's contact information, Robinson answered in the negative. (Id.) At the time of Robinson's deposition, however, the Mallison

Declaration – which is dated June 28, 2011 – had already been drafted, signed, and notarized. (Pl's 56.1 St. ¶ 5.)

In its motion for summary judgment, Plaintiff argues that Defendants have failed to proffer evidence sufficient to establish the existence of a valid Assignment. Plaintiff also argues that, even if the Court were to find that a genuine dispute exists as to the validity of the Assignment, Plaintiff should prevail because Defendants failed to pay royalties under the accompanying Agreement, which constitutes grounds for rescission. Plaintiff also moves for summary judgment on Defendants' counterclaim, arguing that Defendants cannot prove damages and that Defendants are estopped from asserting the counterclaim.

In their motion for summary judgment, Defendants argue that Plaintiff's copyright claims fail because the Assignment authorized Defendants to license "No Diggity," and that Plaintiff is estopped from asserting claims based on Defendants' alleged breach of the Agreement because Plaintiff has argued that no such Agreement exists. In addition, Defendants argue that the Court lacks subject matter jurisdiction of the contract claims because the amount in controversy is less than $75,000, and of the copyright claims because the exploitation of the composition occurred abroad.

## Discussion

Summary judgment is to be granted in favor of a moving party if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, (1986) (the moving party bears the burden of establishing that there is no genuine issue of material fact). A fact is considered material "if it might affect the outcome of the suit under the governing law," and an issue of fact is a genuine one where "the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson, 477 U.S. at 248). The Second Circuit has explained that "[t]he party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). Similarly, "mere conclusory allegations, speculation or conjecture" will not suffice to defeat summary judgment. Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996); see also Fed. R. Civ. P. 56(e). When deciding cross-motions for summary judgment, the standard to be used "is the same as that for individual summary judgment motions and a court must consider each motion independent of the other." Schultz v. Stoner, 308 F. Supp. 2d 289, 298 (S.D.N.Y. 2004) (internal quotations omitted).

In demonstrating the absence of a material factual dispute, the moving party must rely on "such facts as would be admissible in evidence." Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997). Because the purpose of summary judgment is to weed out cases in which there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," it is appropriate for district courts to decide questions regarding the admissibility of evidence on summary judgment. Id. A district court deciding a summary judgment motion has broad discretion in choosing whether to admit evidence, and the admissibility of evidence on a motion for summary judgment is subject to the same rules that govern the admissibility of evidence at trial. Id. at 65; see also Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 264 (2d Cir. 2009).

I.  <u>Subject Matter Jurisdiction</u>

Neither of Defendants' challenges to the Court's subject matter jurisdiction of Plaintiff's claims is availing. Defendants first assert that the Court lacks jurisdiction of the contract claims because the amount in controversy is less than $75,000. When assessing whether the value of a diversity claim brought in district court exceeds 28 U.S.C. § 1332's $75,000 threshold, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." <u>St. Paul Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S. 283, 288-89 (1938). Courts in the Second Circuit "recognize[] a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." <u>Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.</u>, 166 F.3d 59, 63 (2d Cir. 1999). To rebut such a presumption, the moving party must show that it is "a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." <u>St. Paul Mercury Indem. Co.</u>, 303 U.S. at 288-89. The Second Circuit has interpreted the legal certainty standard to mean that "the legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim. If the right of recovery is uncertain, the doubt should be resolved . . . in favor of the subjective good faith of the plaintiff." <u>Tongkook Am., Inc. v. Shipton Sportswear Co.</u>, 14 F.3d 781, 785-86 (2d Cir. 1994). Plaintiff has submitted an expert report which values Plaintiff's contract claim between approximately $190,000 and $317,000. (Expert Report of Jay L. Berger, attached as Ex. 10 to Declaration of Gary Adelman, docket entry no. 71.) While Defendants contest that report's calculations, they have failed to show conclusively that Plaintiff's recovery of more than $75,000 is a legal impossibility.

Defendants also argue that the Court lacks subject matter jurisdiction because Sugar Hill only licensed "No Diggity" to foreign publishers, and the Copyright Act does not

extend to extraterritorial infringement. Defendants rely on Update Art, Inc. v. Modiin Publishing Ltd., 843 F.2d 67 (2d Cir. 1988). However, subsequent to Update Art, the Supreme Court held that "a threshold limitation on a statute's scope" shall only count as jurisdictional when Congress "clearly states" so. Arbaugh v. Y&H Corp., 546 U.S. 500, 515 (2006). Because nothing in the Copyright Act "clearly states" that the scope of the statute's jurisdictional reach affects the court's power to adjudicate the claim, the Court will treat this issue as an element of Plaintiff's claim. See Litecubes, LLC v. N. Light Prods., Inc., 523 F.3d 1353, 1367 (Fed. Cir. 2008) (whether an accused action is within the extraterritorial limitation [of the Copyright Act] should be treated as an element of the claim, not a predicate for subject matter jurisdiction") (citing Arbaugh, 546 U.S. at 515); accord Roberts v. Keith, 04 Civ. 10079(LAP), 2009 WL 357296, at *2 (S.D.N.Y. Oct. 23, 2009).

Moreover, "[w]hile the United States copyright regime does not generally have extraterritorial application, an exception exists where the defendant commits a predicate act of infringement within the U.S." Richard Feiner & Co., Inc. v. BMG Music Spain, S.A., 01 Civ. 0937(JSR), 2003 WL 740605 (S.D.N.Y. Mar. 4, 2003) (citing Update Art, 843 F.2d at 73). Plaintiff has adduced evidence that Defendants signed the sub-publishing agreements in the United States. (Adelman Decl., Ex. 4.) This predicate act suffices to establish the application of the Copyright Act to Plaintiff's claims.

II.     Validity of the Assignment/Agreement

There is a genuine dispute as to the validity of the Assignment and the Agreement. The Assignment bears the signature "William A. Stewart" and is notarized. A notarized assignment is prima facie evidence of a valid transfer, see 17 U.S.C. § 204(b)(1), and notarized documents are considered self-authenticating under the Federal Rules of Evidence. See

Fed. R. Evid. 902(8). Plaintiff fixates on the fact that the Assignment was not signed by Robinson or any representative of Sugar Hill. However, neither federal nor New York law[3] requires both parties to have signed an assignment in order for it to be deemed valid. See 17 U.S.C.A. § 204(b)(1) (West 2009) ("A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by <u>the owner of the rights conveyed</u> . . . .") (emphasis added); Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 572 (2d Cir. 1993) ("writings creating a contract may consist of letters bearing the signature of only one party or even memoranda unsigned by either party"); N.Y. Gen. Oblig. Law § 5-1107 (McKinney 2011) ("An assignment shall not be denied the effect of irrevocably transferring the assignor's rights because of the absence of consideration, if such assignment is in writing <u>and signed by the assignor</u>, or by his agent.") (emphasis added).

Likewise, there is a material dispute of fact as to whether Stewart signed the Agreement and whether Stewart received the $2,500 advance. The Agreement, in which acknowledges receipt of the advance, bears the signature "William A. Stewart" in a script that closely resembles the signature affixed to the Assignment. Neither party has supplied expert testimony attesting to or disputing the authenticity of that signature.

Defendants also proffer the declaration of Lavaba Mallison, who claims to have witnessed the execution of the Agreement and attests to the payment of the $2,500 advance.

---

[3] Interpretation of an agreement purporting to grant a copyright license is a matter of state contract law. See Random House, Inc. v. Rosetta Books LLC, 150 F. Supp. 2d 613, 617-18 (S.D.N.Y. 2001); Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co., 145 F.3d 481, 487 (2d Cir. 1998). Here, both parties assume in their briefing that New York law governs. Thus, the Court construes the contract in accordance with New York law. See Fed. Ins. Co. v. Am. Home Assurance Co., 639 F.3d 557, 566 (2d Cir. 2011) ("Under New York choice of law rules . . . where the parties agree that New York law controls, this is sufficient to establish choice of law.").

Plaintiff has moved to exclude the Mallison declaration on the grounds that Defendants prevented Plaintiff from taking his deposition by refusing to disclose his contact information.

Federal Rule of Civil Procedure 26(a)(1)(A)(i) provides that "a party must, without awaiting a discovery request, provide to the other parties . . . the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A). Rule 26(e)(1)(A) requires a party to supplement its Rule 26(a) disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e). Rule 37(c)(1) provides that, "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In determining whether preclusion pursuant to Rule 37(c)(1) is appropriate, the court must consider "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006).

Defendants' explanation for failing to disclose Mallison's contact information – the passing of Joey Robinson's mother and Plaintiff's failure to "follow up on [his] request" for the contact information – do not remotely excuse Defense counsel's neglect of their discovery obligations. However, given the paucity of evidence regarding the authenticity of the Agreement

– and, thus, the importance of Mallison's testimony – and the ease with which the disclosure violation can be cured by requiring Defendants to produce Mallison for deposition, the Court finds that preclusion is unwarranted.

Accordingly, the Court will order Defendants to facilitate and pay all expenses associated with Plaintiff's deposition of Lavaba Mallison. Failure to do so by November 16, 2012, will result in preclusion of the Mallison declaration and any future testimony by Mallison.

Even without Mallison's testimony, however, there exists a genuine dispute as to whether Stewart signed the Assignment and Agreement. Accordingly, both parties' motions for summary judgment on this point are denied.

III. Plaintiff's Rescission Claim

Plaintiff argues that, even if the Assignment and Agreement are valid, Plaintiff is entitled to rescission because Defendants failed to remit royalties as required by the terms of the Agreement.[4]

Under New York law, "[r]escission of a contract is an extraordinary remedy" and "the party asserting rescission . . . has the burden of proving it." Ariel (UK) Ltd. v. Reuters Group PLC, No. 95 Civ. 9646, 2006 WL 3161467, at *8 (S.D.N.Y. Oct. 31, 2006) (internal quotations omitted). A right to rescind a contract arises if the breach is "material and willful or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract." Nolan v. Sam Fox Publ'g Co., 499 F.2d 1394, 1397 (2d Cir. 1974). "[I]n the absence of fraud, a contract assigning rights in a musical composition cannot be rescinded for non-payment of royalties unless the failure to pay royalties is total." Cafferty v.

---

[4] Defendants argue that Plaintiff is estopped from arguing rescission or breach of contract because Plaintiff had previously denied the existence of a valid Agreement or Assignment. Defendants' position is meritless. Plaintiff's claims for rescission or breach of contract are properly pled in the alternative.

Scotti Brothers Records, Inc., 969 F. Supp. 193, 205 (S.D.N.Y. 1997); see also Septembertide Publ'g, B.V. v. Stein & Day, Inc., 884 F.2d 675, 678-79 (2d Cir. 1989).

Plaintiff's rescission claim is predicated on the assertion that Stewart never received any payments under the Agreement. However, as explained above, there is a genuine dispute as to whether Sugar Hill paid Stewart a $2,500 advance. If such an advance was paid, no action for rescission will lie. See Maldonado v. Valsyn, S.A., No. 06 Civ. 15290(RMB), 2009 WL 3094888, at *4 (S.D.N.Y. Sept. 23, 2009) aff'd, 390 F. App'x 27 (2d Cir. 2010) (denying rescission where defendants failed to remit royalty payments but plaintiffs received all advances due under the contract); accord Harris v. Wu–Tang Prods., Inc., No. 05 Civ. 3157, 2006 WL 1677127, at *4 (S.D.N.Y. June 16, 2006) ("[P]laintiff's attempt to distinguish advance payments from royalties is purely academic, as the Second Circuit applied the Nolan rule to similar advance payments in Septembertide Publ'g, B.V. v. Stein & Day Inc."). Moreover, it is well established that rescission is inappropriate where damages are an adequate remedy. See, e.g., New Paradigm Software Corp., v. New Era of Networks, Inc., 107 F. Supp.2d 325, 330 (S.D.N.Y. 2000); Vestron, Inc. v. Nat'l Geographic Soc., 750 F. Supp. 586, 594 (S.D.N.Y. 1990) ("Where a distributor has not wholly defaulted in making royalty payments and where its breaches, if any, can be compensated in damages, rescission is not an appropriate remedy."). Plaintiff has not explained why damages would not suffice to make it whole. Accordingly, the Court finds that Plaintiff has failed to carry its burden of establishing grounds for rescission.

IV.     Defendants' Counterclaim

Plaintiff moves for summary judgment on Defendants' counterclaim, arguing that Defendants' damages' expert, Gary Cohen, is unreliable, and that his report should be excluded.

Federal Rule of Evidence 702 permits a "witness who is qualified as an expert by knowledge, skill, experience, training, or education" to testify if his or her "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," and if:

> [1] the testimony is based on sufficient facts or data, [2] the testimony is the product of reliable principles and methods, and [3] the witness has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Court exercises a "gatekeeping" function in connection with expert testimony. See GE v. Joiner, 522 U.S. 136, 142 (1997); Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993). To this end, the trial judge must "ensur[e] that an expert's testimony rests on a reliable foundation and is relevant to the task at hand." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999). This gatekeeping obligation "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." Id. at 141. "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, Daubert and Rule 702 mandate the exclusion of that unreliable opinion testimony." Amorgianos v. National R.R. Passenger Corp., 303 F.3d 256, 266 (2d Cir. 2002).

The Court is not persuaded by Plaintiff's arguments that the report should be excluded because Cohen neglected to sign the report or strictly comply with the disclosure requirements of Federal Rule of Civil Procedure 26(a)(2)(B). Cohen has attested to the report's accuracy in a subsequent, signed declaration and he complied with the disclosure requirements prior to his deposition. (See Declaration of Gary Cohen ("Cohen Decl.") ¶ 2.) However, the Court finds that Cohen's testimony and expert report do not meet the Daubert standard of reliability.

Plaintiff has identified numerous flaws in Cohen's methodology. Cohen's conclusions are founded largely on hearsay supplied by Defendants' counsel and dubious assumptions. First, Cohen uncritically relied on Defendants' representations regarding the amount to which Defendants were entitled under the Assignment and Agreement and, consequently, miscalculated the value of the counterclaim. Cohen assumed in his report that Defendants were entitled to 40% of the royalties under the Agreement, when in fact, they were entitled to only 20%. As a result, Cohen overstated the value of the counterclaim by $20,000. Cohen admitted in his deposition that he relied on royalty summaries that were created by Defendants and that, deviating from his usual practice, he neglected to review the underlying documents or even ask Defendants which documents were used to prepare the summaries. When asked in his deposition whether he knew whether the documents were accurate, he replied: "I do not." (Deposition of Gary Cohen ("Cohen Dep.") Tr. 43:20-22.) He also admitted in deposition that he based his calculations on the assumption – which he was unable to justify – that certain companies were collecting 100% of the foreign performance royalties for exploiting "No Diggity." Defendants offer no meaningful response to the flaws that Plaintiff has identified.

Accordingly, the Court grants Plaintiff's request to exclude Cohen's report and testimony. Because Defendants have no other competent evidence of damages relating to their counterclaim, Plaintiff's motion for summary judgment dismissing the counterclaim is granted.

CONCLUSION

Plaintiff's motion for summary judgment dismissing Defendants' counterclaim is granted. Plaintiff's motion for summary judgment is denied in all other respects. Defendants' motion for summary judgment is denied. Defendants are ordered to facilitate and pay all expenses associated with Plaintiff's deposition of Lavaba Mallison. Failure to do so by

November 16, 2012 will result in preclusion of the Mallison declaration and any future testimony by Mallison.

A Final Pre-Trial Conference will be held on February 8, 2012 at 2:00p.m.

This Memorandum Order resolves docket entry nos. 61 and 69.

SO ORDERED.

Dated: New York, New York
September 28, 2012

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge